**Repeat–PAMB, CREDS, FMDueD1, ProSe, 2002, DeBN–YesD1, CnfHrgNTC, MotDismP, AppealBK, DISMISSED**

# U.S. Bankruptcy Court
## Middle District of Pennsylvania (Harrisburg)
## Bankruptcy Petition #: 1:25–bk–01575–HWV

*Assigned to:* Chief Judge Henry W. Van Eck
Chapter 13
Voluntary
Asset

*Date filed:* 06/02/2025
*Date terminated:* 01/07/2026
*Debtor dismissed:* 01/07/2026
*341 meeting:* 07/28/2025

*Debtor disposition:* Dismissed for Other Reason

*Debtor 1*
**Andrew William Mulkerin**
1740 Adeline Drive
Mechanicsburg, PA 17050
CUMBERLAND–PA
717–802–1508
SSN / ITIN: xxx–xx–4736

represented by **Andrew William Mulkerin**
PRO SE

*Trustee*
**Jack N Zaharopoulos**
Standing Chapter 13
(Trustee)
8125 Adams Drive, Suite A
Hummelstown, PA 17036
717–566–6097

*Asst. U.S. Trustee*
**United States Trustee**
US Courthouse
1501 N. 6th St
Harrisburg, PA 17102
717 221–4515

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 08/13/2025 | | 110 | *Supplement to Motion for Rule 2004 Examination of Andrew V. Papoutsis.* Filed by Andrew William Mulkerin (RE: related document(s)72). (Attachments: # 1 Proposed Order # 2 Certificate of Service # 3 Exhibit 1: Affidavit # 4 Exhibit 2A: Proffer # 5 Exhibit 2B: Proffer # 6 Exhibit 3: Tiches Email # 7 Exhibit 4A: Ventwell 2020 K1 # 8 Exhibit 4B: APX 2020 K1 # 9 Exhibit 5A: Ventwell 2021 K1 # 10 Exhibit 5B: APX 2021 K1 # 11 Exhibit 6: Tiches Refusal Email # 12 Exhibit 7: UST Objection) (Gambini, Christopher) (Entered: 08/13/2025) |
| 08/26/2025 | | 146 | **Proceeding Memo for hearing scheduled on: 08/26/2025** **MATTER:** Motion for Examination under Rule 2004 of Andrew Papoutsis filed by Andrew William Mulkerin 72 ; Objection by Andrew V Papoutsis 111 ; Amended Reply to Objection 123 **APPEARANCES:** Andrew Mulkerin, Douglas Roeder, and Robert |

| | | | |
|---|---|---|---|
| | | | Chernicoff.<br>**DISPOSITION:** Hearing on Motion for Examination under Rule 2004 of Andrew Papoutsis held. Record made. Court to sign order denying the motion.<br>(Wilson, Tonia) (Entered: 08/26/2025) |
| 08/26/2025 | | 147 | Proceeding Memo re: Hearing on Motion for Examination under Rule 2004 of Andrew Papoutsis set for 9/16/2025 canceled. Motion denied at hearing held on 8/26/2025. IT IS SO ORDERED on 8/26/2025. /s/Henry W. Van Eck (RE: related document(s)72, 111, 121, 130, 146 ). (Wilson, Tonia) (Entered: 08/26/2025) |
| 08/26/2025 | | 148 | Order Denying Motion for Examination under Rule 2004 of Andrew Papoutsis (RE: related document(s)72). (Gambini, Christopher) (Entered: 08/26/2025) |
| 09/24/2025 | | 226 | **Proceeding Memo for hearing scheduled on: 09/24/2025**<br>**MATTER:** Motion for Examination under Rule 2004 of Sean Summers, Esq. filed by Andrew William Mulkerin 128<br>**APPEARANCES:** Andrew Mulkerin<br>**DISPOSITION:** Hearing on Motion for Examination under Rule 2004 held. Record made. Court to sign order denying the motion.<br>(Wilson, Tonia) (Entered: 09/24/2025) |
| 09/25/2025 | | 236 | Order Denying Motion for Examination under Rule 2004 of Sean Summers, Esq. (RE: related document(s)128). (Gambini, Christopher) (Entered: 09/25/2025) |
| 09/29/2025 | | 244 | Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc.. Filed by Andrew William Mulkerin . (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Certificate of Service # 9 Proposed Order) (Gambini, Christopher) (Entered: 09/29/2025) |
| 10/13/2025 | | 260 | Objection to *Debtor's Motion for Rule 2004 Examination* Filed by Robert E Chernicoff of Cunningham and Chernicoff PC on behalf of Ventwell, Inc. (RE: related document(s)244). (Attachments: # 1 Proposed Order # 2 Certificate of Service) (Chernicoff, Robert) (Entered: 10/13/2025) |
| 10/23/2025 | | 290 | Correspondence: Litigation Hold Notices. Filed by Andrew William Mulkerin . (Attachments: # 1 Amended Certificate of Service) (Gambini, Christopher) (Entered: 10/23/2025) |
| 11/03/2025 | | 295 | Debtor's Reply in Support of Motion for Rule 2004 Examination. Filed by Andrew William Mulkerin (RE: related document(s)244, 260). (Attachments: # 1 Certificate of Service) (Gambini, Christopher) (Entered: 11/03/2025) |
| 11/04/2025 | | 308 | **Proceeding Memo for hearing scheduled on: 11/04/2025**<br>**MATTER:** Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc. 244 ; Objection by Ventwell, Inc. 260<br>**APPEARANCES:** Andrew Mulkerin and Robert Chernicoff<br>**DISPOSITION:** Hearing on Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc. held. Record made. Matter continued.<br>**HEARING Scheduled for 12/02/2025 at 09:30 AM at U.S. Courthouse, 1501 N. 6th St. Harrisburg, PA.** (Wilson, Tonia) (Entered: 11/04/2025) |

| | | | |
|---|---|---|---|
| 11/04/2025 | | 311 | Request for Audio Recording of hearing scheduled on November 4, 2025 . Filing fee due in the amount of $ 34.00. Filed by Irene Mulkerin. (McHugh, Michael)Modified on 11/4/2025 (MPM). (Entered: 11/04/2025) |
| 11/04/2025 | | 313 | Record of Filing Fee Payment for $34.00 (RE: related document(s)311). (Litzenberger, Pattie) (Entered: 11/04/2025) |
| 11/28/2025 | | 391 | Debtor's Reply in Further Support of Motion for Rule 2004 Examination of Ventwell, Inc. and APX SEETECH Systems, Inc. Filed by Andrew William Mulkerin (RE: related document(s)244). (Attachments: # 1 Exhibit A # 2 Certificate of Service # 3 Proposed Order) (McHugh, Michael) (Entered: 11/28/2025) |
| 12/02/2025 | | 399 | **Proceeding Memo for hearing scheduled on: 12/02/2025** **MATTER:** Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc. 244 ; Objection by Ventwell, Inc. 260 ;Debtor's Reply in Further Support of Motion for Rule 2004 Examination 399 **APPEARANCES:** Andrew Mulkerin and Robert Chernicoff **DISPOSITION:** Hearing on Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc. held. Record made. Court to sign order denying the motion. (Wilson, Tonia) (Entered: 12/02/2025) |
| 12/02/2025 | | 401 | Request for Audio Recording of hearing scheduled on December 2, 2 025 . Filing fee due in the amount of $ 34.00. Filed by Irene Mulkerin. (McHugh, Michael) (Entered: 12/02/2025) |
| 12/02/2025 | | 403 | Record of Filing Fee Payment for $34.00 (RE: related document(s)401). (Petrina, Nadine) (Entered: 12/02/2025) |
| 12/02/2025 | | 404 | Order Denying Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, (RE: related document(s)244). (Miscevich, Jennifer) (Entered: 12/02/2025) |
| 12/04/2025 | | 411 | BNC Certificate of Notice (RE: related document(s)404). Notice Date 12/04/2025. (Admin.) (Entered: 12/05/2025) |
| 12/16/2025 | | 425 | Motion for Protective Order Filed by Brent Diefenderfer of CGA Law Firm on behalf of Keith & Lisa Wolfe. (Attachments: # 1 Exhibit A−Discovery Requests # 2 Exhibit B−Generative AI Subpoena # 3 Exhibit C−Incomplete District Court Subpoena # 4 Exhibit D−Emails Seeking Resolution # 5 Proposed Order) (Diefenderfer, Brent) (Entered: 12/16/2025) |
| 12/17/2025 | | 426 | Motion for Protective Order Filed by Kimberly A Bonner of JSDC Law Offices on behalf of Orrstown Bank. (Attachments: # 1 Exhibit A−Debtor's Discovery Requests # 2 Proposed Order # 3 Certificate of Service) (Bonner, Kimberly) (Entered: 12/17/2025) |
| 12/18/2025 | | 428 | Motion for Protective Order Filed by Natalie McGhee of Becket & Lee LLP on behalf of American Express National Bank (RE: related document(s)396). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Proposed Order # 4 Certificate of Service) (McGhee, Natalie) (Entered: 12/18/2025) |
| 12/19/2025 | | 431 | |

| | | | |
|---|---|---|---|
| | | | Order Granting Motion For Protective Order (RE: related document(s)425). (Gambini, Christopher) (Entered: 12/19/2025) |
| 12/19/2025 | | 432 | Order Granting Motion For Protective Order (RE: related document(s)426). (Gambini, Christopher) (Entered: 12/19/2025) |
| 12/19/2025 | | 433 | Order Granting Motion For Protective Order (RE: related document(s)428). (Gambini, Christopher) (Entered: 12/19/2025) |
| 12/19/2025 | | 434 | Discovery Management Order (RE: related document(s)431, 432, 433). (Gambini, Christopher) (Entered: 12/19/2025) |
| 12/29/2025 | | 452 | Appellant's Designation of Contents to be included in the record Filed by Andrew William Mulkerin (RE: related document(s)419). Appellee designation due by 1/12/2026. (Dunbar–Yancey, Daneisha) (Entered: 12/29/2025) |
| 01/02/2026 | | 460 | Notice: The Court cannot transmit to the District Court as the record on appeal all items identified on the Appellants Designation of Record (Dkt No. 452). The Court is unable to determine what documents are intended to be included by the header of and last bulleted category in Section E or whether the Court has possession of these documents. See Local Rule 8009–1. Pursuant to Fed. R. Bankr. P. 8009(a)(5), (g); and L.B.R. 8009–1, on or before January 30, 2026, please: (i) specifically identify each exhibit you wish to designate as part of the record (including the date of the hearing, proponents name, and exhibit identification number), and (ii) provide the Court copies of any exhibits which were originally submitted on paper that you wish to be transmitted as part of the record on appeal. If the requested specific exhibit designations and/or paper documents are not received by January 30, 2026, the Court will transmit the other items in your designation to the District Court and mark the record on appeal as complete. Please review the noted discrepancy for accuracy. If the information you provided is not accurate, please refile or amend your document. (RE: related document(s)452). (Gambini, Christopher) Modified on 1/2/2026 (JM). (Entered: 01/02/2026) |
| 01/13/2026 | | 486 | Amended Appellant's Designation of Contents to be included in the record Filed by Andrew William Mulkerin (RE: related document(s)452, 460). (Gambini, Christopher) (Entered: 01/13/2026) |
| 01/13/2026 | | 487 | Appellant's Motion to Supplement and Clarify the Record on Appeal. Filed by Andrew William Mulkerin (RE: related document(s)452, 460, 486) . (Attachments: # 1 Exhibit A) (Gambini, Christopher) (Entered: 01/13/2026) |

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

**In re:**

**Andrew William Mulkerin**, Debtor

Chapter 13 | Case No. 1:25-bk-01575-HWV

FILED
**August 13, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

---

## DEBTOR'S SUPPLEMENT TO MOTION FOR RULE 2004 EXAMINATION OF ANDREW V. PAPOUTSIS

---

## I. PURPOSE OF THIS SUPPLEMENT

This Supplement is submitted to provide the Court with additional sworn factual detail, documentary evidence, and procedural history directly relevant to the relief requested in Debtor's Motion for Rule 2004 Examination of Andrew V. Papoutsis and Request for Production of Documents Related to Seetech, Ventwell, and Associated APX-Affiliated Entities (Doc. 72).

The exhibits and facts herein go to the heart of the examination topics and document requests already enumerated in Doc. 72, including:

- The circumstances of Seetech and Ventwell's shutdown;

- The alleged forgiveness of multi-million-dollar intercompany "loans" in late 2021;

- The issuance of K-1s to Debtor reflecting substantial phantom income;

- The depletion of Debtor's capital accounts and unilateral reallocation of tax attributes;

- The denial of access to accounting records; and

- The potential diversion of business value to APX-controlled successor entities.

---

## II. TARGETED SCOPE OF SUPPLEMENT

1

This Supplement is not intended to expand the scope of the original Motion for Rule 2004 Examination (Doc. 72). Instead, it is limited to providing additional factual support for the specific document requests and examination topics already enumerated therein, namely:

1. Financial statements, ledgers, and intercompany account records for Seetech and Ventwell;

2. Tax returns, K-1s, basis schedules, and related workpapers;

3. Corporate records relating to loan forgiveness, intercompany transfers, and capital account adjustments; and

4. Correspondence and internal communications concerning these transactions and record-access limitations.

These exhibits directly relate to the value of the estate and the potential for recovery to creditors, which is the touchstone of Rule 2004.

---

## III. RELEVANCE TO RULE 2004 SCOPE

As outlined in Doc. 72 and reinforced here, this discovery is proper under Rule 2004 because it relates to:

- Potential property of the estate under 11 U.S.C. § 541;

- Turnover obligations under § 542;

- Avoidance actions under § 548; and

- Other claims for fiduciary breach and fraudulent transfer.

The new exhibits corroborate that:

1. The "loan forgiveness" and K-1 allocations were planned and admitted in writing by APX's COO (Ex. 3).

2. The 2020 and 2021 K-1s for Seetech and Ventwell (Exs. 4A, 4B, 5A, 5B) match that plan, showing sharp swings from large losses to sudden income, with basis resets to zero, and no cash distributions.

3. Access to underlying ledgers, workpapers, and capital account records has been obstructed since April 2022 (Ex. 6).

These are the exact categories of records and testimony already requested in Sections IV.A–C of Doc. 72.

---

## IV. PROCEDURAL BACKGROUND SHOWING NEED FOR DISCOVERY

- **Oct. 9, 2024 (Prior Case)** – Debtor filed two sworn proffers:
  • *Proffer of Information Regarding Alleged Fraudulent Traditions Bank Conduct and Conspiracy and Associated Parties* (Doc. 336) (Ex. 2A). *(Supports Requests Nos. 1, 2, 3)*
  • *Proffer Regarding Alleged Fraud, Embezzlement and Breach of Fiduciary Duty in Ventwell Inc and APX Seetech Systems Inc* (Doc. 337) (Ex. 2B). *(Supports Requests Nos. 1, 2, 3, 4)*

These proffers describe, in sworn detail, the alleged financial manipulations, including loan forgiveness, K-1 misallocations, and the concealment of records now sought in Doc. 72.

- **Feb. 29, 2024** – UST's Objection (Doc. 53 in prior case) (Ex. 7) confirms that the UST was aware of the disputes involving Papoutsis and acknowledged their investigative relevance. *(Supports Requests Nos. 1, 4)*

- **June 19, 2025 (Current Case)** – Debtor filed a sworn Affidavit (Doc. 35) incorporating the prior proffers into this case under penalty of perjury (Ex. 1). *(Supports all Requests)*

This chain of sworn filings and exhibits has been before the Court and parties in interest for more than a year and has never been rebutted.

---

## V. EXHIBITS SUPPORTING RULE 2004 RELIEF

- **Exhibit 1** – Affidavit (June 19, 2025) in this case (Doc. 35) with attached Exhibit A (Doc. 336, prior case). *(Supports all Requests)*

3

- **Exhibit 2A** – Oct. 9, 2024 sworn filing (Doc. 336), prior case – *Proffer of Information Regarding Alleged Fraudulent Traditions Bank Conduct and Conspiracy and Associated Parties*. *(Supports Requests Nos. 1, 2, 3)*

- **Exhibit 2B** – Oct. 9, 2024 sworn proffer (Doc. 337), prior case – *Proffer Regarding Alleged Fraud, Embezzlement and Breach of Fiduciary Duty in Ventwell Inc and APX Seetech Systems Inc*. *(Supports Requests Nos. 1, 2, 3, 4)*

- **Exhibit 3** – Dec. 28, 2021 email from APX COO re: forgiveness plan. *(Supports Requests Nos. 1, 3)*

- **Exhibit 4A** – 2020 K-1 – Ventwell, Inc. *(Supports Request No. 5)*

- **Exhibit 4B** – 2020 K-1 – APX Seetech Systems, Inc. *(Supports Request No. 5)*

- **Exhibit 5A** – 2021 K-1 – Ventwell, Inc. *(Supports Request No. 5)*

- **Exhibit 5B** – 2021 K-1 – APX Seetech Systems, Inc. *(Supports Request No. 5)*

- **Exhibit 6** – April 2022 record-access obstruction email. *(Supports Requests Nos. 2, 4)*

- **Exhibit 7** – UST Objection (Doc. 53, prior case). *(Supports Request No. 4)*

---

## VI. CONCLUSION

This Supplement demonstrates that the relief requested in Doc. 72 is factually supported by sworn, unrebutted evidence already in the record. The exhibits directly map to the topics and document requests in Doc. 72 and establish the need for complete production and oral examination of Andrew V. Papoutsis.

Debtor respectfully requests that this Supplement be accepted into the record in support of Doc. 72, and that the Court consider these facts and exhibits in ruling on the pending Rule 2004 motion or any future motion to compel.

---

4

## VII. PRESERVATION OF RIGHTS

Debtor reserves all rights to seek further relief, including but not limited to a motion to compel, sanctions for failure to comply, or other remedies available under the Bankruptcy Code and Rules, should the requested discovery not be produced in full and in good faith within the time allowed.

Dated: August 13, 2025
Respectfully submitted,

/s/ **Andrew William Mulkerin**
Andrew William Mulkerin, Debtor Pro Se
1740 Adeline Drive
Mechanicsburg, PA 17050
andy.mulkerin.pro-se@outlook.com

5

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

In re:

**Andrew William Mulkerin**, Debtor

Chapter 13 | Case No. 1:25-bk-01575-HWV

---

### ORDER

Upon consideration of the Debtor's Supplement to Motion for Rule 2004 Examination of Andrew V. Papoutsis, and for good cause shown, it is hereby ORDERED that:

1. The Supplement is accepted into the record in support of the pending Motion for Rule 2004 Examination (Doc. 72).

2. The Court will consider the additional factual material and exhibits provided therein in ruling on the pending motion and on any future motion to compel related to the discovery sought.

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:
ANDREW WILLIAM MULKERIN, Debtor
Case No.: 1:25-bk-01575-HWV
Chapter 13

---

**CERTIFICATE OF SERVICE**

I, Andrew William Mulkerin, hereby certify that on August 13, 2025, I caused a true and correct copy of the:

**Debtor's Supplement to Motion for Rule 2004 Examination of Andrew V. Papoutsis and Proposed Order**

to be filed electronically with the Clerk of the United States Bankruptcy Court for the Middle District of Pennsylvania using the CM/ECF system, which sent notice of such filing to all registered participants.

In addition, I served the following individuals via email:

- **Steve Grubb, Esq.** – sgrubb@salzmannhughes.com

- **Elizabeth Kramer, Esq.** – ekramer@salzmannhughes.com

- **Robert E. Chernicoff, Esq.** – rec@cclawpc.com

And via First-Class U.S. Mail to:

**Andrew V. Papoutsis** (Business Address)
9156 Molly Pitcher Highway
Greencastle, PA 17225

**Andrew V. Papoutsis** (Home Address)
11835 Kendallwood Circle
Waynesboro, PA 17268

**Linden Showalter, CPA**
Showalter & Miller CPA

1

42 E. Main Street
Waynesboro, PA 17268

**Ray Miller, CPA**
Showalter & Miller CPA
42 E. Main Street
Waynesboro, PA 17268

**Lynn Rotz, CPA**
RLK LLP
1134 Kennebec Drive
Chambersburg, PA 17201

Dated: August 13, 2025
Mechanicsburg, Pennsylvania

Respectfully submitted,

/s/ **Andrew William Mulkerin**
Andrew William Mulkerin, Debtor Pro Se
1740 Adeline Drive
Mechanicsburg, PA 17050
Tel: (717) 571-5670
Email: andy.mulkerin.pro-se@outlook.com

UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:
ANDREW WILLIAM MULKERIN,
Debtor.

Chapter 13
Case No.: 1:25-bk-01575-HWV

---

AFFIDAVIT OF ANDREW WILLIAM MULKERIN IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE OF PRIOR COURT FILINGS

---

I, Andrew William Mulkerin, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am the Debtor in the above-captioned Chapter 13 bankruptcy case, proceeding pro se, and I reside at 1740 Adeline Drive, Mechanicsburg, Pennsylvania 17050.

2. I submit this affidavit specifically in support of my Request for Judicial Notice of Document No. 336 previously filed in my Chapter 13 bankruptcy case, Case No. 1:24-bk-00270-HWV, which is now closed.

3. Document No. 336 was originally filed by me on October 9, 2024, and is accurately captioned as "Response to Trustee's Objection to Confirmation and Creditor Objections (Traditions Bank and Keith and Lisa Wolfe)."

4. Document No. 336 was prepared, reviewed, and verified by me personally. It accurately reflects facts and circumstances known to me, and was submitted to the Court under penalty of perjury at that time.

5. The statements, factual recitations, and references contained within Document No. 336 are true and correct to the best of my knowledge, information, and belief. These statements and references remain factually accurate today and continue to directly support my pending claims and allegations against creditors Keith and Lisa Wolfe and Traditions Bank.

1

6. Document No. 336 describes actions by Keith and Lisa Wolfe and Traditions Bank, including coordinated efforts, improper pressure tactics, financial disruptions, interference with contractual obligations, and breaches of fiduciary duties, all directly contributing to significant business and personal financial harm to me and the entities under my direct ownership and control.

7. I specifically incorporate by reference all factual assertions, allegations, and evidentiary statements made in Document No. 336 into this affidavit. Those facts and assertions remain entirely relevant to, and supportive of, my current legal claims and my request for judicial notice in this proceeding.

8. I further attest that taking judicial notice of Document No. 336 will provide crucial factual context, clarity, and support for my adversarial claims, streamline proceedings, and prevent unnecessary duplication of previously provided evidence.

9. This affidavit is submitted in good faith to establish clear, factual groundwork in connection with my pending adversary proceedings, and to facilitate an accurate and comprehensive judicial record in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed this 19th day of June, 2025, at Mechanicsburg, Pennsylvania.

/s/ Andrew William Mulkerin
Andrew William Mulkerin
Debtor, Pro Se
1740 Adeline Drive
Mechanicsburg, PA 17050
andy.mulkerin.pro-se@outlook.com

---

CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2025, a true and correct copy of the foregoing Affidavit of Andrew William Mulkerin was served electronically and/or by first-class U.S. mail upon:

2

- Chapter 13 Trustee, Jack N. Zaharopoulos

- United States Trustee's Office

- Keith and Lisa Wolfe, c/o Brent Diefenderfer, Esquire (CGA Law Firm)

/s/ Andrew William Mulkerin

Andrew William Mulkerin

Debtor, Pro Se

3

# UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In re:

**ANDREW WILLIAM MULKERIN,**

Debtor.

Case No.: 1:24-bk-00270-HWV

Chapter 13

**FILED**
Harrisburg, PA

OCT – 9 2024

Clerk,
US Bankruptcy Court

## PROFFER OF INFORMATION REGARDING ALLEGED FRAUDULENT CONDUCT AND CONSPIRACY INVOLVING TRADITIONS BANK AND ASSOCIATED PARTIES

**Submitted by:**
Andrew William Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
Phone: 717-571-5670
Email: andy.mulkerin.pro-se@outlook.com

**Date:** October 9, 2024

## Introduction

I, Andrew W. Mulkerin, the debtor in the above-captioned bankruptcy case, hereby submit this proffer to provide detailed information regarding alleged fraudulent activities, conspiracy, and other wrongful conduct involving Traditions Bank, Kinsley Equities II, Limited Partnership, Barley Snyder LLP, certain employees of the York County Prothonotary Office, and associated individuals and entities. These actions have significantly harmed my businesses, financial stability, and

1

personal well-being, ultimately leading to my Chapter 13 bankruptcy filing (Case No. **1:24-bk-00270-HWV**), as well as previous filings:

- **Case No. 1:23-bk-02569-HWV** (Mulkerin Holdings, LLC)

- **Case No. 1:23-bk-02570-HWV** (Beta Machine & Fabrication, LLC)

- **Case No. 1:23-bk-02571-HWV** (Javelin Automation, LLC)

- **Case No. 1:23-bk-02595-HWV** (Personal Chapter 7 Bankruptcy)

## Summary of Allegations

1. **Fraudulent Misrepresentation and Predatory Lending Practices by Traditions Bank**

2. **Conspiracy and Collusion Involving Multiple Parties**

3. **Conflicts of Interest and Misuse of Positions**

4. **Potential Fraud Against Federal Programs**

5. **Obstruction of Justice and Interference with Legal Processes**

## Detailed Information

**1. Fraudulent Misrepresentation and Predatory Lending Practices by Traditions Bank**

**a. Extended Deal Execution with Wolfe Tool & Machine Company**

- **Timeline:** January 2022 – September 2022

- **Parties Involved:**

  - **Traditions Bank**

    - **Michael Huson** – Executive Vice President, Commercial Banking

    - **Mike Sharp** – Commercial Bank Executive

2

- **Charles Wurster** – Chief Credit Officer
- **Hannah Seacrest** – Financial Analyst (Intern)
  - **Wolfe Tool & Machine Company**
    - **Keith E. Wolfe** – President
    - **Lisa B. Wolfe** – Secretary

- **Details:**
  - In January 2022, I engaged Traditions Bank to secure financing for acquiring assets from Wolfe Tool & Machine Company through my LLC, Mulkerin Tool & Machine, LLC, which I had set up for this purpose.
  - The loan approval and deal execution process extended over approximately nine months, significantly longer than typical for such transactions, despite my repeated attempts to expedite the process.
  - Traditions Bank failed to provide satisfactory explanations for the prolonged delays. Mike Sharp offered repeated, vague apologies via email, phone, and in person, while I continuously applied pressure to close what should have been a straightforward asset purchase.
  - I believe this delay was a strategic tactic to deplete my cash reserves and weaken my financial position. Traditions Bank was generally aware of my unsuccessful fundraising attempts for Mulkerin Holdings, LLC, and I suspect Andrew V. Papoutsis (my father-in-law and majority owner of Ventwell, Inc. and APX Seetech Systems, Inc.) may have intervened to disrupt or delay the deal.
  - Shortly after the deal closed in October 2022, Keith E. Wolfe informed me that Andrew V. Papoutsis had contacted both Traditions Bank and him, offering to pay "double" what I was offering. While Keith reassured me of his commitment to our agreement, in hindsight, these interactions seem suspicious and warrant investigation. Keith provided irrelevant details during our conversation and appeared

3

nervous. At the time, I found it odd but didn't focus on it until later incidents made the situation seem more concerning.

**b. Promises of Working Capital and Subsequent Denial**

- **Details:**

  o At the loan signing, in the presence of my wife Irene, I explicitly emphasized the urgent need for quick access to additional working capital. Mike Sharp assured both of us that this would be "no problem at all." Irene can corroborate this conversation with a statement. Additionally, on numerous prior occasions, Traditions Bank representatives repeatedly assured me that ample working capital would be available to support the growth of my business.

  o Based on these assurances, I proceeded with expansion plans. I rapidly increased sales at Mulkerin Tool & Machine, Inc., utilizing working capital with the understanding it could be replenished promptly due to our gross margins exceeding 50%. The vast majority of the customers were long-term, repeat clients who were well known to Traditions Bank, which had provided business banking to the Wolfes for over 30 years. These customers were large, stable industrial companies, most of which were located in York, PA, and personally known to the leadership team at Traditions Bank.

  o I clearly communicated my ambitious growth plans to Traditions Bank, emphasizing the need for additional working capital and outlining my vision of contributing to the broader industrial landscape of the nation. While I sensed that the local York team didn't fully grasp the scale of what I intended to achieve—I initially believed their support was genuine, despite their lack of sophistication. Unfortunately, I did not anticipate the dishonesty that would follow, which, as I've come to learn, seems to be a deeply ingrained feature of the York business community.

  o Despite Traditions Bank's promises, they failed to provide the necessary working capital and disregarded the well-prepared and thoroughly justified information I presented. My projections were

4

backed by long-term, repeat customers, and we had confirmed orders requiring timely execution—crucial facts that Traditions Bank inexplicably ignored. On a one-on-one phone call with Charles Wurster, he became surprisingly hostile when I questioned how closely they were reviewing the documents I was sending, as it suggested a lack of diligence. He seemed unable to comprehend how working capital was essential for a growing company like mine. I believe Charles did understand that these orders should trigger bank support in terms of working capital under a normal banking relationship but was attempting to undermine my success, which is why he could not affirm his understanding.

- When we urgently needed funds to purchase materials for confirmed customer orders, Traditions Bank refused to extend our working capital line, effectively preventing us from fulfilling those orders. In the machining industry, material costs represent the largest single expense, particularly for large and complex projects that require expensive raw materials. This refusal critically undermined our ability to operate and deliver on key contracts, eventually leading to the cessation of all business activities.

## c. Misrepresentation of Loan Terms and Questionable Federal Loan

- **Details:**

  - Late in the financing process, Traditions Bank arranged an additional $200,000 unsecured federal loan to bridge a capital gap. The loan was through a federal program intended for women-owned businesses, specifically the "Build on Business" (BOB) program (Loan #1188) provided by the Federal Home Loan Bank of Pittsburgh. This critical detail was not made clear by Traditions Bank, and even when it was disclosed, the information remained vague until much later in the process.

  - My wife, Irene, was encouraged to sign the loan documents without full disclosure of the loan's nature and specifics.

5

- o On the day of signing, Irene was presented with stationery labeled "Her Traditions," which caused confusion at the time. The reason became clearer after the signing, when Irene fully understood the terms of the loan, as Traditions Bank staff persistently attempted to have her open a checking account, seemingly as a condition of the loan.

- o Irene did not, and does not, work at or operate Mulkerin Tool & Machine, LLC, nor does she hold any ownership of the business. This raises serious concerns about the integrity of the underwriting at Traditions Bank and potential misuse of federal programs—a fact that Traditions Bank executives were fully aware of.

### d. Use of Outdated and Inaccurate Financial Projections

- **Details:**

  - o The bank used outdated and unrealistic financial projections in loan documents submitted to their credit committee.

- **Awareness of Inaccuracies:**

  - o The financial projections provided did not accurately reflect my actual business plans at that time, particularly as we had been forced out of our location at 333 East 7th Street, York, PA by Tighe King, Jr., the owner of the property. At the time of closing on Wolfe, continued operations were run by the Mulkerin Holdings team out of my family home at 1740 Adeline Drive, Mechanicsburg, PA. I was determined to keep the business running and ensure my team continued to receive work and pay, even while I faced significant financial difficulties myself. During this period, my businesses were essentially "homeless" until the deal provided us with a permanent facility at 210 Lafayette St., York, PA 17401. This was a very precarious state for a group of industrial companies. Traditions Bank was fully aware of these operational challenges and financial struggles, yet they repeatedly expressed confidence in me and my vision for growth, which I, perhaps naively, trusted.

6

- o **Questioning the Projections:**

    - Upon reviewing the projections, I questioned them via email and phone call to Mike Sharp.

    - Mike Sharp pressured me to remain silent about the inaccuracies to ensure loan approval, implying that voicing concerns would jeopardize the deal.

- o **Awareness of Legal Matters:**

    - The bank was fully aware that I was involved in litigation as a defendant against Leroy King, Jr., related to the property at 333 East 7th Ave, York, PA. This litigation stemmed from a failed deal in which I had attempted to purchase the property from Leroy King, Jr., but the agreement ultimately collapsed, leading to the lawsuit as Leroy King, Jr. sought to remove me from the building.

    - During a contentious conference call in early July 2023 with Mike Sharp and Charles Wurster regarding working capital, the subject of my ongoing litigation with Leroy King Jr. came up. Charles Wurster initially attempted to feign ignorance of the lawsuit, but I confronted him and made it clear that Traditions Bank was fully aware of the situation. I informed him that I had proof through communications between my attorney, Ben Dunlap, Esq., of Nauman, Smith, Shissler & Hall, and the Wolfes' attorney, Ronald Hershner, Esq., of Stock & Leader, which confirmed their knowledge of the litigation. Faced with this, both Wurster and Sharp backed down, ultimately acknowledging that the lawsuit was not new information to them.

    - An email from Hershner confirms Traditions Bank's awareness of the legal action before the deal was signed.

    - It appears that Traditions Bank was planning to use the "discovery" of the litigation as a pretext to continue denying us

7

the working capital we were promised or to alter the terms of our agreement and take further legal action. Approximately one week later, Traditions Bank initiated foreclosure proceedings on Mulkerin Tool & Machine, LLC. Charles Wurster filed an affidavit for Traditions Bank, using information from lawsuits filed against myself and my wife.

## 2. Conspiracy and Collusion Involving Multiple Parties

### a. Exclusion of Key Bank Personnel and Conflicts of Interest

- **Details:**
  - Despite the transaction's significance, I was never introduced to Michael Huson, head of the bank's commercial lending group.
  - I later discovered Mr. Huson had a longstanding personal and professional relationship (over 30 years) with Keith E. Wolfe and Lisa B. Wolfe.
  - I believe this relationship adversely influenced the bank's actions toward me and allowed unauthorized communications between the Wolfes and Traditions Bank and potentially others.
  - Given my extensive business experience and the size of the deal, that the head of commercial lending was not involved and noticeably absent. I made repeated requests to meet Mr. Huson; Mike Sharp and Charles Wurster consistently ignored or deflected these requests.

### b. Introduction of CFO with Potential Conflicts of Interest

- **Details:**
  - Traditions Bank recommended Mr. Christopher Izzo as an interim Chief Financial Officer (CFO) for my business.
  - While I was aware of a professional relationship between Mr. Izzo and Traditions Bank, it soon became evident that he had a deeper friendship with Charles Wurster. I had engaged Mr. Izzo's services at

8

the explicit direction of Traditions Bank, as I recognized the need for assistance due to the serious financial trouble I was facing, partly of their making. Despite this, I couldn't shake the feeling that his close ties to Wurster might have influenced the situation in ways I hadn't anticipated.

○ I suspect Mr. Izzo's actions while working for me were negatively influenced by Traditions Bank. Mr. Izzo repeatedly pressured me to connect him with the Trust Protector and Distribution Advisor of my wife Irene's trust, a request I consistently refused. His insistence on this matter was uncharacteristic and raised significant suspicions. When I made it clear that it was appropriate for him to speak directly with the Trust Protector and Distribution Advisor, Mr. Izzo abruptly resigned. I believe this was one of the first coordinated attempts to deprive us of access to Irene's trust and sabotage our financial recovery.

### c. Coordination with Adverse Parties and Legal Actions

- **Details:**

  ○ On August 10, 2023, APX Enclosures, Inc., APX Yorksheet Metal, Inc., APX Industrial Coatings, APX Mitchell Shop, APX Seetech Systems, Inc., and Ventwell, Inc. filed a writ of summons against me, my wife, and all my newly formed businesses—Mulkerin Holdings, LLC, Beta Machine & Fabrication, LLC, Javelin Automation, LLC, and True Air, LLC—by Andrew V. Papoutsis owns 2-4% of APX Enclosures, Inc., APX Yorksheet Metal, Inc., APX Industrial Coatings, and APX Mitchell Shop, with 96% owned by the TT/Papoutsis Family Trust dated December 13, 2012, a trust in which my wife, Irene Mulkerin, is one of three beneficiaries. Papoutsis also holds a 53% majority stake in APX Seetech Systems, Inc., and Ventwell, Inc. He is believed to own 100% of APX Null Machine Shop, Inc. The writ notably lacked any substantive claims and appeared to function as a pressure tactic. It was officially served on August 18, 2023, at mu businesses location, 3735 Board Rd, York, PA.

9

- o  I was served by Sheriff's Deputy Bradley Myers of the York County Sheriff's Office. I noticed that he was acting strangely and appeared uncomfortable, so I immediately went to the York County Prothonotary Office, co-located with the York County Sheriff's Office at 45 N. George St., York, PA. I anticipated this kind of coordinated attack and wanted to see if I could cause confusion or learn something by going directly to the York County Judicial Center, where I expected the source of the attack. It became increasingly clear that various powerful local forces were intent on using any means necessary to undermine me. Despite being outmatched in resources, I was determined to defend myself with the full force of my intelligence, quick reactions, and strategic unpredictability—keeping them off balance and maintaining the element of surprise.

- o  At the York Prothonary's Office, I personally witnessed Prothonotary Allison Blew and Clerk Rose Musso-Snyder actively preparing paperwork for lawsuits against me at the customer service. These lawsuits were initiated simultaneously by Traditions Bank and Kinsley Equities II, LP.

- o  Both Blew and Musso-Snyder appeared visibly shocked and uncomfortable upon seeing me at the window.

- o  When I inquired about the paperwork I had just seen, they refused to provide details, stating, "No, they aren't ready yet," and they attempted to physically obscure them so I couldn't even see the top pages.

- o  Musso-Snyder resides at 2545 Cambridge St., East York, PA 17402. Attorney Justin Tomevi of Barley Snyder LLP, grew up just two doors down at 2503 Cambridge St., East York, PA 17402. This close proximity raises concerns about a possible relationship, especially given Musso-Snyder's visibly uncomfortable and combative demeanor when arrived at the Prothonotary's office. The familiarity between these individuals, combined with the circumstances, suggests the potential for improper coordination.

10

- Just hours later, Attorney Justin A. Tomevi, who had been leading the case, abruptly disengaged, and Eden R. Bucher, Esq. stepped in as lead counsel for both Traditions Bank and Kinsley Equities II, Limited Partnership. Tomevi's sudden withdrawal marked a dramatic shift from his previous role as the lead attorney aggressively pursuing actions to harass and undermine my businesses.

- Eden R. Bucher, Esq. has led the coordination since Justin A. Tomevi withdrew. During a bankruptcy hearing on December 5, 2023, Ms. Bucher notably denied any knowledge of my allegations, stating she had "no idea what Mr. Mulkerin is talking about" regarding my accusation of an ongoing conspiracy. Given that Ms. Bucher was central to this alleged conspiracy, I believe her statement in federal court was untruthful and an attempt to mislead the court and cover up her involvement.

## 3. Conflicts of Interest and Misuse of Positions

## a. Legal Representation Overlaps and Conflicts

- **Details:**

  - Barley Snyder LLP, through attorneys Eden R. Bucher and Justin Tomevi, represented independent creditors, serving as legal counsel for Traditions Bank and representing Kinsley Equities II LP, the landlord of the 3735 Board Rd property.

  - Barley Snyder LLP, via Alex E. Snyder, Esq., served as Trust Protector and Distribution Advisor for my wife's trust (TT/Papoutsis Family Trust dated December 13, 2012) during the period when these incidents occurred (July 7 – November 20, 2023).

  - Barley Snyder LLP has also represents Andrew V. Papoutsis since the inception of the TT/Papoutsis Family Trust directly, a fact that has been deliberately suppressed and not acknowledged by any parties involved to date.

## b. Misuse of Trust Roles

11

- **Details:**

  o Alex E. Snyder, Esq., a partner at Barley Snyder LLP, was installed as the Trust Protector for my wife Irene's trust by her two older sisters, who managed to meet the required 2/3 threshold as outlined in the convoluted trust document. During his tenure as Trust Protector, Snyder worked closely with Traditions Bank's attorneys and associated parties, further raising concerns of potential conflicts of interest and collusion within the ongoing legal matters. Alex E. Snyder consistently stonewalled Irene's various urgent communication requests.

  o Despite his role, Mr. Snyder did not assist in addressing the bank's concerns regarding my financial situation and ignored Irene's repeated requests for emergency fund distributions. He completely stonewalled Irene throughout his time as Trust Protector and Distribution Advisor for the TT/Papoutsis Family Trust.

  o Eden R. Bucher was fully aware of the substantial assets held in Irene's trust and Irene's intent to access the funds to pay Traditions Bank and Kinsley Equities II, Limited Partnership, but she accelerated legal actions instead of addressing these concerns.

  o I believe there was deliberate coordination among the involved parties to intensify my financial distress and restrict my access to capital, seemingly aimed at undermining my business and personal financial stability. This appears calculated and malicious, with the ultimate motivation being a coordinated effort to cover up a massive national-scale trust fraud scheme that the involved parties were implicated in or feared I would be able to implicate them in.

  o Irene has filed a lawsuit that is scheduled for trial in the spring of 2025. However, Andrew V. Papoutsis, Wilmington Trust Company, and their numerous legal representatives are currently attempting to settle case 2023-1237-BWD in Delaware Chancery. They have twice involved me in the settlement process against my wishes, which I believe is another violation of the federal bankruptcy stay. I

12

understand the stakes—they are facing significant legal trouble if everything comes out, but I need them to back off now.

## 4. Potential Fraud Against Federal Programs

- **Details:**
  - The additional loan arranged by Traditions Bank was through a federal program intended for women-owned businesses.
  - My wife was misled into signing loan documents without full disclosure.
  - The deliberate mischaracterization of her role raises serious concerns about potential fraud involving federal lending programs.
  - I believe Traditions Bank may have misrepresented the loan to improperly secure federal funds.

## 5. Obstruction of Justice and Interference with Legal Processes

## a. Obstruction of Business Operations

- **Details:**
  - On July 25, 2023, at 4:00 p.m., my attorney, Steven Wright, Esq. of K&L Gates, had a phone call with Justin A. Tomevi and Eden R. Bucher, during which he indicated that Traditions Bank attempts to prevent me from relocating equipment from Mulkerin Tool & Machine to the larger facility at 3735 Board Rd., hindering operational efficiency.
  - This obstruction severely hindered my ability to consolidate operations, fulfill customer orders, and manage the business effectively.
  - Traditions Bank's actions directly impacted my business's capacity to meet financial obligations, including those owed to them, ultimately leading to the collapse of both my business and personal finances.

13

- Despite being only approximately $20,000 behind on payments, they aggressively pursued foreclosure and legal actions. They have not been able to sell any of the assets they foreclosed on, resulting in a larger loss. At the same time, they are no longer pursuing legal action against me or my wife, for reasons that have not been explained. Despite their hasty pursuit of foreclosures, Traditions Bank is holding a deteriorating asset and a significant loss, yet they have ceased legal action against us without any clear explanation.

**b. Interference with Potential Sale of Business Assets**

- **Details:**
  - I negotiated a deal to sell my business assets to Drew Wildonger, president of Kermitool, Inc finalizing the terms over email on July 26, 2023.
  - The deal would have satisfied debts owed to Traditions Bank and the Wolfes, with no financial benefit to me.
  - Traditions Bank failed to respond to the proposed deal and instead filed lawsuits against me on August 18, 2023.
  - Only days later, Wildonger, in what appears to be coordination with the Wolfes and Traditions Bank, reduced his offer by $200,000—the exact amount of the federally backed loan.
  - I believe Traditions Bank, Mr. Wildonger, and the Wolfes colluded to undermine the sale and potentially defraud the federal government.

**Conclusion and Request**

I believe that the actions described above constitute fraudulent conduct, conspiracy, predatory lending practices, and other violations of federal law. The coordinated efforts between Traditions Bank, Kinsley Equities II LP, Barley Snyder LLP, Andrew V. Papoutsis, Wilmington Trust Company and certain employees of the York County Prothonotary Office, legal representatives, and other involved parties

14

are illegal and have caused significant harm to my businesses, personal life, and health.

As I work to resume my career and regain momentum, it is critical that the full extent of these actions comes to light.

Respectfully submitted,

/s/Andrew William Mulkerin

October 9, 2024

## Declaration

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 9, 2024.

/s/Andrew William Mulkerin

Andrew William Mulkerin

## Note

This proffer is made voluntarily and is intended to assist the court in evaluating the circumstances and potential violations of law relevant to these proceedings. I understand that providing false information to the court is a serious offense and may result in penalties under federal law.

15

**UNITED STATES BANKRUPTCY COURT hFOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

In re:

**ANDREW WILLIAM MULKERIN**,

Debtor.

Case No.: 1:24-bk-00270-HWV

Chapter 13

**FILED**
Harrisburg, PA

OCT - 9 2024

Clerk,
US Bankruptcy Court

## PROFFER REGARDING ALLEGED FRAUD, EMBEZZLEMENT, AND BREACHES OF FIDUCIARY DUTY IN VENTWELL, INC. AND APX SEETECH SYSTEMS, INC.

**Submitted by:**

Andrew William Mulkerin

1740 Adeline Drive

Mechanicsburg, PA 17050

Email: andy.mulkerin.pro-se@outlook.com

Phone: 717-571-5670

**Date:** October 9, 2024

### Introduction

I, Andrew William Mulkerin, the debtor in the above-captioned bankruptcy case, respectfully submit this proffer to bring to the Court's attention serious allegations involving Andrew V. Papoutsis, Ventwell, Inc. and APX Seetech Systems, Inc. I believe that significant breaches of fiduciary duty, contractual violations, financial fraud, embezzlement, and tax fraud have occurred, causing substantial harm to myself, other shareholders, and the public interest.

1

## Executive Summary

This proffer outlines actions taken by Andrew V. Papoutsis, co-founder and majority shareholder of Ventwell, Inc. and APX Seetech Systems, Inc., which I believe constitute violations of federal law. As a co-founder and 47% shareholder of both companies, I allege that Mr. Papoutsis unilaterally dissolved both businesses in late 2021 without consultation or consent, in violation of shareholders' agreements and fiduciary duties. This dissolution not only destroyed all value from my estate but may have been intended to conceal underlying financial misconduct.

Furthermore, I suspect that Mr. Papoutsis sought to deprive me of financial resources to prevent me from competing effectively, thereby attempting to evade accountability and cover up larger financial and tax fraud involving other entities. I believe these efforts to conceal financial and tax fraud are ongoing.

## Background

## Companies Involved

1. **Ventwell, Inc.**

   - **Founded:** March 2018
   - **Business:** Manufacturing modern, robustly designed, and thoughtfully engineered industrial HVAC units.
   - **Ownership:** 53% Andrew V. Papoutsis, 47% Andrew W. Mulkerin

2. **APX Seetech Systems, Inc.**

   - **Founded:** May 2018
   - **Business:** Industrial automation, conveyors, and robotic solutions for industrial applications.
   - **Ownership:** 53% Andrew V. Papoutsis, 47% Andrew W. Mulkerin

## My Role

- **Co-founder and CEO**

- Responsible for day-to-day operations, business development, and financial management.

- Invested significant time, expertise, resources, and intellectual capital into both companies.

**Papoutsis' Role:**

Papoutsis was only providing capital and was not familiar with the businesses in much depth.

- **Unilateral Dissolution:**

  o In late 2021, Mr. Papoutsis unilaterally dissolved both Ventwell and APX Seetech without consulting me.

- **Lack of Consent:**

  o This action was taken without the required approval as stipulated in the shareholders' agreements.

- **Destruction of Shareholder Value:**

  o The dissolution eliminated my 47% stake, valued at over $12.15 million during negotiations in August and September 2021.

**This Violation of Shareholders' Agreements**

- **Ventwell, Inc. Shareholders' Agreement** (Signed May 25, 2018)

- **APX Seetech Systems, Inc. Shareholders' Agreement** (Signed May 1, 2018)

- **Violations Include:**

  o Unauthorized dissolution of the companies.

  o Failure to follow agreed-upon procedures for significant corporate actions.

  o Exclusion of minority shareholders from decision-making processes.

**3. Destruction of Value and Failure to Liquidate Assets**

3

- **Projected Valuations:**
  - Ventwell was projected to reach a valuation of $100 million over five years.
  - APX Seetech was projected to reach $50 million over the same period.

- **No Liquidation Event:**
  - Assets were not liquidated or distributed, depriving me of the opportunity to recover any of my share of the companies' value.

- **Potential Concealment:**
  - The abrupt shutdown may have been intended to conceal financial discrepancies and misconduct.

## 4. Alleged Fraud, Embezzlement, and Tax Fraud

- **Financial Discrepancies:**
  - A third-party audit by RKL LLP in February 2021, which I commissioned due to unsettling financial observations, uncovered significant accounting irregularities.
  - Discrepancies included fabricated intercompany loans and violations of Generally Accepted Accounting Principles (GAAP).

- **Lack of Transparency:**
  - Requests for Ventwell and APX Seetech Systems financial records and explanations were ignored or denied, including attorney testimony in this court and case, testifying on behalf of Mr. Papoutsis and/or Wilmington Trust Company.
  - Tax documents provided contained inconsistencies and do not accurately reflect the financial positions of the companies. One such document includes a letter from Ray Miller, CPA, dated September 30, 2021, showing what are fabricated multimillion-dollar loans between Ventwell, APX Seetech Systems and other companies

4

controlled by Mr. Papoutsis but owned almost exclusively by the TT/Papoutsis Family Trust.

- **Potential Embezzlement:**
  - o Funds may have been misappropriated or used improperly without shareholder knowledge or consent.

## 5. Tax Irregularities

- **K-1 Tax Documents:**
  - o From 2018 to 2021, K-1 forms show significant inconsistencies, raising serious concerns about tax compliance.

- **IRS Notifications:**
  - o I have sent multiple letters to the IRS to make them aware of these issues, as I believe it is critical to correctly and properly resolve my tax position and obligations. This cannot happen until these matters are fully addressed.

## Conclusion

The actions undertaken by Mr. Papoutsis and associated individuals have inflicted substantial financial harm upon me, my estate, and potentially other stakeholders, including the U.S. taxpayer, as well as the federal and state governments of Pennsylvania. Based on the evidence and the circumstances described, I believe these actions may constitute serious violations of federal law, including but not limited to fraud, embezzlement, and tax evasion.

I am fully committed to cooperating with any investigation and am prepared to provide any additional information or testimony that may be required. A comprehensive forensic accounting analysis is critical to uncovering the full scope of the alleged misconduct. I am ready and able to perform or participate in such an analysis if given the opportunity to ensure that the truth is revealed and that justice is served.

5

Thank you for your attention to this serious matter. I trust that the Court will consider this proffer and take appropriate action to protect the interests of justice and all affected parties.

Respectfully submitted,

Andrew William Mulkerin
October 9, 2024

## Contact Information:

Andrew William Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
Email: andy.mulkerin.pro-se@outlook.com
Phone: 717-571-5670

## Declaration

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on October 9, 2024.

Andrew William Mulkerin

**Note:** This proffer is made voluntarily and is intended to assist the Court in understanding the allegations and determining appropriate actions. I understand that providing false information in this proffer may have legal consequences under federal law.

6

Case 1:25-cv-02519-JKM   Document 2   Filed 02/02/26   Page 37 of 316

 **Andy Mulkerin <andy.mulkerin@gmail.com>**

## Ventwell and Seetech Payables

**Charles Tiches** <CTiches@apx-enclosures.com>               Tue, Dec 28, 2021 at 12:11 PM
To: "andy.mulkerin@gmail.com" <andy.mulkerin@gmail.com>

Andy

I wanted to reach out to you to let you know that the APX affiliates intend on forgiving intercompany payables before year-end including those owed by Ventwell and Seetech.  Whether or not the significant income generated can be offset by past losses is a question for your accountant. Let me know if I can help and feel free to contact Showalter for additional information.

**Charles E. Tiches II**

**Chief Operating Officer**



**APX Enclosures, Inc.**

**9156 Molly Pitcher Hwy**

**Greencastle, PA. 17225**

**Cell (301) 991-6037**

**Office (717) 328 9399**

**apx-enclosures.com**

Case 1:25-bk-01575-HWV   Doc 110-6   Filed 08/13/25   Entered 08/13/25 13:21:50
Desc Exhibit 3:  Tiches Email   Page 1 of 1

671120

| | |
|---|---|
| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**2020**

For calendar year 2020, or tax year

beginning  /  / 2020  ending  /  /

**Shareholder's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

| Part I | Information About the Corporation |
|---|---|

**A** Corporation's employer identification number
83-0620238

**B** Corporation's name, address, city, state, and ZIP code
Ventwell, Inc.

P O Box 309
Greencastle PA 17225

**C** IRS Center where corporation filed return
Kansas City, MO  64999-0013

| Part II | Information About the Shareholder |
|---|---|

**D** Shareholder's identifying number
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

**E** Shareholder's name, address, city, state, and ZIP code
Andrew W. Mulkerin

3703 Barnstaple Road
Mechanicsburg PA 17050

**F** Current year allocation percentage . . . 47.36842 %

**G** Shareholder's number of shares
Beginning of tax year . . . . . . 45
End of tax year . . . . . . . 45

**H** Loans from shareholder
Beginning of tax year . . . . . . $
End of tax year . . . . . . . $ 59,211.

For IRS Use Only

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| 1 | Ordinary business income (loss) | 13 | Credits |
|---|---|---|---|
| | -608,824. | | |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| | | A | 0. |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis |
| | | C | 1,522. |
| 12 | Other deductions | | |
| | | 17 | Other information |
| | | V  * | STMT |

| 18 | ☐ | More than one activity for at-risk purposes* |
|---|---|---|
| 19 | ☐ | More than one activity for passive activity purposes* |

\* See attached statement for additional information.

For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.   www.irs.gov/Form1120S   REV 03/30/21 PRO   Schedule K-1 (Form 1120-S) 2020
BAA

2007218049

**PA Schedule RK-1 (07-20)**
**2020 Resident Schedule of**
**Shareholder/Partner/Beneficiary Pass Through Income, Loss and Credits**

021544736     MULKERIN                                      ANDREW                    W

                                                                         Final      N

3703 BARNSTAPLE ROAD                    (Individual=1, PA S Corp=2, All Other Corp=3,        Owner      1
                                        Estate/Trust=4, Partnership=5, LLC=6, Exempt=7)
                                                          Shareholder's Stock Ownership %    04736

                                        Amended      N
MECHANICSBURG      PA    17050                           Beneficiary's year-end Distribution %   00000

                                                              Partner's % of:
VENTWELL INC                                                  Profit sharing %               00000

GREENCASTLE        PA    17225    830620238    1001405445    Loss sharing %                 00000

                                                              Capital
Fiscal Year    N    (Estate/Trust=E, Partnership=P, PA S Corp =S, LLC=L)    S    Ownership %   00000

Short Year    N         General Partner or        N    Limited Partner or      N
                        LLC Member-Manager              Other LLC Member

| | | | |
|---|---|---|---|
| 1 | PA-Taxable Business Income (Loss) from Operations | 1 | -603381 |
| 2 | Interest Income | 2 | 0 |
| 3 | Dividend Income | 3 | 0 |
| 4 | Net Gain (Loss) from the Sale, Exchange or Disposition of Property | 4 | 0 |
| 5 | Net Income (Loss) from Rents, Royalties, Patents and Copyrights | 5 | 0 |
| 6 | Income of/from Estates or Trusts | 6 | 0 |
| 7 | Gambling and Lottery Winnings (Loss) | 7 | 0 |
| 8 | Resident Credit. Submit statement. | 8 | 0 |
| 9 | **Total Other Credits.** Submit statement. | 9 | 0 |
| 10 | Distributions of Cash, Marketable Securities, and Property - not including guaranteed payments | 10 | 0 |
| 11 | Guaranteed Payments for Capital or Other Services | 11 | 0 |
| 12 | All Other Guaranteed Payments for Services Rendered | 12 | 0 |
| 13 | Guaranteed Payments to the Retired Partner | 13 | 0 |
| 14 | Distributions from PA Accumulated Adjustments Account       Liquidating    N | 14 | 0 |
| 15 | Distributions of Cash, Marketable Securities, and Property | 15 | 0 |
| 16 | Nontaxable income (loss) or nondeductible expenses required to calculate owner's basis. Submit statement. | 16 | -6966 |

**Note: Lines 17 through 20 are for information purposes only.**

| | | | |
|---|---|---|---|
| 17 | Owner's Share of IRC Section 179 allowed according to PA rules | 17 | 0 |
| 18 | Owner's Share of Straight-Line Depreciation | 18 | 0 |
| 19 | Partner's Share of Nonrecourse Liabilities at year-end | 19 | 0 |
| 20 | Partner's Share of Recourse Liabilities at year-end | 20 | 0 |

**NOTE: Amounts from this schedule must be reported on the appropriate PA Tax Return.**

REV 03/05/21 PRO

2007218049

## Statement A—QBI Pass-through Entity Reporting

| Corporation's name: Ventwell, Inc. | | Corporation's EIN: 83-0620238 | |
|---|---|---|---|
| Shareholder's name: Andrew W. Mulkerin | | Shareholder's identifying no: 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 | |

| | 1120S, Line 21 | | |
|---|---|---|---|
| | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |

**Shareholder's share of:**

**QBI or qualified PTP items subject to shareholder-specific determinations:**

| | 1120S, Line 21 | | |
|---|---|---|---|
| Ordinary business income (loss) | -608,824. | | |
| Rental income (loss) | | | |
| Royalty income (loss) | | | |
| Section 1231 gain (loss) | | | |
| Other income (loss) | | | |
| Section 179 deduction | | | |
| Other deductions | | | |
| **W-2 wages** | | | |
| **UBIA of qualified property** | 16,926. | | |
| **Section 199A dividends** | | | |

## Statement A—QBI Pass-through Entity Reporting

| Corporation's name: | | Corporation's EIN: | |
|---|---|---|---|
| Shareholder's name: | | Shareholder's identifying no: | |

| | | | |
|---|---|---|---|
| | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |

**Shareholder's share of:**

**QBI or qualified PTP items subject to shareholder-specific determinations:**

| | | | |
|---|---|---|---|
| Ordinary business income (loss) | | | |
| Rental income (loss) | | | |
| Royalty income (loss) | | | |
| Section 1231 gain (loss) | | | |
| Other income (loss) | | | |
| Section 179 deduction | | | |
| Other deductions | | | |
| **W-2 wages** | | | |
| **UBIA of qualified property** | | | |
| **Section 199A dividends** | | | |

REV 03/30/21 PRO

671120

| | | | | |
|---|---|---|---|---|
| ☐ Final K-1 | | ☐ Amended K-1 | | OMB No. 1545-0123 |

**Schedule K-1 (Form 1120-S)**

Department of the Treasury
Internal Revenue Service

**2020**

For calendar year 2020, or tax year

beginning    /    / 2020    ending    /    /

**Shareholder's Share of Income, Deductions, Credits, etc.** ▶ See separate instructions.

| Part I | Information About the Corporation |
|---|---|

**A** Corporation's employer identification number
82-5386472

**B** Corporation's name, address, city, state, and ZIP code
APX Seetech Systems, Inc.

P O Box 309
Greencastle PA 17225

**C** IRS Center where corporation filed return
Kansas City, MO   64999-0013

| Part II | Information About the Shareholder |
|---|---|

**D** Shareholder's identifying number
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

**E** Shareholder's name, address, city, state, and ZIP code
Andrew W. Mulkerin

3703 Barnstaple Road
Mechanicsburg PA 17050

**F** Current year allocation percentage . . . .   47.36842 %

**G** Shareholder's number of shares
Beginning of tax year . . . . . . 45
End of tax year . . . . . . . 45

**H** Loans from shareholder
Beginning of tax year . . . . . $ _____
End of tax year . . . . . . . $ _____

**For IRS Use Only**

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| **1** Ordinary business income (loss) | -1,172,629. | **13** | Credits |
| **2** Net rental real estate income (loss) | | | |
| **3** Other net rental income (loss) | | | |
| **4** Interest income | | | |
| **5a** Ordinary dividends | | | |
| **5b** Qualified dividends | | **14** | Foreign transactions |
| **6** Royalties | | | |
| **7** Net short-term capital gain (loss) | | | |
| **8a** Net long-term capital gain (loss) | | | |
| **8b** Collectibles (28%) gain (loss) | | | |
| **8c** Unrecaptured section 1250 gain | | | |
| **9** Net section 1231 gain (loss) | | | |
| **10** Other income (loss) | | **15** | Alternative minimum tax (AMT) items |
| | | A | 0. |
| **11** Section 179 deduction | | **16** | Items affecting shareholder basis |
| | | B | 125,177. |
| **12** Other deductions | | C | 336. |
| | | **17** | Other information |
| | | V * | STMT |

| | | |
|---|---|---|
| **18** ☐ | More than one activity for at-risk purposes* | |
| **19** ☐ | More than one activity for passive activity purposes* | |

\* See attached statement for additional information.

For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.   www.irs.gov/Form1120S   REV 03/30/21 PRO   Schedule K-1 (Form 1120-S) 2020
BAA

## Statement A—QBI Pass-through Entity Reporting

| Corporation's name: APX Seetech Systems, Inc. | | Corporation's EIN: 82-5386472 | |
|---|---|---|---|
| Shareholder's name: Andrew W. Mulkerin | | Shareholder's identifying no: 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 | |

| Shareholder's share of: | 1120S, Line 21 ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB |
|---|---|---|---|
| **QBI or qualified PTP items subject to shareholder-specific determinations:** | | | |
| Ordinary business income (loss) . . . . . . . . . . . . . . . . | -1,172,629. | | |
| Rental income (loss) . . . . . . . . . . . . . . . . . . . . . . | | | |
| Royalty income (loss) . . . . . . . . . . . . . . . . . . . . . | | | |
| Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . . | | | |
| Other income (loss) . . . . . . . . . . . . . . . . . . . . . . | | | |
| Section 179 deduction . . . . . . . . . . . . . . . . . . . . . | | | |
| Other deductions . . . . . . . . . . . . . . . . . . . . . . . | | | |
| W-2 wages. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 609,452. | | |
| UBIA of qualified property . . . . . . . . . . . . . . . . . . . | 75,888. | | |
| Section 199A dividends . . . . . . | | | |

## Statement A—QBI Pass-through Entity Reporting

| Corporation's name: | | Corporation's EIN: | |
|---|---|---|---|
| Shareholder's name: | | Shareholder's identifying no: | |

| Shareholder's share of: | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB |
|---|---|---|---|
| **QBI or qualified PTP items subject to shareholder-specific determinations:** | | | |
| Ordinary business income (loss) . . . . . . . . . . . . . . . . | | | |
| Rental income (loss) . . . . . . . . . . . . . . . . . . . . . . | | | |
| Royalty income (loss) . . . . . . . . . . . . . . . . . . . . . | | | |
| Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . . | | | |
| Other income (loss) . . . . . . . . . . . . . . . . . . . . . . | | | |
| Section 179 deduction . . . . . . . . . . . . . . . . . . . . . | | | |
| Other deductions . . . . . . . . . . . . . . . . . . . . . . . | | | |
| W-2 wages. . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| UBIA of qualified property . . . . . . . . . . . . . . . . . . . | | | |
| Section 199A dividends . . . . . | | | |

REV 03/30/21 PRO

671121

☐ Final K-1      ☐ Amended K-1      OMB No. 1545-0123

| Schedule K-1 (Form 1120-S) Department of the Treasury Internal Revenue Service | 2021 | Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|---|---|

For calendar year 2021, or tax year

beginning /  / 2021  ending  /  /

### Shareholder's Share of Income, Deductions, Credits, etc.
► See separate instructions.

| | | | | | |
|---|---|---|---|---|---|
| **Part I** | **Information About the Corporation** | | **1** Ordinary business income (loss) 51,147. | **13** | Credits |
| | | | **2** Net rental real estate income (loss) | | |
| **A** | Corporation's employer identification number 83-0620238 | | **3** Other net rental income (loss) | | |
| | | | **4** Interest income | | |
| **B** | Corporation's name, address, city, state, and ZIP code Ventwell, Inc. P O Box 309 Greencastle PA 17225 | | **5a** Ordinary dividends | | |
| | | | **5b** Qualified dividends | **14** | Schedule K-3 is attached if checked . . . . . ► ☐ |
| | | | **6** Royalties | **15** A | Alternative minimum tax (AMT) items 0. |
| | | | **7** Net short-term capital gain (loss) | | |
| **C** | IRS Center where corporation filed return Kansas City, MO  64999-0013 | | **8a** Net long-term capital gain (loss) | | |
| **D** | Corporation's total number of shares Beginning of tax year . . . . . 95 End of tax year . . . . . . . 95 | | **8b** Collectibles (28%) gain (loss) | | |
| | | | **8c** Unrecaptured section 1250 gain | | |
| **Part II** | **Information About the Shareholder** | | **9** Net section 1231 gain (loss) | **16** C | Items affecting shareholder basis 874. |
| **E** | Shareholder's identifying number 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 | | **10** Other income (loss) | | |
| **F** | Shareholder's name, address, city, state, and ZIP code Andrew W. Mulkerin 1740 Adeline Drive Mechanicsburg PA 17050 | | | | |
| **G** | Current year allocation percentage . . . 47.36842 % | | | **17** V  *STMT | Other information |
| | | | **11** Section 179 deduction | | |
| **H** | Shareholder's number of shares Beginning of tax year . . . . . 45 End of tax year . . . . . . . 45 | | **12** Other deductions | | |
| **I** | Loans from shareholder Beginning of tax year . . . . . $ 0. End of tax year . . . . . . . $ 0. | | | | |
| For IRS Use Only | | | **18** ☐ More than one activity for at-risk purposes* **19** ☐ More than one activity for passive activity purposes* | | |
| | | | * See attached statement for additional information. | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.    www.irs.gov/Form1120S    REV 03/28/22 PRO    Schedule K-1 (Form 1120-S) 2021
BAA

---

## List of Codes

This list identifies the codes used on Schedule K-1 for all shareholders. For detailed reporting and filing information, see the specific line instructions, earlier, and the instructions for your income tax return.

### Box 10. Other income (loss)

*Code*

A  Other portfolio income (loss)
B  Involuntary conversions
C  Section 1256 contracts & straddles
D  Mining exploration costs recapture
E  Section 951A(a) income inclusions
F  Inclusions of subpart F income
G  Section 951(a)(1)(B) inclusions
H  Other income (loss)

### Box 12. Other deductions

A  Cash contributions (60%)
B  Cash contributions (30%)
C  Noncash contributions (50%)
D  Noncash contributions (30%)
E  Capital gain property to a 50% limit organization (30%)
F  Capital gain property (20%)
G  Contributions (100%)
H  Investment interest expense
I  Deductions—royalty income
J  Section 59(e)(2) expenditures
K  Reserved for future use
L  Deductions—portfolio (other)
M  Preproductive period expenses
N  Reserved for future use
O  Reforestation expense deduction
P  Reserved for future use
Q  Reserved for future use
R  Reserved for future use
S  Other deductions

### Box 13. Credits

A  Reserved for future use
B  Reserved for future use
C  Low-income housing credit (section 42(j)(5)) from post-2007 buildings
D  Low-income housing credit (other) from post-2007 buildings
E  Qualified rehabilitation expenditures (rental real estate)
F  Other rental real estate credits
G  Other rental credits
H  Undistributed capital gains credit
I  Biofuel producer credit
J  Work opportunity credit
K  Disabled access credit
L  Empowerment zone employment credit
M  Credit for increasing research activities
N  Credit for employer social security and Medicare taxes
O  Backup withholding

P  Other credits

### Box 15. Alternative minimum tax (AMT) items

A  Post-1986 depreciation adjustment
B  Adjusted gain or loss
C  Depletion (other than oil & gas)
D  Oil, gas, & geothermal—gross income
E  Oil, gas, & geothermal—deductions
F  Other AMT items

### Box 16. Items affecting shareholder basis

A  Tax-exempt interest income
B  Other tax-exempt income
C  Nondeductible expenses
D  Distributions
E  Repayment of loans from shareholders
F  Foreign taxes paid or accrued

### Box 17. Other information

A  Investment income
B  Investment expenses
C  Qualified rehabilitation expenditures (other than rental real estate)
D  Basis of energy property
E  Recapture of low-income housing credit (section 42(j)(5))
F  Recapture of low-income housing credit (other)

G  Recapture of investment credit
H  Recapture of other credits
I  Look-back interest—completed long-term contracts
J  Look-back interest—income forecast method
K  Dispositions of property with section 179 deductions
L  Recapture of section 179 deduction
M  Section 453(l)(3) information
N  Section 453A(c) information
O  Section 1260(b) information
P  Interest allocable to production expenditures
Q  CCF nonqualified withdrawals
R  Depletion information—oil and gas
S  Reserved for future use
T  Reserved for future use
U  Net investment income
V  Section 199A information
W  Reserved for future use
X  Reserved for future use
Y  Reserved for future use
Z  Reserved for future use
AA  Excess taxable income
AB  Excess business interest income
AC  Gross receipts for section 448(c)
AD  Other information

REV 03/28/22 PRO

-18-

2107213015

**PA Schedule RK-1 (06-21)**
**2021** Resident Schedule of
Shareholder/Partner/Beneficiary Pass Through Income, Loss and Credits

021544736    MULKERIN                                    ANDREW          W

Final    N

1740 ADELINE DRIVE

(Individual=1, PA S Corp=2, All Other Corp=3,    Owner    1
Estate/Trust=4, Partnership=5, LLC=6, Exempt=7)

Shareholder's Stock Ownership %    04736

Amended    N

MECHANICSBURG    PA    17050    Beneficiary's year-end Distribution %    00000

VENTWELL INC    Partner's % of: Profit sharing %    00000

GREENCASTLE    PA    17225    830620238    1001405445    Loss sharing %    00000

Fiscal Year    N    (Estate/Trust=E, Partnership=P, PA S Corp =S, LLC=L)    S    Capital Ownership %    00000

Short Year    N    General Partner or LLC Member-Manager    N    Limited Partner or Other LLC Member    N

| | | | |
|---|---|---|---|
| 1 | PA-Taxable Business Income (Loss) from Operations | 1 | 57056 |
| 2 | Interest Income | 2 | 0 |
| 3 | Dividend Income | 3 | 0 |
| 4 | Net Gain (Loss) from the Sale, Exchange or Disposition of Property | 4 | 0 |
| 5 | Net Income (Loss) from Rents, Royalties, Patents and Copyrights | 5 | 0 |
| 6 | Income of/from Estates or Trusts | 6 | 0 |
| 7 | Gambling and Lottery Winnings (Loss) | 7 | 0 |
| 8 | Resident Credit. Submit statement. | 8 | 0 |
| 9 | Total Other Credits. Submit statement. | 9 | 0 |
| 10 | Distributions of Cash, Marketable Securities, and Property - not including guaranteed payments | 10 | 0 |
| 11 | Guaranteed Payments for Capital or Other Services | 11 | 0 |
| 12 | All Other Guaranteed Payments for Services Rendered | 12 | 0 |
| 13 | Guaranteed Payments to the Retired Partner | 13 | 0 |
| 14 | Distributions from PA Accumulated Adjustments Account    Liquidating    N | 14 | 0 |
| 15 | Distributions of Cash, Marketable Securities, and Property | 15 | 0 |
| 16 | Nontaxable income (loss) or nondeductible expenses required to calculate owner's basis. Submit statement. | 16 | -6783 |

SECTION II
SECTION III
SECTION IV
SECTION V
SECTION VI

Note: Lines 17 through 20 are for information purposes only.

| | | | |
|---|---|---|---|
| 17 | Owner's Share of IRC Section 179 allowed according to PA rules | 17 | 0 |
| 18 | Owner's Share of Straight-Line Depreciation | 18 | 0 |
| 19 | Partner's Share of Nonrecourse Liabilities at year-end | 19 | 0 |
| 20 | Partner's Share of Recourse Liabilities at year-end | 20 | 0 |

SECTION VII

**NOTE: Amounts from this schedule must be reported on the appropriate PA Tax Return.**

REV 01/28/22 PRO



2107213015

2107213015

| Form 1120S | S Corporation Shareholder Stock and Debt Basis Limitations Worksheet | 2021 |
|---|---|---|

**This worksheet is to assist shareholders in preparing Form 7203 that gets filed at the shareholder level.**

► Note to shareholder:  Keep for your records.

► **To activate calculation of this worksheet,** check the Calculate Shareholder Stock and Debt Basis Limitations Worksheet 'Yes Box' on the S Corporation Information Worksheet.

| Name(s) shown on return | Identifying number |
|---|---|
| Andrew W. Mulkerin | 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 |

| Name of S corporation | Employer ID number |
|---|---|
| Ventwell, Inc. | 83-0620238 |

Stock block ►

## Part I    Shareholder Stock Basis

| | | | | |
|---|---|---|---|---|
| 1 | Stock basis at the beginning of the corporation's tax year . . . . . . . . . . . . . . . . | 1 | | 0 |
| 2 | Basis from any capital contributions made or additional stock acquired during the tax year. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 | | |
| 3 a | Ordinary business income (enter losses in Part III) . . . . | 3a | 51,147. | | |
| b | Net rental real estate income (enter losses in Part III) . . | 3b | | | |
| c | Other net rental income (enter losses in Part III) . . . . . | 3c | | | |
| d | Interest income. . . . . . . . . . . . . . . . . . . . . . . | 3d | | | |
| e | Ordinary dividends. . . . . . . . . . . . . . . . . . . . . | 3e | | | |
| f | Royalties . . . . . . . . . . . . . . . . . . . . . . . . . | 3f | | | |
| g | Net capital gains (enter losses in Part III) . . . . . . . . . | 3g | | | |
| h | Net section 1231 gain (enter losses in Part III) . . . . . . | 3h | | | |
| i | Other income (enter losses in Part III) . . . . . . . . . . | 3i | | | |
| j | Excess depletion adjustment . . . . . . . . . . . . . . . | 3j | | | |
| k | Tax-exempt income . . . . . . . . . . . . . . . . . . . . | 3k | | | |
| l | Recapture of business credits . . . . . . . . . . . . . . . | 3l | | | |
| m | Other items that increase stock basis . . . . . . . . . . . | 3m | | | |
| 4 | Add lines 3a through 3m . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | | 51,147. |
| 5 | Stock basis before distributions. Add lines 1, 2, and 4 . . . . . . . . . . . . . . . | 5 | | 51,147. |
| 6 | Distributions (excluding dividend distributions) . . . . . . . . . . . . . . . . . . . . | 6 | | |
| | Note: If line 6 is larger than line 5, subtract line 5 from line 6 and report the result as a capital gain on Form 8949 and Schedule D. | | | |
| 7 | Stock basis after distributions. Subtract line 6 from line 5. If the result is zero or less, enter -0-, skip lines 8 through 14, and enter -0- on line 15 . . . . . . . . . . | 7 | | 51,147. |
| 8 a | Nondeductible expenses . . . . . . . . . . . . . . . . . . | 8a | 874. | | |
| b | Depletion for oil and gas . . . . . . . . . . . . . . . . . . | 8b | | | |
| c | Business credits (sections 50(c)(1) and (5)) . . . . . . . . | 8c | | | |
| 9 | Add lines 8a through 8c. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | | 874. |
| 10 | Stock basis before loss and deduction items. Subtract line 9 from line 7. If the result is zero or less, enter -0-, skip lines 11 through 14, and enter -0- on line 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | | 50,273. |
| 11 | Allowable loss and deduction items. Enter the amount from line 47, column (c) . . . | 11 | | 50,273. |
| 12 | Debt basis restoration (see net increase in instructions for line 23) . . . . . . . . . | 12 | | 0. |
| 13 | Other items that decrease stock basis. . . . . . . . . . . . . . . . . . . . . . . . | 13 | | |
| 14 | Add lines 11, 12, and 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 | | 50,273. |
| 15 | **Stock basis at the end of the corporation's tax year.** Subtract line 14 from line 10. If the result is zero or less, enter -0- . . . . . . . . . . . . . . . . . . . . . . . | 15 | | 0. |

**Part II**   Shareholder Debt Basis

### Section A--Amount of Debt (If more than three debts, see instructions.)

| Description | Debt 1 ☐ Formal note ☒ Open account debt | Debt 2 ☐ Formal note ☐ Open account debt | Debt 3 ☐ Formal note ☐ Open account debt | Total |
|---|---|---|---|---|
| 16 Loan balance at the beginning of the corporation's tax year . . . . . . . . . . . . | | | | |
| 17 Additional loans . . . . . . . . . . . . . . . | | | | |
| 18 Loan balance before repayment. Combine lines 16 and 17 . . . . . . . . . . | | | | |
| 19 Principal portion of debt repayment (this line doesn't include interest) . . . . . . . . | ( ) | ( ) | ( ) | ( ) |
| 20 Loan balance at the end of the corporation's tax year. Combine lines 18 and 19. . . . . . . . . . . . . . . . . . | | | | |

**Part II**   Shareholder Debt Basis *(continued)*

### Section B--Adjustments to Debt Basis

| Description | Debt 1 | Debt 2 | Debt 3 | Total |
|---|---|---|---|---|
| 21 Debt basis at the beginning of the corporation's tax year . . . . . . . . . . . . . . | 0. | | | 0. |
| 22 Enter the amount, if any, from line 17 . . . . . | | | | |
| 23 Debt basis restoration. . . . . . . . . . . . . . | | | | 0. |
| 24 Debt basis before repayment. Combine lines 21, 22, and 23 . . . . . . . . . . . . . . . | 0. | | | 0. |
| 25 Divide line 24 by line 18 . . . . . . . . . . . . | | | | |
| 26 Nontaxable debt repayment. Multiply line 25 by line 19. . . . . . . . . . . . . . . . . . | | | | |
| 27 Debt basis before nondeductible expenses and losses. Subtract line 26 from line 24 . . . | 0. | | | 0. |
| 28 Nondeductible expenses and oil and gas depletion deductions in excess of stock basis . . . . . . . . . . . . . . . . . . . . . . . | | | | 0. |
| 29 Debt basis before losses and deductions. Subtract line 28 from line 27. If the result is zero or less, enter -0-. . . . . . . . . . . . . | 0. | | | 0. |
| 30 Allowable losses in excess of stock basis. Enter the amount from line 47, column (d) . . | | | | 0. |
| 31 Debt basis at the end of the corporation's tax year. Subtract line 30 from line 29. If the result is zero or less, enter -0- . . . . . . . | 0. | | | 0. |

### Section C--Gain on Loan Repayment

| Description | Debt 1 | Debt 2 | Debt 3 | Total |
|---|---|---|---|---|
| 32 Repayment. Enter the amount from line 19 . . | | | | |
| 33 Nontaxable repayments. Enter the amount from line 26 . . . . . . . . . . . . . . . . . | | | | |
| 34 Reportable gain. Subtract line 33 from line 32. . . . . . . . . . . . . . . . . . . . . . . . . | | | | |

**Part III**    Shareholder Allowable Loss and Deduction Items

| | Description | (a) Current year losses and deductions | (b) Carryover amounts (column (e)) from the previous year | (c) Allowable loss from stock basis | (d) Allowable loss from debt basis | (e) Carryover amounts |
|---|---|---|---|---|---|---|
| 35 | Ordinary business loss . . | | 1,142,876. | 50,273. | | 1,092,603. |
| 36 | Net rental real estate loss. | | | | | 0. |
| 37 | Other net rental loss. . . . | | | | | 0. |
| 38 | Net capital loss . . . . . . | | | | | 0. |
| 39 | Net section 1231 loss . . . | | | | | 0. |
| 40 | Other loss . . . . . . . . . | | | | | 0. |
| 41 | Section 179 deductions . . | | | | | 0. |
| 42 | Charitable contributions . . | | | | | 0. |
| 43 | Investment interest expense . . . . . . . . . . | | | | | 0. |
| 44 | Section 59(e)(2) expenditures . . . . . . . . | | | | | 0. |
| 45 | Other deductions . . . . . | | | | | 0. |
| 46 | Foreign taxes paid or accrued. . . . . . . . . . | | | | | 0. |
| 47 | Total loss. Combine lines 35 through 46 for each column. Enter the total loss in column (c) on line 11 and enter the total loss in column (d) on line 30 . . | | 1,142,876. | 50,273. | 0. | 1,092,603. |

spsa7203 SCR  02/08/22

671121

| | | |
|---|---|---|
| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |

## Schedule K-1 (Form 1120-S)

**2021**

Department of the Treasury
Internal Revenue Service

For calendar year 2021, or tax year

beginning ___ / ___ / 2021 ending ___ / ___ / ___

## Shareholder's Share of Income, Deductions, Credits, etc.

► See separate instructions.

### Part I  Information About the Corporation

**A** Corporation's employer identification number
82-5386472

**B** Corporation's name, address, city, state, and ZIP code
APX Seetech Systems, Inc.

P O Box 309
Greencastle PA 17225

**C** IRS Center where corporation filed return
Kansas City, MO  64999-0013

**D** Corporation's total number of shares

| | |
|---|---|
| Beginning of tax year | 95 |
| End of tax year | 95 |

### Part II  Information About the Shareholder

**E** Shareholder's identifying number
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

**F** Shareholder's name, address, city, state, and ZIP code
Andrew W. Mulkerin

1740 Adeline Drive
Mechanicsburg PA 17050

**G** Current year allocation percentage . . .  47.36842 %

**H** Shareholder's number of shares

| | |
|---|---|
| Beginning of tax year | 45 |
| End of tax year | 45 |

**I** Loans from shareholder

| | |
|---|---|
| Beginning of tax year $ | |
| End of tax year $ | |

For IRS Use Only

### Part III  Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) 1,096,285. | 13 | Credits | |
| 2 | Net rental real estate income (loss) | | | |
| 3 | Other net rental income (loss) | | | |
| 4 | Interest income | | | |
| 5a | Ordinary dividends | | | |
| 5b | Qualified dividends | 14 | Schedule K-3 is attached if checked . . . . ► ☐ | |
| 6 | Royalties | 15 A | Alternative minimum tax (AMT) items 0. | |
| 7 | Net short-term capital gain (loss) | | | |
| 8a | Net long-term capital gain (loss) | | | |
| 8b | Collectibles (28%) gain (loss) | | | |
| 8c | Unrecaptured section 1250 gain | | | |
| 9 | Net section 1231 gain (loss) | 16 B | Items affecting shareholder basis 118,247. | |
| 10 | Other income (loss) | | | |
| | | 17 | Other information | |
| | | V * | STMT | |
| 11 | Section 179 deduction | | | |
| 12 | Other deductions | | | |
| 18 ☐ | More than one activity for at-risk purposes* | | | |
| 19 ☐ | More than one activity for passive activity purposes* | | | |
| | * See attached statement for additional information. | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.   www.irs.gov/Form1120S   REV 03/28/22 PRO   Schedule K-1 (Form 1120-S) 2021

BAA

# List of Codes

This list identifies the codes used on Schedule K-1 for all shareholders. For detailed reporting and filing information, see the specific line instructions, earlier, and the instructions for your income tax return.

## Box 10. Other income (loss)

**Code**

A  Other portfolio income (loss)
B  Involuntary conversions
C  Section 1256 contracts & straddles
D  Mining exploration costs recapture
E  Section 951A(a) income inclusions
F  Inclusions of subpart F income
G  Section 951(a)(1)(B) inclusions
H  Other income (loss)

## Box 12. Other deductions

A  Cash contributions (60%)
B  Cash contributions (30%)
C  Noncash contributions (50%)
D  Noncash contributions (30%)
E  Capital gain property to a 50% limit organization (30%)
F  Capital gain property (20%)
G  Contributions (100%)
H  Investment interest expense

I  Deductions—royalty income
J  Section 59(e)(2) expenditures
K  Reserved for future use
L  Deductions—portfolio (other)
M  Preproductive period expenses
N  Reserved for future use
O  Reforestation expense deduction
P  Reserved for future use
Q  Reserved for future use
R  Reserved for future use
S  Other deductions

## Box 13. Credits

A  Reserved for future use
B  Reserved for future use
C  Low-income housing credit (section 42(j)(5)) from post-2007 buildings
D  Low-income housing credit (other) from post-2007 buildings
E  Qualified rehabilitation expenditures (rental real estate)
F  Other rental real estate credits
G  Other rental credits
H  Undistributed capital gains credit
I  Biofuel producer credit
J  Work opportunity credit
K  Disabled access credit
L  Empowerment zone employment credit
M  Credit for increasing research activities
N  Credit for employer social security and Medicare taxes
O  Backup withholding

P  Other credits

## Box 15. Alternative minimum tax (AMT) items

A  Post-1986 depreciation adjustment
B  Adjusted gain or loss
C  Depletion (other than oil & gas)
D  Oil, gas, & geothermal—gross income
E  Oil, gas, & geothermal—deductions
F  Other AMT items

## Box 16. Items affecting shareholder basis

A  Tax-exempt interest income
B  Other tax-exempt income
C  Nondeductible expenses
D  Distributions
E  Repayment of loans from shareholders
F  Foreign taxes paid or accrued

## Box 17. Other information

A  Investment income
B  Investment expenses
C  Qualified rehabilitation expenditures (other than rental real estate)
D  Basis of energy property
E  Recapture of low-income housing credit (section 42(j)(5))
F  Recapture of low-income housing credit (other)

G  Recapture of investment credit
H  Recapture of other credits
I  Look-back interest—completed long-term contracts
J  Look-back interest—income forecast method
K  Dispositions of property with section 179 deductions
L  Recapture of section 179 deduction
M  Section 453(l)(3) information
N  Section 453A(c) information
O  Section 1260(b) information
P  Interest allocable to production expenditures
Q  CCF nonqualified withdrawals
R  Depletion information—oil and gas
S  Reserved for future use
T  Reserved for future use
U  Net investment income
V  Section 199A information
W  Reserved for future use
X  Reserved for future use
Y  Reserved for future use
Z  Reserved for future use
AA  Excess taxable income
AB  Excess business interest income
AC  Gross receipts for section 448(c)
AD  Other information

REV 03/28/22 PRO

-18-

2107213015

**PA Schedule RK-1 (06-21)**
**2021** Resident Schedule of
Shareholder/Partner/Beneficiary Pass Through Income, Loss and Credits

| | | |
|---|---|---|
| 021544736    MULKERIN | ANDREW | W |
| | | Final    N |

| | | | | |
|---|---|---|---|---|
| 1740 ADELINE DRIVE | | (Individual=1, PA S Corp=2, All Other Corp=3, Estate/Trust=4, Partnership=5, LLC=6, Exempt=7) | Owner | 1 |
| | | | Shareholder's Stock Ownership % | 04736 |
| | | Amended    N | | |
| MECHANICSBURG    PA    17050 | | | Beneficiary's year-end Distribution % | 00000 |
| APX SEETECH SYSTEMS INC | | | Partner's % of Profit sharing % | 00000 |
| GREENCASTLE    PA    17225    825386472    1001362645 | | | Loss sharing % | 00000 |
| Fiscal Year    N | (Estate/Trust=E, Partnership=P, PA S Corp =S, LLC=L)    S | | Capital Ownership % | 00000 |
| Short Year    N | General Partner or LLC Member-Manager    N    Limited Partner or Other LLC Member    N | | | |

**SECTION II**

| | | | |
|---|---|---|---|
| 1 | PA-Taxable Business Income (Loss) from Operations | 1 | 1124101 |
| 2 | Interest Income | 2 | 0 |
| 3 | Dividend Income | 3 | 0 |
| 4 | Net Gain (Loss) from the Sale, Exchange or Disposition of Property | 4 | 0 |
| 5 | Net Income (Loss) from Rents, Royalties, Patents and Copyrights | 5 | 0 |
| 6 | Income of/from Estates or Trusts | 6 | 0 |
| 7 | Gambling and Lottery Winnings (Loss) | 7 | 0 |

**SECTION III**

| | | | |
|---|---|---|---|
| 8 | Resident Credit.  Submit statement. | 8 | 0 |
| 9 | Total Other Credits. Submit statement. | 9 | 0 |

**SECTION IV / SECTION V / SECTION VI**

| | | | |
|---|---|---|---|
| 10 | Distributions of Cash, Marketable Securities, and Property - not including guaranteed payments | 10 | 0 |
| 11 | Guaranteed Payments for Capital or Other Services | 11 | 0 |
| 12 | All Other Guaranteed Payments for Services Rendered | 12 | 0 |
| 13 | Guaranteed Payments to the Retired Partner | 13 | 0 |
| 14 | Distributions from PA Accumulated Adjustments Account    Liquidating    N | 14 | 0 |
| 15 | Distributions of Cash, Marketable Securities, and Property | 15 | 0 |
| 16 | Nontaxable income (loss) or nondeductible expenses required to calculate owner's basis. Submit statement. | 16 | 90431 |

Note: Lines 17 through 20 are for information purposes only.

**SECTION VII**

| | | | |
|---|---|---|---|
| 17 | Owner's Share of IRC Section 179 allowed according to PA rules | 17 | 0 |
| 18 | Owner's Share of Straight-Line Depreciation | 18 | 0 |
| 19 | Partner's Share of Nonrecourse Liabilities at year-end | 19 | 0 |
| 20 | Partner's Share of Recourse Liabilities at year-end | 20 | 0 |

NOTE: Amounts from this schedule must be reported on the appropriate PA Tax Return.

REV 01/28/22 PRO

2107213015

2107213015

| Form 1120S | S Corporation Shareholder Stock and Debt Basis Limitations Worksheet | 2021 |
|---|---|---|

**This worksheet is to assist shareholders in preparing Form 7203 that gets filed at the shareholder level.**

► **Note to shareholder:** Keep for your records.
► **To activate calculation of this worksheet,** check the Calculate Shareholder Stock and Debt Basis Limitations Worksheet 'Yes Box' on the S Corporation Information Worksheet.

| Name(s) shown on return | Identifying number |
|---|---|
| Andrew W. Mulkerin | 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 |
| Name of S corporation | Employer ID number |
| APX Seetech Systems, Inc. | 82-5386472 |

Stock block ► _____

### Part I    Shareholder Stock Basis

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Stock basis at the beginning of the corporation's tax year . . . . . . . . . . . . . . . | | | **1** | | 0 |
| 2 | Basis from any capital contributions made or additional stock acquired during the tax year. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | **2** | | |
| 3 a | Ordinary business income (enter losses in Part III) . . . . | **3a** | 1,096,285. | | | |
| b | Net rental real estate income (enter losses in Part III) . . | **3b** | | | | |
| c | Other net rental income (enter losses in Part III) . . . . . | **3c** | | | | |
| d | Interest income. . . . . . . . . . . . . . . . . . . . . . . . | **3d** | | | | |
| e | Ordinary dividends. . . . . . . . . . . . . . . . . . . . . . | **3e** | | | | |
| f | Royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3f** | | | | |
| g | Net capital gains (enter losses in Part III) . . . . . . . . . | **3g** | | | | |
| h | Net section 1231 gain (enter losses in Part III) . . . . . . | **3h** | | | | |
| i | Other income (enter losses in Part III) . . . . . . . . . . . | **3i** | | | | |
| j | Excess depletion adjustment . . . . . . . . . . . . . . . . | **3j** | | | | |
| k | Tax-exempt income . . . . . . . . . . . . . . . . . . . . . | **3k** | 118,247. | | | |
| l | Recapture of business credits . . . . . . . . . . . . . . . | **3l** | | | | |
| m | Other items that increase stock basis . . . . . . . . . . . | **3m** | | | | |
| 4 | Add lines 3a through 3m . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | **4** | | 1,214,532. |
| 5 | Stock basis before distributions. Add lines 1, 2, and 4 . . . . . . . . . . . . . . . . . | | | **5** | | 1,214,532. |
| 6 | Distributions (excluding dividend distributions) . . . . . . . . . . . . . . . . . . . . . | | | **6** | | |
| | **Note:** If line 6 is larger than line 5, subtract line 5 from line 6 and report the result as a capital gain on Form 8949 and Schedule D. | | | | | |
| 7 | Stock basis after distributions. Subtract line 6 from line 5. If the result is zero or less, enter -0-, skip lines 8 through 14, and enter -0- on line 15 . . . . . . . . . . | | | **7** | | 1,214,532. |
| 8 a | Nondeductible expenses . . . . . . . . . . . . . . . . . . | **8a** | | | | |
| b | Depletion for oil and gas . . . . . . . . . . . . . . . . . . | **8b** | | | | |
| c | Business credits (sections 50(c)(1) and (5)). . . . . . . . | **8c** | | | | |
| 9 | Add lines 8a through 8c. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | **9** | | |
| 10 | Stock basis before loss and deduction items. Subtract line 9 from line 7. If the result is zero or less, enter -0-, skip lines 11 through 14, and enter -0- on line 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | **10** | | 1,214,532. |
| 11 | Allowable loss and deduction items. Enter the amount from line 47, column (c) . . . | | | **11** | | 1,214,532. |
| 12 | Debt basis restoration (see net increase in instructions for line 23) . . . . . . . . . | | | **12** | | 0. |
| 13 | Other items that decrease stock basis . . . . . . . . . . . . . . . . . . . . . . . . . . | | | **13** | | |
| 14 | Add lines 11, 12, and 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | **14** | | 1,214,532. |
| 15 | Stock basis at the end of the corporation's tax year. Subtract line 14 from line 10. If the result is zero or less, enter -0- . . . . . . . . . . . . . . . . . . . . . . . . | | | **15** | | 0. |

**Part II**    Shareholder Debt Basis

### Section A--Amount of Debt (If more than three debts, see instructions.)

| Description | Debt 1 ☐ Formal note ☒ Open account debt | Debt 2 ☐ Formal note ☐ Open account debt | Debt 3 ☐ Formal note ☐ Open account debt | Total |
|---|---|---|---|---|
| 16 Loan balance at the beginning of the corporation's tax year . . . . . . . . . . . . . | | | | |
| 17 Additional loans . . . . . . . . . . . . . . . | | | | |
| 18 Loan balance before repayment. Combine lines 16 and 17 . . . . . . . . . . | | | | |
| 19 Principal portion of debt repayment (this line doesn't include interest) . . . . . . . . | ( _____ ) | ( _____ ) | ( _____ ) | ( _____ ) |
| 20 Loan balance at the end of the corporation's tax year. Combine lines 18 and 19 . . . . . . . . . . . . . . . . | | | | |

**Part II**    Shareholder Debt Basis *(continued)*

### Section B--Adjustments to Debt Basis

| Description | Debt 1 | Debt 2 | Debt 3 | Total |
|---|---|---|---|---|
| 21 Debt basis at the beginning of the corporation's tax year . . . . . . . . . . . . . . | 0. | | | 0. |
| 22 Enter the amount, if any, from line 17 . . . . . | | | | |
| 23 Debt basis restoration. . . . . . . . . . . . . . | | | | 0. |
| 24 Debt basis before repayment. Combine lines 21, 22, and 23 . . . . . . . . . . . . . . | 0. | | | 0. |
| 25 Divide line 24 by line 18 . . . . . . . . . . . . | | | | |
| 26 Nontaxable debt repayment. Multiply line 25 by line 19 . . . . . . . . . . . . . . . . . | | | | |
| 27 Debt basis before nondeductible expenses and losses. Subtract line 26 from line 24 . . . | 0. | | | 0. |
| 28 Nondeductible expenses and oil and gas depletion deductions in excess of stock basis . . . . . . . . . . . . . . . . . . . . . | | | | 0. |
| 29 Debt basis before losses and deductions. Subtract line 28 from line 27. If the result is zero or less, enter -0-. . . . . . . . . . . . . | 0. | | | 0. |
| 30 Allowable losses in excess of stock basis. Enter the amount from line 47, column (d) . . | | | | 0. |
| 31 Debt basis at the end of the corporation's tax year. Subtract line 30 from line 29. If the result is zero or less, enter -0- . . . . . . . | 0. | | | 0. |

### Section C--Gain on Loan Repayment

| Description | Debt 1 | Debt 2 | Debt 3 | Total |
|---|---|---|---|---|
| 32 Repayment. Enter the amount from line 19 . . | | | | |
| 33 Nontaxable repayments. Enter the amount from line 26 . . . . . . . . . . . . . . . . . . . | | | | |
| 34 Reportable gain. Subtract line 33 from line 32. . . . . . . . . . . . . . . . . . . . . . . . | | | | |

**Part III**     Shareholder Allowable Loss and Deduction Items

| | Description | (a) Current year losses and deductions | (b) Carryover amounts (column (e)) from the previous year | (c) Allowable loss from stock basis | (d) Allowable loss from debt basis | (e) Carryover amounts |
|---|---|---|---|---|---|---|
| 35 | Ordinary business loss . . | | 1,264,187. | 1,214,532. | | 49,655. |
| 36 | Net rental real estate loss. | | | | | 0. |
| 37 | Other net rental loss. . . . | | | | | 0. |
| 38 | Net capital loss  . . . . . . | | | | | 0. |
| 39 | Net section 1231 loss . . . | | | | | 0. |
| 40 | Other loss  . . . . . . . . . | | | | | 0. |
| 41 | Section 179 deductions . . | | | | | 0. |
| 42 | Charitable contributions. . | | | | | 0. |
| 43 | Investment interest expense . . . . . . . . . . | | | | | 0. |
| 44 | Section 59(e)(2) expenditures . . . . . . . . | | | | | 0. |
| 45 | Other deductions  . . . . . | | | | | 0. |
| 46 | Foreign taxes paid or accrued. . . . . . . . . . . | | | | | 0. |
| 47 | Total loss. Combine lines 35 through 46 for each column. Enter the total loss in column (c) on line 11 and enter the total loss in column (d) on line 30 . . | | 1,264,187. | 1,214,532. | 0. | 49,655. |

spsa7203 SCR  02/08/22



**Andy Mulkerin <andy.mulkerin@gmail.com>**

## inancial In ormation - Seetech Systems, Inc. and Ventwell Inc.
messages

**Charles Tiches** <CTiches@apx-enclosures.com>                    Mon, Apr 2 , 2022 at  :0  PM
To: "andy.mulkerin@gmail.com" <andy.mulkerin@gmail.com>

Dear Andy

We have received your request for additional information. We believe that we have provided all material to the shareholders that is required by law. If you require additional information, you may request access to the records by making an appointment to come to the Molly Pitcher Highway office and conduct a review. Please note that if you require research beyond what is available, whether internally or by a  rd party, you will have to incur the cost.

I must state for the record that you, as President of York Sheet Metal, Ventwell Inc., and Seetech Systems, Inc., were not only aware and had access to this information but made many of the decisions that impacted the outcome that you are now questioning.

Please feel free to contact me if you wish to proceed with an appointment.

Yours truly,

Charles Tiches

**Andy Mulkerin** <andy.mulkerin@gmail.com>                    Mon, Apr 2 , 2022 at  : 1 PM
To: Irene Papoutsis <Irene.papoutsis@gmail.com>

Baby
 Quoted text hidden

**Irene Mulkerin** <irene.papoutsis@gmail.com>                    Mon, Apr 2 , 2022 at  :   PM

To: Andy Mulkerin <andy.mulkerin@gmail.com>

Yeah, and you didn t agree w  them then either    GO G  T THOS   MOTH  RF  CK  RS.

Quoted text hidden

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| ANDREW WILLIAM MULKERIN, | : | CASE NO.: 1:24-bk-00270-HWV |
| | : | |
| DEBTOR | : | |
| | : | |
| ANDREW WILLIAM MULKERIN | : | |
| Movant | : | |
| | : | |
| vs. | : | |
| ANDREW R. VARA | : | |
| UNITED STATES TRUSTEE, | : | |
| Respondent | : | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S
MOTION TO REQUEST U.S. TRUSTEE INQUIRY INTO ALLEGED CREDITOR
MISCONDUCT**

COMES NOW the United States Trustee ("UST"), Andrew R. Vara, by and through the undersigned counsel and files this objection to the Debtor's "Motion to Request U.S. Trustee Inquiry into Alleged Creditor Misconduct," filed on February 12, 2024, at Docket Entry Number[1] 23, and in support thereof alleges as follows:

Background

1.    Debtor Mulkerin filed the instant case on February 2, 2024.  Doc. No. 1.  This is the latest in a series of cases filed by the Debtor for himself or for a related artificial entity in the last few months.  More specifically, the UST alleged that Debtor's recent filing history includes the following bankruptcy cases:

*Rest of page intentionally blank*

---

[1] Hereinafter "Doc. No."

| Case No. | Case Name | Date Filed | Outcome |
|---|---|---|---|
| 1-24-00270 | Andrew William Mulkerin | 2/2/24 | Instant case |
| 1-24-00020 | Andrew William Mulkerin | 1/5/24 | Dismissed 1/30/24 for failure to obtain credit counseling – no Scheduled were filed. |
| 1-23-02595 | Andrew William Mulkerin | 11/13/23 | Dismissed 12/5/23 for failure to obtain credit counseling – no Scheduled were filed. |
| 1-23-02569 | Mulkerin Holdings, LLC | 11/9/23 | Dismissed on 12/5/23 on UST's motion – no Schedules were filed. |
| 1-23-02570 | Beta Machine & Fabrication, LLC | 11/9/23 | Dismissed on 12/5/23 on UST's motion – no Schedules were filed. |
| 1-23-02571 | Javelin Automation, LLC | 11/9/23 | Dismissed on 12/5/23 on UST's motion – no Schedules were filed. |

2.      Between February 15, 2024, and February 21, 2024, Debtor filed certain, Schedules, Statements, and Amended Schedules.[2]  Doc. Nos. 32, 34, 36-40.  It is noteworthy that Debtor's Schedules I and J report that he is unemployed and has negative monthly disposable income of $14,360.  For reasons set forth below, it also noteworthy that in Exhibit 2 to his Schedule A/B, Debtor references an "ongoing U.S. Trustee investigation".  Doc. No. 37 Debtor's Schedule A/B, Exhibit 2 "Engagement with Legal Process".

3.      In the instant case, the Debtor has filed the above-referenced motion stating that "[b]efore and during [his] bankruptcy proceedings, [he] has encountered actions from certain creditors that seemed to exceed the usual scope of financial dispute resolution" and seeking this Honorable Court to compel the UST to investigate his creditors on his behalf.  The suggested scope of the examination includes, *inter alia*,:

---

[2] While Debtor has filed some of the required Schedules and Statements, it does not appear that he has filed all of them.

a. Determining whether the actions of the creditors aligned with conventional bank loan and lease payment recovery practices;

b. Determining whether any possible conflicts of interest existed which influenced the creditors actions towards the Debtor; and

c. An evaluation of how the creditors actions compromised the Debtor's ability to meet his financial obligations and decreased the value of his bankruptcy estate.

Doc. No. 23.

4.     While not in the Debtor's motion, the proposed order accompanying the motion seeks to have the UST conduct this investigation with due diligence and report the findings of the investigation to the Court within a time frame that allows for an adequate investigation while ensuring the timely progression of the bankruptcy proceedings.

Argument:

5.     It is clear that the Debtor is involved in on-going disputes with his creditors and at least one business partner.  *See,* Debtor's *Motion to Impose Automatic Stay* filed in the instate case to Doc. No. 22, wherein Debtor states that he is involved in "many civil cases in the York County Court of Common Pleas" and notes a dispute with a business partner named Andrew V. Papoutsis. *Id.  See also,* Debtor's Schedule A/B, Exhibit 2 "Exacerbating Factors".  Doc. No. 37.

6.     It appears that through the instant motion, the Debtor is attempting to have the United States Trustee wade into these disputes to investigate the alleged misconduct of Debtor's creditors and to provide a report which he can use in future litigation.  Debtor's attempt to draw the UST into his disputes is misguided and shows a misunderstanding of how the bankruptcy process works.  As noted above, Debtor has listed this requested investigation in an exhibit to his

Schedule A/B in response to questions about any tax refunds he might be owed and any claims he might have against third parties.  Doc. No. 37.  Accordingly, it appears that Debtor considers any investigation the UST would perform to be an asset of the estate.  This reinforces the UST's position that Debtor is attempting to have the UST conduct discovery in aide of his state court litigation.[3]

7.    As this Honorable Court knows, the United States Trustee Program is the watchdog for the bankruptcy system and does not represent any party in the bankruptcy process.[4]  Our duties are outlined in Title 28 U.S.C. 586 and Title 11 U.S.C. 101 *et seq*.  Those duties include, for example, supervising the administration of cases, appointing Chapters 7, 11, 12, and 13 trustees, the supervision of those trustees, filing motions to dismiss cases and, when appropriate, the investigation of actions taken by debtors, creditors, attorneys and other parties in interest within or directly related to the bankruptcy process.  Our duties do not include conducting an investigation of pre-petition financial relationship between two disputing parties for the benefit of one of those parties.

8.    If Debtor is of the opinion that causes of action exist based upon any pre-petition collusion by his creditors or based upon any improper action taken by his creditors in the short time he had an active case before this Honorable Court, he may investigate and bring those claims

---

[3] While not before this Honorable Court in this pleading, the nature of the Debtor's request, the fact that the Debtor does not report the requisite regular income needed to be a Chapter 13 debtor under Section 109(e), the fact that he reports negative month disposable income, and his prior filings, calls into question whether the instant case was a good-faith filing or rather a litigation tactic against Mr. Papoutsis. *In re: Higgins*, 2024 Bankr. LEXIS 178, *7 (Bankr. E.D. Pa 2024)(a history of serial filings and dismissals can be evidence of a bad faith filing); *In re: Lilley*, 91 F.3d 491 (3rd Cir. 1996)(holding that bad faith may provide cause for dismissal under 11 U.S.C. § 1307(c)); *Marrama v. Citizen's Bank*, 549 US 365 (2007); *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154 (3rd Cir. 1999)(directing the dismissal of a case which was filed primary as a litigation tactic).

[4] "The mission of the United States Trustee Program is to promote the integrity and efficiency of the bankruptcy system for the benefit of all stakeholders – debtors, creditors, and the public." https://www.justice.gov/ust/program-mission

Case 1:24-bk-02575-HWV    Doc 53-10    Filed 02/29/24    Entered 02/29/24 13:27:49    Desc Exhibit Document UST Objection Page 4 of 7

60

in his own name on behalf of the estate. *See Ponton v. AFSCME, AFL-CIO*, 395 Fed. Appx. 867, 871 fn 1 (3rd Cir. 2010); *Smith v. Rockett*, 522 F.3rd 1080 (10th Cir. 2008).

9.     Accordingly, as Debtor has the ability to investigate any causes of action which he posits may exist for the benefit of the estate, there is no grounds to foist that responsibility and expense on the United States Trustee's program.

WHEREFORE, for the reasons set forth above, the United States Trustee respectfully requests that Debtor's Motion to Request U.S. Trustee Inquiry into Alleged Creditor Misconduct be DENIED WITH PREJUDICE.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 AND 9


By:  /s/     D. Troy Sellars, Esq.
D. Troy Sellars, Esq.
Assistant United States Trustee
United States Department of Justice
Office of the United States Trustee
Middle District of Pennsylvania
The Sylvia H. Rambo US Courthouse
1501 North 6th Street
Box 302
Harrisburg, PA 17102
Tel.:    (717) 221-4515
Fax:    (717) 221-4554
Email: D.Troy.Sellars@usdoj.gov

Dated: February 29, 2024

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                    :    CHAPTER 7
                                          :
ANDREW WILLIAM MULKERIN,                  :    CASE NO.:  1:24-bk-00270-HWV
                                          :
DEBTOR                                    :
                                          :
ANDREW WILLIAM MULKERIN                   :
        Movant                            :
                                          :
        vs.                               :
ANDREW R. VARA                            :
UNITED STATES TRUSTEE,                    :
        Respondent                        :

## ORDER

UPON CONSIDERATION of the Debtor's Motion to Request U.S. Trustee Inquiry into Alleged Creditor Misconduct filed on February 12, 2024, the Unites States Trustee's objection to same, and the record as a whole, IT IS HEREBY ORDERED:

Debtor's Motion to Request U.S. Trustee Inquiry into Alleged Creditor Misconduct is **DENIED WITH PREJUDICE**.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| ANDREW WILLIAM MULKERIN, | : | CASE NO.:  1:24-bk-00270-HWV |
| | : | |
| DEBTOR | : | |
| | : | |
| ANDREW WILLIAM MULKERIN | : | |
|     Movant | : | |
| | : | |
|     vs. | : | |
| ANDREW R. VARA | : | |
| UNITED STATES TRUSTEE, | : | |
|     Respondent | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on <u>February 29, 2024,</u> the foregoing OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION TO REQUEST U.S. TRUSTEE INQUIRY INTO ALLEGED CREDITOR MISCONDUCT was electronically filed with the Clerk of the Bankruptcy Court using the CM/ECF system and I further certify that I have mailed, or caused to be mailed, by United States Postal Service the document to the following non-CM/ECF participants at the following postal address:

| | |
|---|---|
| Andrew William Mulkerin<br>1740 Adeline Drive<br>Mechanicsburg, PA 17050 | |

ANDREW R. VARA
UNITED STATES TRUSTEE

D. Troy Sellars
Assistant United States Trustee

By:   /s/    D. Troy Sellars, Esq.
D. Troy Sellars, Esq.
Assistant United States Trustee
Office of the United States Trustee
1501 North 6th Street - Box 302
Harrisburg, PA 17102
Tel.:   (717) 221-4515
Fax:   (717) 221-4554
Email: D.Troy.Sellars@usdoj.gov

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re:

Andrew William Mulkerin                                    Chapter: 13

**Debtor 1**                                               Case number: 1:25−bk−01575−HWV

## ORDER

Proceeding Memo re: Hearing on Motion for Examination under Rule 2004 of Andrew Papoutsis set for 9/16/2025 canceled. Motion denied at hearing held on 8/26/2025. IT IS SO ORDERED on 8/26/2025. /s/Henry W. Van Eck (RE: related document(s)72, 111, 121, 130, [146]). (Wilson, Tonia)

Order Text Entries (Form ortext) (2/19)

# Notice Recipients

District/Off: 0314–1                     User: AutoDocketer                  Date Created: 8/26/2025

Case: 1:25–bk–01575–HWV          Form ID: ortext                    Total: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db            Andrew William Mulkerin          1740 Adeline Drive          Mechanicsburg, PA 17050

                                                                                           TOTAL: 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                           :
                                                 :    CHAPTER 13
ANDREW WILLIAM MULKERIN,                          :
                                                 :    CASE NO. 1:25-bk-01575-HWV
                        Debtor.                   :

### ORDER

Upon consideration of the Motion for Examination under Rule 2004 of Andrew Papoutsis

filed by the Debtor, Doc. 72, and all related pleadings, Docs. 111, 123, and the hearing held on

August 26, 2025, for the reasons stated on the record, it is

ORDERED that the Motion is DENIED.


By the Court,

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: August 26, 2025

# Notice Recipients

District/Off: 0314–1                     User: AutoDocketer                Date Created: 8/26/2025

Case: 1:25–bk–01575–HWV                  Form ID: pdf010                   Total: 3

**Recipients of Notice of Electronic Filing:**

tr          Jack N Zaharopoulos          info@pamd13trustee.com
aty         Robert E Chernicoff          rec@cclawpc.com

                                                                        TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db          Andrew William Mulkerin          1740 Adeline Drive          Mechanicsburg, PA 17050

                                                                        TOTAL: 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:                                          :
                                                :    CHAPTER 13
ANDREW WILLIAM MULKERIN,                         :
                                                :    CASE NO. 1:25-bk-01575-HWV
                Debtor.                          :

**ORDER**

Upon consideration of the Debtor's Motion for Examination under Rule 2004 of Sean

Summers, Esq., Doc. 128, and the hearing held on September 24, 2025, for the reasons stated on

the record, it is

**ORDERED** that the Motion is **DENIED**.

By the Court,

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: September 25, 2025

# Notice Recipients

District/Off: 0314–1                    User: AutoDocketer                    Date Created: 9/25/2025
Case: 1:25–bk–01575–HWV                 Form ID: pdf010                       Total: 3

**Recipients of Notice of Electronic Filing:**
tr          Jack N Zaharopoulos          info@pamd13trustee.com

                                                                                    TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db          Andrew William Mulkerin          1740 Adeline Drive          Mechanicsburg, PA 17050
            Sean Summers Esq          35 South Duke Street          York, PA 17401

                                                                                    TOTAL: 2

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

**In re:**

**ANDREW WILLIAM MULKERIN**, Debtor.

Chapter 13

FILED
**September 29, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

Case No. 1:25-bk-01575-HWV

**MOTION FOR RULE 2004 EXAMINATION OF VENTWELL, INC. AND APX SEETECH SYSTEMS, INC.**

NOW COMES, Andrew William Mulkerin, Debtor, pro se, and respectfully states as follows:

**INTRODUCTION**

1. The Debtor seeks authorization under Federal Rule of Bankruptcy Procedure 2004 to conduct examinations and obtain documents from Ventwell, Inc. and APX Seetech Systems, Inc. (together, the "Companies").

2. This discovery is necessary to determine the current and historical value of the Debtor's ownership interests, assess potential claims for recovery, and thereby maximize distribution to creditors under 11 U.S.C. § 1325(a)(4).

3. The Companies' historical and current financial records directly impact the Debtor's federal and state tax liabilities, including allocations reported on Schedule K-1. These liabilities constitute priority claims under 11 U.S.C. § 507(a)(8) and must be satisfied in full under 11 U.S.C. § 1322(a)(2) and § 1325(a)(6). A

1

4. The requested Rule 2004 discovery aligns with the Court's September 24, 2025 guidance, which emphasized the propriety of targeted, estate-related inquiry and explicitly cautioned against overbroad, derivative-style corporate fishing expeditions. Yet on August 26, 2025, Attorney Chernicoff—who had no filed appearance and no standing—was nonetheless permitted to argue against exactly this type of estate-focused examination, without inquiry or objection from the Court. This is precisely the kind of procedural inconsistency and selective enforcement the Debtor has repeatedly identified as part of a broader, coordinated effort to block access to relevant information. As noted at the September 24 hearing, the same pattern allowed Mr. Papoutsis to appear as a "creditor" after the claims bar date had passed, accompanied by the filing (and later withdrawal) of a duplicative claim by the Pennsylvania Department of Revenue—an episode that functions as a convenient cloak or cover story for actions taken in concert. The Debtor has been told by the Court that he may be "a little paranoid," yet these facts, taken together, reflect a consistent pattern of closed doors for the Debtor and open microphones for others, which is exactly what Rule 2004 was designed to pierce.

**FACTUAL BACKGROUND**

1. The Debtor owns forty-seven percent (47%) of each of the Companies. These ownership interests are property of the bankruptcy estate pursuant to 11 U.S.C. §§ 541(a) and 1306(a).

2. As further documented in Exhibit A, the Debtor's state-law inspection rights under 15 Pa.C.S. § 1508 are independent legal rights, which are themselves property of the estate under § 541.

2

3. Debtor served as co-founder, President and CEO of the Companies until August 2021.

4. The remaining 53% of the Companies is owned by Andrew V. Papoutsis (AVP).

5. On information and belief, AVP dissolved both Companies in late 2021 without required shareholder consent, despite active shareholder agreements.

6. AVP has exercised unilateral control over the Companies since that time.

7. The Companies were abruptly shut down and their assets diverted under circumstances suggesting potential shareholder oppression, breach of fiduciary duty, and fraudulent transfer.

8. A 2021 partial audit by RKL LLP identified fabricated intercompany loans, unexplained "forgiveness" of millions in insider debt, and material accounting irregularities in the Companies' books. These irregularities have been flagged repeatedly by debtor in prior filings and IRS correspondence (Docs. 205 and 206, attached hereto as Exhibits E and F), and raise serious concerns of fraudulent transfers, concealment of assets, and misallocation of tax liabilities directly impacting the Debtor and this estate.

9. Debtor has been denied access to basic corporate records and tax filings necessary to determine whether income was properly reported and whether assets were diverted.

10. The improper classification of AVP as a "Creditor" on the debtor's docket post-claims-bar date (Dkt. 227) further underscores the urgency and procedural irregularity surrounding these Companies.[1]

---

[1] AVP is the 53% equity owner of the Companies and has no legitimate claim against the Debtor personally. Equity holders are residual interest holders, not creditors, under the Bankruptcy Code. See 11 U.S.C. §§ 101(10), 101(16), 510(b). His attempt to assert creditor status is inconsistent with his role as an insider equity holder and underscores the need for scrutiny of his conduct through a Rule 2004 examination.

3

## ADDITIONAL FACTS SUPPORTING 2004 DISCOVERY

1. Ventwell, Inc. engaged in a shareholder transaction in December 2024. Specifically, Ventwell repurchased a minority shareholder's five percent (5%) interest. This transaction confirms that Ventwell remained an active and functioning corporation through at least December 2024. A company cannot lawfully repurchase shares if it is "defunct" or dissolved.

2. APX Seetech Systems, Inc. also engaged in corporate activity after 2021. Public entity search records reflect that Seetech updated its registered address on June 2, 2025.[2] An active corporate filing of this nature confirms that Seetech remains in good standing and legally recognized by the Commonwealth of Pennsylvania.

3. In addition, both Ventwell and Seetech filed Writs of Summons against the Debtor (and his spouse) in August 2023, which were reissued in November 2023. Under Pennsylvania law, the filing and reissuance of a writ of summons commences an action and tolls the applicable statute of limitations. These filings provide further proof that the Companies remained active legal entities and that any limitations defenses are suspended.

4. These facts establish that both Ventwell and Seetech remained active legal entities into 2023–2025. They are therefore subject to examination under Rule 2004. Their continued activity demonstrates that ownership rights, corporate assets, and potential claims of value to the estate remain in existence.

5. Any argument that claims are time-barred is premature and unavailing at this stage. The doctrines of fraudulent concealment, equitable tolling, and

---

[2] Notably, June 2, 2025, is the same date that the Debtor filed his voluntary petition for relief under Chapter 13. The coincidence of Seetech's corporate activity with the petition date further undermines the claim that the company is "defunct" and demonstrates ongoing operations relevant to the administration of the estate.

4

adverse domination apply where insiders retain control and conceal material facts. The December 2024 stock repurchase, the 2025 address update, and the 2023 writs of summons constitute fresh, independent acts that restart or toll applicable limitations periods.

6. Accordingly, the Debtor has shown good cause for Rule 2004 discovery. The Companies' ongoing activity into 2023–2025 directly supports the need for production of records to confirm the value of the Debtor's forty-seven percent (47%) equity interests and to assess potential recoveries for creditors.

## BENEFIT TO THE ESTATE

1. The Debtor's Chapter 13 plan provides for limited distributions to creditors but expressly contemplates increases in the plan base from adversary recoveries.

2. Demonstrating that the Debtor's equity in Ventwell and Seetech has (or had) significant value directly supports increased distributions under § 1325(a)(4).

3. If wrongful diversion or concealment of assets is uncovered, recovery actions under §§ 544, 548, or 549 could substantially augment the estate.

4. Further, as forth in Exhibit D, the requested discovery is directly tied to plan feasibility under § 1325 in Chapter 13 and §§ 1129(a)(7), (a)(9), and (a)(11) in Subchapter V.

5. A summary chart mapping fact allegations to the relevant Bankruptcy Code sections and potential estate recoveries is attached as Exhibit C.

6. Even if no recovery is pursued, the requested discovery provides creditors with a transparent accounting of estate assets, fulfilling the Debtor's disclosure obligations.

5

## LEGAL STANDARD

1. Rule 2004 provides for examination of any entity relating to the acts, conduct, property, liabilities, or financial condition of the debtor, or any matter that may affect the administration of the estate.

2. Courts consistently hold that discovery into non-debtor entities in which a debtor holds ownership interests is proper where the inquiry may reveal value to the estate. See *In re STN Enters*., 779 F.2d 901 (2d Cir. 1985); *In re Spaulding Composites Co*., 207 B.R. 899 (9th Cir. BAP 1997).

3. In Chapter 13, the debtor has standing to pursue such examinations where the trustee has not elected to act. See *Unsecured Creditors' Comm. v. Noyes,* 990 F.2d 93 (3d Cir. 1993).

4. Although this Court has previously limited direct discovery into Mr. Papoutsis personally, his improper classification as a "Creditor" in this case (Dkt. 227) only reinforces the necessity of examining the corporate records of Ventwell and Seetech. Mr. Papoutsis is the controlling 53% equity owner of both companies and exercises unilateral authority over their operations and financials. His conduct, decisions, and recordkeeping directly impact the Debtor's 47% estate interest in those entities—interests which materially affect both estate valuation and plan feasibility. The Companies cannot be treated as independent when they function as extensions of their majority owner, who has already inserted himself into this case through irregular means.

5. AVP's attempt to appear on the docket as a "Creditor" is inconsistent with the Bankruptcy Code, which distinguishes between "creditors" (11 U.S.C. § 101(10)) and "equity security holders" (11 U.S.C. § 101(16)). Any claim

6

arising from his role as a shareholder or insider would also be subordinated to creditor claims under 11 U.S.C. § 510(b).

6. Opponents are expected to argue that Ventwell, Inc. and APX Seetech Systems, Inc. ceased operations in 2021 and that any claims are barred by the statute of limitations. These assertions are inaccurate and incomplete. Case law confirms that Rule 2004 discovery is not confined to § 548's two-year window but may extend to longer lookback periods under § 544 and state law. See Exhibit B.

7. Courts within this Circuit have likewise emphasized the expansive scope of Rule 2004. See *In re Bennett Funding Group, Inc*., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (noting that Rule 2004 examinations are "unfettered and broad" and may be used to discover assets, examine transactions, and determine whether wrongdoing has occurred). See also *In re GHR Energy Corp.*, 35 B.R. 534, 536 (Bankr. D. Mass. 1983) (Rule 2004's purpose is to permit the estate to identify and investigate potential claims for the benefit of creditors).

8. The Companies' books and records are therefore the proper avenue for investigation. By examining Ventwell and Seetech's financial statements, tax returns, and capital accounts, the estate can determine whether AVP improperly diverted assets, manipulated K-1 allocations, or misrepresented his status in this case. Such corporate-level discovery is well within the scope of Rule 2004 and does not repeat the previously denied request for personal discovery of AVP.

**CONCLUSION**

The requested discovery will directly support estate valuation, tax reconciliation, and plan feasibility. No party has substantively refuted the factual basis supporting

7

this motion—including IRS correspondence, partial audit findings, and corporate ownership records. The request imposes no undue burden and seeks only those records necessary for proper estate administration and tax compliance.

For these reasons, the Debtor respectfully requests that this Court enter an order pursuant to Federal Rule of Bankruptcy Procedure 2004 authorizing the examination of Ventwell, Inc. and APX Seetech Systems, Inc., and directing production of the records identified herein, together with such other relief as the Court deems just and proper.

**REQUESTED RELIEF**

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

1. Authorizing the Debtor, pursuant to Federal Rule of Bankruptcy Procedure 2004, to conduct oral examinations of representatives of **Ventwell, Inc.** and **APX Seetech Systems, Inc.**, each of whom has knowledge concerning the Debtor's ownership interests, tax obligations, and potential claims of the estate;

2. Directing the Companies to produce the documents set forth in **Exhibit G** attached hereto, within fourteen (14) days of entry of an order granting this Motion, or such other time as the Court may deem reasonable;

3. Authorizing the Debtor to serve Rule 2004 subpoenas if necessary to obtain compliance with this order;

4. Granting such other and further relief as the Court deems just and proper.

September 29, 2025

Respectfully submitted,

8

/s/ Andrew William Mulkerin

Andrew William Mulkerin, Debtor Pro Se

1740 Adeline Drive

Mechanicsburg, PA 17050

andy.mulkerin.pro-se@outlook.com

9

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

In re:

**Andrew William Mulkerin**, Debtor

Chapter 13 | Case No. 1:25-bk-01575-HWV

**NOTICE OF PARALLEL STATE-LAW RIGHTS UNDER 15 Pa.C.S. § 1508 AND RELATED CASE LAW**

The Debtor, Andrew William Mulkerin, respectfully submits this Notice to advise the Court of his independent inspection rights as a shareholder of Ventwell, Inc. and APX Seetech Systems, Inc. under Pennsylvania law, and to demonstrate that these rights are property of the estate under 11 U.S.C. § 541 and enforceable through this Court's Rule 2004 powers.

---

## I. Pennsylvania Shareholder Inspection Rights

1. The Debtor is a 47% shareholder of record in both Ventwell, Inc. and APX Seetech Systems, Inc.

2. Under 15 Pa.C.S. § 1508(b), every shareholder of record has the right, upon verified written demand and for a proper purpose, to inspect the corporation's:

   o Books and records of account,

   o Minutes of shareholder and board meetings, and

   o Share register.

1

3. This right is independent of bankruptcy and cannot be waived by corporate articles or bylaws (§ 1508(d)).

4. Pennsylvania courts recognize that valuation of shares, protection against mismanagement, and monitoring for shareholder oppression are proper purposes for inspection. See Shaffer v. Regester, 417 Pa. 593, 207 A.2d 871 (1965).

## II. Inspection Rights as Estate Property

5. Under 11 U.S.C. § 541(a)(1), all legal and equitable interests of the debtor as of the petition date become property of the estate.

6. A shareholder's statutory inspection rights under state law are part of those interests. See:
   - *In re Marriage of Worth*, 195 B.R. 349, 357 (Bankr. N.D. Ill. 1996) (shareholder's statutory inspection right is a "legal or equitable interest" and thus estate property).
   - *In re Morris Communications NC, Inc.*, 914 F.2d 458, 466 (4th Cir. 1990) (estate succeeds to debtor's shareholder rights, including access to corporate records).
   - *In re Moore*, 608 F.3d 253, 260 (5th Cir. 2010) (§ 541 captures "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative").

## III. Rule 2004 and Related-Party Corporate Records

2

7. Rule 2004(b) authorizes examination of any entity regarding the debtor's acts, conduct, property, or any matter that may affect administration of the estate.

8. Courts consistently hold that Rule 2004 may be used to obtain records of corporations in which the debtor holds an equity interest, because such records bear on the value of estate property and possible fraudulent transfers:

    o *In re Johns-Manville Corp*., 42 B.R. 362, 364 (S.D.N.Y. 1984) (Rule 2004 discovery "may cut a broad swath into the affairs of both debtor and non-debtor entities" where estate value is implicated).

    o *In re Recoton Corp*., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (creditors entitled to examine related-party companies because they may conceal value of estate assets).

    o *In re Cambridge Analytica LLC*, 600 B.R. 750, 754 (Bankr. S.D.N.Y. 2019) (Rule 2004 is proper to investigate "financial interrelationships" between debtor and affiliates).

## IV. Application Here

9. The Debtor's proposed Chapter 13 plan (and pending Chapter 11 Subchapter V plan upon conversion) requires valuation of estate assets and accounting for tax liabilities under § 1325(a)(4), (a)(6) and §§ 1129(a)(7), (a)(9), (a)(11).

10. The disputed K-1 allocations and loan forgiveness transactions of Ventwell and Seetech directly impact:

3

- The Debtor's tax liabilities (priority claims under § 1129(a)(9)),
- The liquidation analysis (best interests test), and
- The feasibility of plan payments.

11. Inspection of these records is therefore not a "personal shareholder dispute," but a core bankruptcy function to ensure creditors receive what they are entitled to.

---

## V. Conclusion

For these reasons, the Debtor respectfully submits this Notice, attaching as Attachment 1 here a draft Complaint prepared for filing in the Pennsylvania Court of Common Pleas under 15 Pa.C.S. § 1508, to demonstrate that:

- The Debtor's inspection rights exist independently of this bankruptcy,
- Those rights are property of the estate under § 541, and
- Rule 2004 is the appropriate vehicle to enforce them in this Court for purposes of estate administration and plan confirmation.

Dated: September 29, 2025

Respectfully submitted,

/s/ Andrew William Mulkerin

Andrew William Mulkerin, Debtor Pro Se

4

# Attachment 1

**Draft State Court Complaint**
*(Not Yet Filed — For Demonstrative Purposes Only)*

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

**ANDREW WILLIAM MULKERIN,**
Plaintiff,

v.

**VENTWELL, INC.** and **APX SEETECH SYSTEMS, INC.,**
Defendants.

Case No. _____

**COMPLAINT TO ENFORCE SHAREHOLDER INSPECTION RIGHTS** (15 Pa.C.S. § 1508)

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, **Andrew William Mulkerin** ("Plaintiff"), is an individual residing in York County, Pennsylvania.

2. Plaintiff is a **shareholder of record**, holding approximately **47% of the issued and outstanding shares** of both Ventwell, Inc. and APX Seetech Systems, Inc. (collectively, "Defendants").

3. Defendant Ventwell, Inc. is a Pennsylvania business corporation with its registered office in York County, Pennsylvania.

4. Defendant APX Seetech Systems, Inc. is a Pennsylvania business corporation with its registered office in York County, Pennsylvania.

5. Jurisdiction and venue are proper in this Court pursuant to 15 Pa.C.S. § 1508(c) and 42 Pa.C.S. § 931.

## II. FACTUAL BACKGROUND

6

6. Under **15 Pa.C.S. § 1508(a)**, every Pennsylvania business corporation is required to keep accurate books and records of account, minutes of proceedings, and a share register.

7. Under **§ 1508(b)**, a shareholder of record has the right, upon verified written demand and for a proper purpose, to inspect and copy a corporation's books, records of account, and minutes of meetings.

8. On _____, Plaintiff delivered a **verified written demand** to Defendants, requesting inspection of the following records from 2018 to present:

   a. All financial statements, ledgers, accounting workpapers, and tax returns;

   b. All shareholder and board of directors' meeting minutes;

   c. All records of capital accounts, intercompany loans, and related-party transactions; and

   d. All shareholder agreements, buy-sell agreements, and other corporate governance documents.

9. Plaintiff's purpose in making this demand is proper and includes:

   a. Evaluating the value of his ownership interest;

   b. Investigating possible mismanagement, self-dealing, or fraudulent transfers;

   c. Assessing tax allocations and obligations; and

   d. Protecting against shareholder oppression.

10. Despite proper demand, Defendants have failed and refused to permit inspection or provide the requested records within the statutory period.

## III. CAUSE OF ACTION — ENFORCEMENT OF SHAREHOLDER INSPECTION RIGHTS (15 Pa.C.S. § 1508)

11. Plaintiff incorporates paragraphs 1–10 as if fully set forth herein.

7

12. Plaintiff has complied with all statutory requirements under § 1508(b) and (b.1).

13. Defendants' failure and refusal to provide access violates Plaintiff's inspection rights under § 1508.

14. Plaintiff is entitled to judicial enforcement of his rights, including an order compelling production of the requested records.

## IV. RELIEF REQUESTED

**WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants as follows:**

A. Ordering Defendants to permit Plaintiff (and/or his agent or attorney) to inspect and copy the requested records during normal business hours, including but not limited to all books of account, financial statements, tax returns, capital accounts, minutes, and agreements;

B. Ordering Defendants to produce such records within **ten (10) days** of the Court's order;

C. Awarding Plaintiff his costs and reasonable attorney's fees incurred in enforcing these rights, as permitted under § 1508(c); and

D. Granting such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: _____

_____

Andrew William Mulkerin, Plaintiff

8

# Exhibit B

1

**Exhibit B: Authorities Supporting Rule 2004 Examination Beyond Two-Year Lookback**

**I. Rule 2004 is Broader Than § 548's Two-Year Window**

Rule 2004(b) permits inquiry into "the acts, conduct, or property of the debtor, the liabilities and financial condition of the debtor, or any matter which may affect the administration of the estate." It is a pre-litigation investigative tool. Unlike an adversary proceeding under § 548, Rule 2004 is not confined to a two-year lookback. The purpose is to allow the estate to determine whether claims exist at all and whether creditors' recovery could be enhanced.

**II. Case Law**

1. *In re Recoton Corp*., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004)

   Court granted Rule 2004 discovery into historic transfers, holding that even if transactions might be outside § 548's two-year window, they "may still be actionable under § 544(b)" and "may bear upon the administration of the estate."

2. *In re Drexel Burnham Lambert Group, Inc*., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991)

   Rule 2004 permits examinations "to determine the existence of claims, whether or not they ultimately prove actionable."

3. *In re Cambridge Analytica LLC*, 600 B.R. 750, 754 (Bankr. S.D.N.Y. 2019)

2

Court emphasized Rule 2004's breadth in examining related-party transactions and affiliates, even if the transactions predated § 548's lookback, because they could reveal fraudulent transfers or misconduct relevant to estate value.

4. *In re Washington Mutual, Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)

"[T]he scope of a Rule 2004 examination is very broad and is not confined to matters that could give rise to a cause of action."

## III. Application to this Case

- The Debtor owns 47% of Ventwell, Inc. and APX Seetech Systems, Inc., which are estate property under § 541.
- Corporate records from 2021 onward—including "loan forgiveness," K-1 allocations, and insider transactions—may reveal:
    - Fraudulent transfers under § 548 (2-year lookback) or under Pennsylvania's Uniform Voidable Transactions Act, 12 Pa.C.S. § 5109 (4-year + discovery rule).
    - Preferences under § 547.
    - Unauthorized post-petition transfers under § 549.
    - Recovery rights under § 550.
- These matters directly affect the Debtor's ability to propose a confirmable plan under §§ 1325 and 1129.

## IV. Conclusion

Objections based on the "age" of the transactions are misplaced. Rule 2004 discovery is not limited by § 548's two-year lookback period. Courts consistently

3

authorize Rule 2004 examinations into earlier or concealed transfers because such inquiries may lead to recoveries under §§ 544–550 and are essential to estate administration.

4

# Exhibit C

1

**Exhibit C - Fact Allegations, Applicable Bankruptcy Code Sections, and Potential Recoveries**

| Fact Allegation / Suspicion | Applicable Bankruptcy Code Section(s) | Legal Theory | Potential Benefit to Estate / Creditors |
|---|---|---|---|
| Forgiveness of insider "loans" in December 2021 (reducing Debtor's equity and inflating tax liability) | § 544(b) (state fraudulent transfer law – 4-year + discovery rule); § 548(a)(1) (fraudulent transfer – 2 years, if continuing) | Transfer made with actual intent to hinder/delay creditors or for less than reasonably equivalent value | Avoidance of loan forgiveness; restoration of value to Debtor's capital account; reduction of phantom tax liabilities |
| Manipulated K-1 allocations creating phantom income against Debtor | § 544(b) (state law fraud); § 548(a)(1)(B) (constructive fraud) | Misallocation of profits without reasonably equivalent value, causing harm to Debtor's share of corporate income | Adjustment of capital accounts; reduction of IRS priority claims; increased plan feasibility |
| Diversion of profits to insiders/affiliates controlled by Papoutsis | § 544(b); § 548(a)(1); § 550 (recovery from transferees) | Fraudulent transfers / actual intent to hinder creditors | Recovery of diverted funds from insiders or affiliates, increasing distributions |
| Possible payments to insiders within one year before petition | § 547(b) (preferences) | Preferential transfers to insiders ahead of general creditors | Clawback of insider payments; redistribution to all creditors |
| Corporate misrepresentation that companies were "defunct" while still conducting share buybacks or business activity | § 544(b) (fraudulent transfer concealment); § 548(a)(1); continuing concealment doctrine | Concealment of transfers to prevent detection | Extends discovery period; supports avoidance actions |

2

| Fact Allegation / Suspicion | Applicable Bankruptcy Code Section(s) | Legal Theory | Potential Benefit to Estate / Creditors |
|---|---|---|---|
| Post-petition corporate actions (e.g., share buyback activity, office registration updates) affecting Debtor's equity value | § 549 (post-petition unauthorized transfers) | Unauthorized use/transfer of estate property after petition date | Recovery or unwinding of unauthorized transactions |
| Withholding of shareholder inspection rights and records | § 541 (estate property includes inspection rights); § 542 (turnover) | Debtor's 47% inspection rights are estate property; withholding = violation | Compelled production; estate gains access to financial data necessary for plan feasibility and litigation |
| Any recovered value from transfers (initial or subsequent transferees) | § 550 | Estate may recover avoided transfers from initial transferee or downstream recipients | Direct cash recovery or restoration of equity value for benefit of creditors |

3

# Exhibit D

1

**Exhibit D — Link Between Rule 2004 Examination and Plan Feasibility**

This Exhibit is submitted in support of the Debtor's **Motion for Rule 2004 Examination of Ventwell, Inc. and APX Seetech Systems, Inc.** It outlines the relevance of the requested discovery to the Court's confirmation analysis under both **Chapter 13** and, if conversion is granted, **Chapter 11, Subchapter V**.

---

## I. Relevance Under Chapter 13

- Under **11 U.S.C. § 1325(a)(4)**, the Court may not confirm a Chapter 13 plan unless creditors would receive at least as much as they would in a hypothetical Chapter 7 liquidation.
- Under **§ 1325(a)(6)**, the Debtor must demonstrate that the proposed plan is feasible based on income, expenses, and obligations.
- The Debtor's **47% equity interests in Ventwell and Seetech** are property of the estate under § 541. Their value, or lack thereof, directly impacts the liquidation analysis under § 1325(a)(4).
- Additionally, the feasibility of the Debtor's plan under § 1325(a)(6) is materially affected by **tax liabilities** tied to **K-1 allocations**, distributions, and **loan forgiveness** transactions undertaken by the Companies.
- The Debtor cannot meet either statutory requirement without access to accurate, current, and historical financial information from the Companies, including tax returns, capital account ledgers, and ownership registers.

---

## II. Anticipated Conversion to Chapter 11, Subchapter V

2

- On **September 2, 2025**, the Debtor moved to convert this case to **Chapter 11, Subchapter V** (Doc. 158), and filed a proposed plan under that chapter (Doc. 159).

- Confirmation under Chapter 11 is governed by **11 U.S.C. § 1129(a)**, which includes:
  - **§ 1129(a)(7)** – Best interests of creditors
  - **§ 1129(a)(9)** – Full payment of priority tax claims
  - **§ 1129(a)(11)** – Feasibility of plan performance

- As in Chapter 13, these provisions require accurate assessment of estate assets and tax liabilities. The activities and accounting practices of Ventwell and Seetech—particularly regarding phantom income, K-1s, and insider loan "forgiveness"—have a direct impact on the plan's confirmability.

---

## III. Scope of Request — Estate Administration, Not Shareholder Dispute

The requested Rule 2004 discovery is narrowly focused on the Companies' financial and tax records and does not seek personal discovery from any individual. It relates to:

1. **Estate property** under § 541;
2. **Turnover obligations** under § 542;
3. **Potential avoidance claims** under §§ 544–550;
4. The Debtor's compliance with confirmation standards under **§ 1325 (Chapter 13)** and **§ 1129 (Subchapter V)**.

3

This is not a private shareholder dispute. The Companies are active legal entities in which the Debtor holds a significant equity interest, and their conduct has direct implications for the administration of the estate and the treatment of creditors.

---

## IV. Conclusion

The requested Rule 2004 examination of Ventwell and APX Seetech is essential to determining the value of estate assets, evaluating the Debtor's tax exposure, and confirming whether the Debtor can meet his obligations under Chapter 13—or, upon conversion, under Subchapter V of Chapter 11.

For these reasons, this examination is necessary and appropriate under existing law.

4

# Exhibit E

**Exhibit E (Doc. 205, June 17, 2024 Letter to IRS and Court Filing):**

A submission by the Debtor highlighting fabricated intercompany loans, accounting irregularities, and phantom income allocations on K-1s issued by Ventwell, Inc. and APX Seetech Systems, Inc. The filing requests that the IRS review corporate returns for 2018–2021, citing missing documentation and misstatements that materially impact the Debtor's tax liability and the estate's ability to confirm a feasible plan.

The Honorable Chief Judge Henry W. Van Eck
United States Bankruptcy Court
The Sylvia H. Rambo U.S. Courthouse
1501 North 6th Street
Harrisburg, PA 17102

June 17, 2024

Re: Case No. 1:24-bk-00270-HWV

Dear Judge Van Eck,

I am writing to inform the court of my proactive steps concerning the financial review of Ventwell, Inc. and APX Seetech Systems, Inc., in which I hold a 47.36842% ownership interest. In response to the court's guidance, I have prepared a detailed letter to the Internal Revenue Service requesting a thorough review of the K-1 forms and related financial records for these companies for the tax years 2018, 2019, 2020, and 2021.

This letter outlines my concerns regarding the financial practices of these entities and seeks the IRS's assistance in ensuring that all income, deductions, and other financial transactions are accurately reported and compliant with IRS regulations. I am committed to transparency and openness throughout this process. My intention is not to discover new information, but rather to seek assistance in verifying and challenging the information provided to me. I have listened carefully to the court's guidance and acknowledge the many mistakes I've made. I made the request via motion, which was not the best approach as the court wisely counseled me during the June 11, 2024, hearing. That said, as the court will continue to appreciate, it is still an issue that may take effort yet to successfully resolve. Following the court's advice to pursue a different, more appropriate route, I am addressing these concerns through this letter to the IRS.

I have enclosed a copy of the letter to the IRS for the court's reference. I hope this action will illustrate my dedication to resolving these concerns responsibly and in compliance with legal and procedural requirements.

Thank you for your attention to this matter.

Respectfully,

Andrew William Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
andy.mulkerin.pro-se@outlook.com
717-571-5670

---

Enclosure: Copy of Letter to the Internal Revenue Service dated June 17, 2024

Andrew William Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
andy.mulkerin.pro-se@outlook.com
717-571-5670

June 17, 2024

**Internal Revenue Service**
Ogden, UT 84201

Subject: Request for Review of K-1 Forms and Financial Records for Ventwell, Inc. and APX Seetech Systems Inc.

**Dear Sir/Madam,**

I am writing to request a thorough review of the K-1 forms and related financial records for Ventwell, Inc. and APX Seetech Systems Inc. for the tax years 2018, 2019, 2020, and 2021. I hold a 47.36842% ownership interest in both companies, with Andrew V. Papoutsis as the majority owner. Given the consistent financial losses, incomplete documentation, and my firsthand knowledge of a multitude of instances where GAAP accounting principles were not followed, I believe a detailed investigation is warranted.

**Summary of Findings and Concerns**

**Ventwell, Inc.**

2018: Ordinary Business Income (Loss): -$182,971; Items Affecting Shareholder Basis: $260
2019: Ordinary Business Income (Loss): -$351,081; Items Affecting Shareholder Basis: $1,343
2020: Ordinary Business Income (Loss): -$608,824; Items Affecting Shareholder Basis: $1,522
2021: Ordinary Business Income: $51,147; Items Affecting Shareholder Basis: $874

**APX Seetech Systems Inc.**

2018: Ordinary Business Income (Loss): -$94,522; Items Affecting Shareholder Basis: $359
2019: Ordinary Business Income (Loss): -$122,213; Items Affecting Shareholder Basis: $315
2020: Ordinary Business Income (Loss): -$1,172,629; Items Affecting Shareholder Basis: $125,177
2021: Ordinary Business Income: $1,096,285; Items Affecting Shareholder Basis: $118,247

1

**Key Concerns**

**Consistent Losses**

Both companies reported significant and consistent losses over the years, raising serious questions about the accuracy of financial reporting and potential financial mismanagement. These consistent losses appear to be intentionally designed for some fraudulent financial purpose. Given my intimate knowledge of the companies' operations and cost structures, I believe these losses do not accurately reflect the reality of the businesses. I possess documentation of my persistent disputes regarding the accounting practices across all companies, which I have raised publicly and consistently over the years. This documentation, coupled with my firsthand experience, suggests deliberate misrepresentation of financial data. All relevant parties are aware of my ongoing concerns and the specific instances where I have challenged these questionable accounting practices.

**Incomplete Documentation**

The K-1 forms frequently reference additional statements and detailed explanations that are missing, making it difficult to fully understand the financial situation and the basis for the reported figures. The exhibits I provided include the full K-1s I received; for example, in 2019 and 2020, they are merely pictures of a couple of the pages of the K-1 forms. It should be noted that all K-1s are incomplete and reference statements that have not been found or provided. This lack of complete documentation severely hampers the ability to accurately assess the financial health and activities of the companies, further raising suspicions of financial mismanagement or intentional obfuscation.

**Interrelated Companies**

My firsthand knowledge of accounting and financial practices at Ventwell, Inc., APX Seetech Systems, Inc., APX Company, Inc., APX Enclosures, Inc., APX Industrial Coatings, Inc., APX Mitchell Shop, Inc., and APX York Sheet Metal, Inc., coupled with the testimony from Elizabeth L. Kramer, Esq. during a recent court hearing, indicates that these companies are interrelated. This supports the assertion that financial practices and issues in one company may be reflective of broader practices across all related entities. Additionally, as provided in the exhibits, statements by Ray Miller, CPA, indicate that substantial loans were provided to these businesses, yet there appears to be no documentation of such loans. This further underscores the necessity for a comprehensive review to fully understand the financial situation and to address potential discrepancies and irregularities across these interconnected entities.

**Lack of Good Faith Communication**

2

Following a court hearing on June 11, 2024, I attempted to follow up with Ms. Elizabeth Kramer for further information. Her response indicated that she was not authorized to discuss the matter further and directed me to contact other parties. This is particularly concerning given that she had testified earlier that same day in front of the Honorable Chief Judge Henry W. Van Eck in Federal Bankruptcy Court, stating that "the companies are not stonewalling him in any way." This contradiction and lack of cooperation suggest potential issues in the financial practices of these companies and highlight the need for a thorough investigation to ensure transparency and accountability.

**Impact on Chapter 13 Reorganization**

Accurate reporting and a thorough investigation into the financials are crucial for the proper inclusion of these companies as assets in my Chapter 13 reorganization. Misreported financials can significantly impact the reorganization process and the accurate assessment of my estate. My bankruptcy case, 1:24-bk-00270-HWV, is still in its early stages, as noted by the court, so there is much yet to cover, making it imperative to address these financial discrepancies promptly.

**Relevant Court Testimony and Context**

During a recent hearing related to my motion to compel document production, the attorney representing the entities involved, Elizabeth L. Kramer, Esq. provided testimony that supports my assertions about the interconnectedness of the companies and the potential for financial mismanagement. As someone who worked in executive roles at APX York Sheet Metal, Ventwell, Inc., and APX Seetech Systems, I have intimate knowledge of the workings and processes of these businesses. Although I do not possess as many financial documents from some of the other entities, I am acutely aware of significant accounting issues and have observed firsthand the lack of adherence to proper financial practices. This testimony further underscores the need for a thorough investigation into the financial practices of Ventwell, Inc. and APX Seetech Systems. Accurate financials are crucial not only to address potential financial fraud but also to assess and restore the shareholder value that was destroyed when Andrew V. Papoutsis shut these companies down. Additionally, obtaining accurate financials is necessary to properly value these companies for my estate and ensure that my various tax filings are correctly completed and possibly corrected.

**Elizabeth L. Kramer Testimony**

**Testimony Part 1:**

Elizabeth L. Kramer: Good morning, Your Honor. Elizabeth Kramer. I'm here on behalf of the various entities that were served with the motion to compel. The APX Seetech, Ventwell, APX Companies, and then the companies that the debtor referred to as the, um, it was like a collective group. But I'm here for all of those companies, Your Honor.

Judge Van Eck: And are you an attorney?

Elizabeth L. Kramer: Yes, Your Honor.

Judge Van Eck: Welcome. So you are here on behalf of APX Companies, Inc., Ventwell, Inc., APX Seetech Systems?

Elizabeth L. Kramer: Yes, Your Honor.

Judge Van Eck: Anyone else?

Elizabeth L. Kramer: Yes. When you looked at the amended motion to compel that was directed at the additional companies, he referred to them as the Trust companies. I'm also here for those companies as well. They're all interrelated, but his interests are not interrelated.

Judge Van Eck: OK, thanks. And you can have a seat if you want. Yeah, that's fine. Anywhere near a microphone if you want to be heard would be best.

**Testimony Part 2:**

Judge Van Eck: And I'm sorry I wrote down your last name, but I cannot read it.

Elizabeth L. Kramer: Oh, it's Kramer.

Judge Van Eck: Kramer. That's what I thought. Yeah, it's Kramer. What's your position on the request?

Elizabeth L. Kramer: I mean, to be frank, I don't practice frequently in the bankruptcy court, so I'm not as familiar with the procedure, but typically in any civil litigation as a third party, we were expecting some sort of subpoena or some sort of discovery request prior to receiving this motion. So, I mean, frankly, our client, my client was confused with this request and we attended this hearing in abundance of caution. So, I mean, we're opposed to the motion. I think it's premature and improper. And some of the representations in the motion, I think, are improper as well. The K-1s have been made available to Mr. Mulkerin. And when he's asked for financial records related to APX Seetech, and Ventwell, he's been invited to come to the premises of the office to review records. He did not take that invitation up. So, I mean, the company is not, the companies are not stonewalling him in any way. And beyond that, some of these companies he has no interest in. The only companies that he does are Ventwell and APX Seetech. Otherwise, the other companies that have been drawn into this, APX Company, Inc., APX Enclosures, Inc., APX Industrial Coatings, Inc., APX Mitchell Shop, Inc., APX York Sheet Metal, Inc., I mean, he has no interest in these companies. He has no ownership interest. He's not an employee. He's not an officer. So, I mean, we're opposed to him receiving these records because he has no right to

4

# Exhibit F

**Exhibit F (Doc. 206, June 26, 2024 Supplemental Letter and Filing):**

A supplemental submission documenting additional irregularities, including a $3,042,881.55 "intercompany loan" reported by Ray Miller and later forgiven, but not reflected in company records. This filing also identifies valuation discrepancies and the concealment of shareholder information. The contents directly support the Debtor's concerns regarding fraudulent transfers, denial of inspection rights, and manipulation of tax liabilities that affect plan feasibility and creditor recovery.

The Honorable Chief Judge Henry W. Van Eck
United States Bankruptcy Court
The Sylvia H. Rambo U.S. Courthouse
1501 North 6th Street
Harrisburg, PA 17102

FILED '24 JUN 26 AM 10:25
CLERK, US COURT, PAMB
ONE

June 26, 2024

Re: Case No. 1:24-bk-00270-HWV

Dear Judge Van Eck,

I am writing to update the court on my ongoing efforts concerning the financial review of Ventwell, Inc., APX Seetech Systems, Inc., and APX York Sheet Metal, Inc., in which I hold a 47.36842% ownership interest. Following the court's guidance, I have submitted an updated letter to the Internal Revenue Service, supplementing my previous request from June 17, 2024, to include the financial records for APX York Sheet Metal, Inc. for the tax years 2018, 2019, and 2020.

This additional information further substantiates the need for a thorough investigation into potential financial mismanagement and tax fraud within these entities. I am committed to ensuring that all financial transactions are accurately reported and compliant with IRS regulations.

Enclosed is a copy of my updated letter to the IRS for the court's reference. I hope this demonstrates my dedication to resolving these issues responsibly and in line with legal and procedural requirements.

Thank you for your attention to this matter.

Respectfully,

Andrew William Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
andy.mulkerin.pro-se@outlook.com
717-571-5670

Enclosure: Copy of Supplemental Letter to the Internal Revenue Service dated June 26, 2024

Andrew William Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
andy.mulkerin.pro-se@outlook.com
717-571-5670

June 26, 2024

**Internal Revenue Service**
Ogden, UT 84201

Subject: Supplement to Request for Review of K-1 Forms and Financial Records for Ventwell, Inc., APX Seetech Systems Inc., and APX York Sheet Metal, Inc.

**Dear Sir/Madam,**

I am writing to supplement my previous request dated June 17, 2024, regarding the review of K-1 forms and related financial records for Ventwell, Inc. and APX Seetech Systems Inc. for the tax years 2018, 2019, 2020, and 2021. I am now adding to that request the inclusion of the financial records of APX York Sheet Metal, Inc. for the same years. The additional information presented below further substantiates the need for a thorough investigation into potential financial mismanagement and tax fraud.

As I proceed with establishing the value of my estate in my ongoing Chapter 13 reorganization in case 1:24-bk-00270-HWV, I am providing this information and analysis of the balance sheets for Ventwell, Inc., APX Seetech Systems Inc., and APX York Sheet Metal, Inc. for the years 2018, 2019, and 2020. Over the last seven months, through numerous hearings and filings, I have proven to be credible, a fact that the Honorable Judge Van Eck has acknowledged on more than one occasion in open court where I appear in person as my reorganization efforts continue. The analysis included below, I believe, reveal significant and unexplained discrepancies, particularly concerning intercompany loans and their sudden forgiveness. These findings, coupled with information from Ray Miller, CPA, and communications from Charles Tiches II, suggest potential financial fraud.

**Key Evidence**

1. **Unrecorded Intercompany Loans and Their Sudden Forgiveness**

   o  In a letter accompanying a certified report by Ray Miller, CPA, dated September 30, 2021, Ventwell was reported to owe APX York Sheet Metal exactly $3,042,881.55 in intercompany loans. These loans were not present in the

1

financial records during my tenure as a key executive from September 6, 2016, to September 1, 2021. The loan notation appears to be handwritten by Ray Miller.

- o Ray Miller's handwritten notation on the certified report (bottom of page 5) indicates that Ventwell owed APX York Sheet Metal, Inc. $1,919,281.55 titled 'APX York Sheet Metal, Inc' (interco) and $1,123,600.00 as 'APX York Sheet Pay Loan (interco),' totaling $3,042,881.55.

- o Exhibit A: September 30, 2021, Certified Report by Ray Miller, CPA

- o Exhibit B: Email from Charles Tiches dated December 28, 2021, indicating the forgiveness of these intercompany loans.

2. **Inconsistencies in Financial Records**

- o The balance sheets for Ventwell, Inc. and APX York Sheet Metal, Inc. from 2018 to 2020 do not reflect any such intercompany loans. This discrepancy is highly suspicious and suggests the strong possibility of off-the-books financial activities.

- o While Ray Miller nor the company ever provided a similar accounting for APX Seetech Systems, it is presumed that many more loans would be discovered that do not appear in the books of APX York Sheet Metal or APX Seetech Systems during my tenure as an executive, which extended until September 2021 when I resigned my position. As an executive of all three companies, I would have seen these loans if they existed.

- o Exhibit C: York Sheet Metal Balance Sheets (2018, 2019, 2020)

- o Exhibit D: Ventwell Balance Sheets (2018, 2019, 2020)

- o Exhibit E: Seetech Systems Balance Sheets (2018, 2019, 2020)

3. **Discrepancies in Company Valuations**

- o Documentation from Wilmington Trust Company, where my wife is a beneficiary, shows the value of APX York Sheet Metal as $792,000 for each of the years 2018, 2019, and 2020. These valuations do not align with the financial records, raising further questions about the accuracy of the reported financial information. It should be noted that I raised this issue of valuation with Valerie Marlette from Wilmington Trust at the end of April 2023.

- o Exhibit F: Wilmington Trust Company Valuation for APX York Sheet Metal (2018)

- o Exhibit G: Wilmington Trust Company Valuation for APX York Sheet Metal (2019)

2

o Exhibit H: Wilmington Trust Company Valuation for APX York Sheet Metal (2020)

4. **Potential Financial Fraud Indicators**

o Consistent financial losses, incomplete documentation, and significant equity adjustments without clear business justification further support the suspicion of financial mismanagement and potential fraud. Over the years, the companies have reported substantial and recurring losses that do not align with the operational activities and revenue-generating capabilities that I observed during my tenure. This pattern of losses appears to be intentionally designed to obscure the true financial health of the companies.

o If not for the questionable accounting practices, Ventwell Inc. and APX Seetech Systems, Inc. could have grown substantially by now. The financial records, however, do not reflect this potential, instead showing continuous losses that undermine their actual performance and prospects. Despite my firsthand efforts in growing and leading these businesses, along with teams of capable and dedicated workers, we have all been similarly deprived of the opportunity for success due to the need to avoid accountability and cover potential financial crimes.

o Additionally, there have been numerous instances of incomplete or missing documentation, particularly concerning key financial transactions and intercompany loans. This lack of transparency makes it difficult to fully understand the financial activities and raises serious concerns about the accuracy of the reported figures. The absence of detailed explanations and supporting documents for significant financial entries is alarming.

o Moreover, the financial records reveal substantial equity adjustments that lack clear business justification. These adjustments, often recorded without adequate explanation, suggest potential efforts to manipulate the financial statements. Such actions could be indicative of attempts to conceal financial improprieties or to mislead stakeholders about the companies' true financial position.

o These issues, when taken together, strongly indicate a pattern of financial mismanagement and potential fraud. Along with my repeated and vocal insistence that accounting problems abounded, which were roundly ignored for years, the discrepancies and irregularities in the financial records necessitate a thorough and detailed investigation to uncover the extent of any wrongdoing and to ensure compliance with financial regulations.

**Conclusion and Request**

3

Given the substantial evidence of potential financial mismanagement and fraud, I respectfully request that the IRS conduct a thorough review of the K-1 forms and related financial records for Ventwell, Inc., APX Seetech Systems Inc., as well as those of APX York Sheet Metal, Inc. for the tax years 2018, 2019, 2020, 2021 and potentially beyond. Ensuring accurate reporting and compliance with IRS regulations is crucial, not only for the integrity of these companies but also for my Chapter 13 reorganization process.

I am available to provide any additional information or documentation required to facilitate your review.

Thank you for your attention to this matter, I know I'm dropping a lot on you folks, and I'll chill but imagine for a second what it's been like for me!

Sincerely,

Andrew William Mulkerin

**Exhibits:**

1. Exhibit A: September 30, 2021, Certified Report by Ray Miller, CPA

2. Exhibit B: Email from Charles Tiches II dated December 28, 2021

3. Exhibit C: York Sheet Metal Balance Sheets (2018, 2019, 2020)

4. Exhibit D: Ventwell Balance Sheets (2018, 2019, 2020)

5. Exhibit E: Seetech Systems Balance Sheets (2018, 2019, 2020)

6. Exhibit F: Wilmington Trust Company Valuation for APX York Sheet Metal (2018)

7. Exhibit G: Wilmington Trust Company Valuation for APX York Sheet Metal (2019)

8. Exhibit H: Wilmington Trust Company Valuation for APX York Sheet Metal (2020)

9. Exhibit I: Valerie Marlette Email and Trust Protector Issues

10. Exhibit J: Emergency Motion and Criminal Complaint Issues

4

# EXHIBIT G

**EXHIBIT G Schedule of Documents Sought Pursuant to Rule 2004 Examination**

**Entities: Ventwell, Inc. and APX Seetech Systems, Inc.**
**Timeframe: January 1, 2018 – Present**

Pursuant to Federal Rule of Bankruptcy Procedure 2004 and 11 U.S.C. §§ 541, 542, 544–548, 1306, 1325, and 1129, the Debtor respectfully requests production of the following documents from Ventwell, Inc. and APX Seetech Systems, Inc. (the "Companies"), which are necessary to evaluate:

- the value of the Debtor's estate property,
- the existence of potential avoidance actions,
- the nature and extent of priority tax liabilities, and
- the feasibility of any proposed Chapter 13 or Chapter 11 Subchapter V plan.

This request is tailored to avoid overbreadth and derivative inquiry and is limited to estate-related matters as guided by the Court.

**I. Capital Accounts and Equity Structure**

1. All capital account statements or reports reflecting ownership interests, equity balances, or changes in shareholder equity for the Debtor or any other shareholder.
2. Any documents evidencing or explaining adjustments to the Debtor's capital account, equity percentage, or voting rights, including internal memoranda, calculations, or valuations.

**II. Tax-Related Documents**

2

3. All IRS Schedule K-1 forms issued to the Debtor from 2018 through the present.

4. Federal and state income tax returns for the Companies (e.g., IRS Form 1120S), including all supporting schedules, for tax years 2018–present.

5. Documents used to prepare and allocate K-1 items to shareholders, including internal correspondence, CPA communications, and allocation spreadsheets.

## III. Financial Statements and Ledgers

6. Annual balance sheets, income statements, statements of cash flows, and any audit reports from 2018 to the present.

7. Internal monthly or quarterly financial statements, trial balances, or general ledgers covering the same period.

## IV. Insider Loans and Forgiveness Transactions

8. All promissory notes, loan ledgers, or internal accounting entries documenting loans to or from any insider, including the Debtor and Andrew V. Papoutsis.

9. Board minutes, resolutions, memoranda, or other documents related to the forgiveness or reclassification of any insider loan obligations.

## V. Corporate Governance and Shareholder Actions

10. Minutes of all board of directors and shareholder meetings held from January 1, 2018, to present.

11. All resolutions, consents, or notices relating to:

- dissolution,
- winding down,

3

- shareholder buybacks, or
- any changes to the Companies' capital structure.

## VI. Insider and Related-Party Transactions

12. Records of all transfers (cash or non-cash) made to or received from Andrew V. Papoutsis or any entity affiliated with him.
13. Bank account statements from all accounts held by the Companies, reflecting disbursements, insider payments, or related-party transfers.
14. Documentation of any share redemptions, buybacks, or equity repurchases from any shareholder, including valuations or pricing methodology.

## VII. Regulatory Filings

15. All Pennsylvania Department of State filings from 2018 to present, including:

- annual reports,
- statements of change,
- articles of dissolution or revival,
- amendments to corporate charters or bylaws.

## VIII. Inspection Rights and Correspondence with Debtor

16. All written communications, correspondence, emails, or formal demands from the Debtor concerning inspection of books and records under 15 Pa.C.S. § 1508.
17. Any responses, rejections, or objections provided by the Companies to the Debtor's requests for such inspection.

4

**Conclusion:**

This request is strictly limited to information directly relevant to the valuation of estate assets, priority tax claims, and plan feasibility under Chapter 13 and/or Chapter 11 Subchapter V. It is intended to support the Debtor's duties under 11 U.S.C. §§ 1306(a), 1325(a)(4), 1325(a)(6), 1129(a)(7), 1129(a)(9), and 1129(a)(11), and to assist the Court in assessing confirmability of the Debtor's plan.

5

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

**In re:**

**ANDREW W. MULKERIN**,

  Debtor.

Chapter 13 (pending conversion to 11)

Case No. 1:25-bk-01575-HWV

**CERTIFICATE OF SERVICE**

I, Andrew W. Mulkerin, certify that on September 29, 2025, I caused a true and correct copy of the **MOTION FOR RULE 2004 EXAMINATION OF VENTWELL, INC. AND APX SEETECH SYSTEMS, INC** and the accompanying Proposed Order to be served 1ˢᵗ class mail upon the following parties in interest:

- Jack N. Zaharopoulos, Chapter 13 Trustee
  Standing Chapter 13 Trustee
  8125 Adams Drive, Suite A
  Hummelstown, PA 17036

- United States Trustee
  Office of the United States Trustee
  228 Walnut Street, Suite 1190
  Harrisburg, PA 17101

- All creditors and parties in interest entitled to notice through the Court's CM/ECF electronic filing system.

I declare under penalty of perjury that the foregoing is true and correct.

1 of 2

Dated: September 29, 2025

Respectfully submitted,

**/s/ Andrew W. Mulkerin**

Andrew W. Mulkerin, Debtor Pro Se

1740 Adeline Drive

Mechanicsburg, PA 17050

2 of 2

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**In re:**

**ANDREW WILLIAM MULKERIN**, Debtor.

Chapter 13

Case No. 1:25-bk-01575-HWV

## <u>ORDER AUTHORIZING RULE 2004 EXAMINATION</u>
## <u>OF VENTWELL, INC. AND APX SEETECH SYSTEMS, INC.</u>

Upon consideration of the Debtor's Supplemental Motion for Rule 2004 Examination of Ventwell, Inc. and APX Seetech Systems, Inc., and good cause appearing, it is hereby ORDERED:

1. The Debtor is authorized to issue and serve subpoenas, pursuant to Fed. R. Bankr. P. 2004 and 9016, upon representatives of Ventwell, Inc. and APX Seetech Systems, Inc., for oral examination; and

2. Ventwell, Inc. and APX Seetech Systems, Inc. shall produce the documents identified in Exhibit G to the Motion, within 14 days of the date of this Order, unless otherwise agreed by the parties or further ordered by the Court; and

3. The scope of the Rule 2004 examination is limited to matters affecting the administration of the estate, valuation of estate property, and the feasibility of any plan of reorganization or repayment under 11 U.S.C. §§ 1325 and 1129, including but not limited to tax liabilities, shareholder interests, insider transactions, and potential avoidance actions; and

4. The Debtor is authorized to seek enforcement of this Order through further motion if the Companies fail to comply with the document requests or to appear for examination.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                         :  Case No. 1:25-01575-HWV
  ANDREW MULKERIN,        :
                             :         Chapter 13
                  Debtor.    :
                             :

**OBJECTION TO DEBTOR'S MOTION FOR RULE 2004 EXAMINATION OF
VENTWELL, INC. AND APX SEETECH, INC.**

Ventwell, Inc. and APX Seetech, Inc., by and through counsel, objects to the Debtor's Motion for Rule 2004 Examination of Ventwell, Inc. and APX Seetech, Inc. (the "Motion") as follows:

### Background

1. This case does not come before this Court in a vacuum. For years, the Debtor and his wife, Irene Papoutsis Mulkerin ("Ms. Mulkerin"), enjoyed a lifestyle supported by Andrew Papoutsis, the Debtor's father-in-law, and Ms. Papoutsis' father.

2. Over the past few years, Ms. Mulkerin has been demanding payments from a discretionary trust established by her father, Mr. Papoutsis (the "Trust"). Ms. Mulkerin sued the Trust in Delaware, demanding payment, despite the discretionary nature of the trust. The parties agreed to settle the suit with payment of $3.15 million to Ms. Mulkerin and an exchange or mutual releases.

3. After the parties circulated the term sheet settling the trust litigation, Ms. Mulkerin filed a *pro se* chapter 7 bankruptcy case, which is pending in this Court. *See Irene Papoutsis Mulkerin,* Case No. 24-03264. Ms. Mulkerin objected to the proposed $3.15 million settlement and demanded an extensive trial. Ultimately, on May 28, 2025,

the Court approved the settlement.    Ms. Mulkerin did not appeal and the Order approving the settlement is final.

4.    A few days later, on June 2, 2025, the Debtor commenced the instant case and filed two (2) Motions, demanding information from Ms. Mulkerin's father.

**Facts**

5.    On June 2, 2025, Andrew Mulkerin ("Debtor") filed for relief under Chapter 13 of the United States Bankruptcy Code.

6.    This is the Debtor's fourth individual and third business bankruptcy filing between 2023 and 2025.    His six (6) prior cases were dismissed for failures on his part: failure to obtain credit counseling, confirm a plan, or make payments or other defaults, and the like.    On October 9, 2024, this Court barred the Debtor from filing another bankruptcy case for six (6) months.

7.    On or about August 4, 2025, Standing Chapter 13 Trustee Jack Zaharopoulos filed his Motion to Dismiss this case and requests a one-year bar, because the Debtor is ineligible for Chapter 13 because he is not a wage earner, failure to file tax returns for the years 2021 through 2024, bad faith and failure to commence and make plan payments. Trustee Zaharopoulos' motion is set for hearing in November.

8.    On or about September 2, 2025, Debtor filed a Motion to Convert Case to Chapter 11, Subchapter V.    Debtor's motion is set for hearing on October 21, 2025.

9.    On or about July 29, 2025, Debtor filed a Motion for Rule 2004 Examination of Andrew Papoutsis and Request for Production of Documents Related to Seetech, Ventwell, and Associated APX-Affiliated Entities (the "APX Entities") (the "July 2004

Motion") (Doc. 72). At a hearing on August 26, 2025, the Court entered an Order denying the July 2004 Motion (Doc. 146, 147 & 148) and Debtor's Emergency Motion to Preserve and Produce All Versions of Trust Schedule A (Doc. 131 & 149). At the hearing on August 26, 2025, the Court directed the Debtor not to file any other Motions seeking information regarding the APX Entities.

<div align="center">

**Law and Argument**

**Debtor's Motion for Rule 2004 Examination of Ventwell, Inc and APX Seetech Systems, Inc. is Without Merit**

</div>

10.     Although Rule 2004 is broad, there are limits enforced by courts to prevent harassment of debtors, creditors and third parties.

11.     In this case, Ventwell, Inc. ("Ventwell") and APX Seetech Systems, Inc. ("Seetech") and all APX Entities are neither debtors nor creditors nor interested parties. Debtor admits that Andrew Papoutsis owned the majority interest in Ventwell and Seetech. This Motion is a second attempt to obtain personal financial information from his father-in-law, accordingly, this Motion is nothing more than the Debtor attempting to circumvent the Court's prior Order denying an 2004 examination of Andrew Papoutsis by naming Ventwell and Seetech as the subject of the Motion and not naming Andrew Papoutsis directly in the Motion, as had occurred in the 2004 Motion. This discovery has already been denied by the Court.   The information sought is irrelevant to this bankruptcy case and relates to information not likely to assist in the Debtor's case.

12.     In applying Rule 2004, the Delaware District Court held that disclosure of private third-party personal and financial information not related to the bankruptcy case, is

<div align="center">3</div>

an additional consideration weighing against their enforcement. *In re Mathews*, 2018 WL 5024167*2 (D. Del. 2018) *citing* In re *See In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009).

13.    As part of the Motion, the Debtor seeks documents and testimony related to Ventwell and Seetech., both of which went out of business in 2021.    (Doc 244, page 8.)

14.    Prior to 2021, the Debtor alleges he had a 47% interest in Ventwell and Seetech; Mr. Papoutsis owned the remaining 53%.

15.    Until 2021, the Debtor was the general manager of Ventwell and Seetech. During the time the Debtor was the general manager of Ventwell and Seetech, both Companies lost at least $2,000,000.00.

16.    In the Motion, the Debtor alleges that closing down Ventwell and Seetech in 2021 suggest "potential shareholder oppression, breach of fiduciary duty, and fraudulent transfer." (Doc. 244, page 3).    The Debtor fails to provide any facts to support his allegations.

17.    In the Motion, the Debtor alleges that a 2021 audit by RKL LLP identified "fabricated intercompany loans, unexplained 'forgiveness' of millions of dollars in insider debt, and material accounting irregularities in the Companies' books" and that alleged irregularities "raise serious concerns of fraudulent transfers, concealment of assets, and misallocation of tax liabilities directly impacting the Debtor and his estate." (Doc. 244, page 3).    The Debtor once again fails to provide any facts to support his allegations.

18.    Further, as the general manager of Ventwell and Seetech until 2021, the Debtor should have been aware of such companies' financials.    After 2021, the financials

are irrelevant as both such companies ceased operations.

19.    The Debtor requests Ventwell and Seetech produce documents of enormous depth and breadth, as to business operations from 2018 forward. A small portion of the requests include:

a.  All capital account statements or reports reflecting ownership interests, equity balances, or changes in shareholder equity for the Debtor or any other shareholder;

b.  Annual balance sheets, income statements, statements of cash flows, and any audit reports from 2018 to the present;

c.  Internal monthly or quarterly financial statements, trial balances, or general ledgers covering the same period;

d.  Minutes of all board of directors and shareholder meetings held from January 1, 2018, to present;

e.  Records of all transfers (cash or non-cash) made to or received from Andrew V. Papoutsis or any entity affiliated with him; and

f.  Bank account statements from all accounts held by the Companies, reflecting disbursements, insider payments, or related-party transfers.

(Doc 244-7, pages 2-4)

20.    The requests are not only extensive, but almost identical to the requests made in the previously denied July 2004 Motion (Doc. 72, page 6).

21.    Again, until 2021, the Debtor should be aware of the financial status of Seetech and Ventwell, including the large losses of Seetech and Ventwell and the large

5

uncollectable amounts owed by Seetech and Ventwell to other APX companies.

22.     It should also be noted that when the Debtor left his employ with the APX companies in 2021, he abandoned the employment and left such employment without notice.

23.     Respondent asks the Court to take judicial notice of the proceedings in Ms. Mulkerin's Chapter 7 case, *Irene Papoutsis Mulkerin,* Case No. 24-03264, and in particular, the extensive motions for examination and document production ("Ms. Mulkerin's Motion").   On April 19, 2025, Ms. Mulkerin filed her Motion for Rule 2004 Examination and Document Production of the Papoutsis Family Limited Partnership and Andrew Papoutsis as General Partner. (Case No. 24-03264, Doc 312.)

24.     In Ms. Mulkerin's Motion, she requested the following documents:

1.     The Papoutsis Family Limited Partnership Partnership Agreement and all amendments;

2.     The Papoutsis Family Limited Partnership's federal and state tax returns from 2018 to present, including all K-1's;

3.     The Papoutsis Family Limited Partnership's financial statements and/or general ledgers from 2018 to present;

4.     Bank statements for all Papoutsis Family Limited Partnership accounts from 2018 to present;

5.     Documentation regarding the sale of 225 Hanover Road and any other Papoutsis Family Limited Partnership owned properties;

6.     The capital accounts and ownership records for all limited partners;

7.     Any distributions or disbursements to partners or third parties from the Papoutsis Family Limited Partnership assets since 2018;

8.     Documents relating to any contracts, payments, or transfers to affiliated or unrelated entities, including Seetech Systems or any entity controlled

6

by Andrew Papoutsis.

(Case No. 24-03264, Doc 312.)

25.    On May 29, 2025, the Court denied Ms. Mulkerin's Motion. (Case No. 24-03264, Doc 428.)

**Debtor's Current Motion Was Filed for the Purpose of Harassing Mr. Papoutsis**

26.    Given that the Debtor may be ineligible to be a Chapter 13 debtor, because of either his failure to file tax returns from 2021 to date, or that he is not a wage earner as discussed in the Standing Chapter 13 Trustee's motion to dismiss, the motion may likely be granted.

27.    The Debtor has not come forward with any evidence or pleaded any facts that Mr. Papoutsis engaged in any deceptive or fraudulent conduct.   Seetech and Ventwell closed in 2021, more than four years ago.   If Mr. Mulkerin thought that he had been cheated in 2021, the proper forum was in state court.    Because the alleged improper events occurred in 2021, the statute of limitations may have expired.

28.    The Debtor further asserts that there may be fraudulent transfers under 11 U.S.C. §§541, 542 and 548.   However, 11 U.S.C. §548(a) limits the look back period to two (2) years.   Any fraudulent transfer related to the 2021 closing of Ventwell and Seetech may be barred by the statute of limitations.

29.    The Debtor alleges that Ventwell and Seetech have engaged in corporate activity since 2021 by allegedly repurchasing a minority shareholders 5% interest in Ventwell, by Seetech allegedly updating its corporate address in 2025 and by Ventwell and Seetech allegedly filing a Writs of Summons against the Debtor in 2023.   Debtor has

offered no support or proof of these allegation.

30.    The Debtor's Motion serves no bankruptcy purpose.    The Debtor fails to explain how production of ancient documents will benefit the estate.

31.    This is the Debtor's fifth attempt to harass Mr. Papoutsis in demanding voluminous, old records -- including bank statements, and business ledgers for closed businesses. This court previously denied each such request. First, in one of the Debtor's previous cases in this court, 1:24-bk-00270, the debtor filed a Motion to Compel the production of all financial and tax documents (Doc 159) which was later amended. Thereafter such Motion was denied by this Court in an Order dated June 12, 2024 (Doc 196). This Order of this Court should dispose of the current Motion as the Court has already ruled on the issue.    Second, the Debtor and his wife, tried to obtain the records in the wife's civil litigation related to the trust.    The settlement thwarted that attempt.    Third, this Court denied the request for Rule 2004 examination of Mr. Papoutsis in Ms. Mulkerin's bankruptcy case. Forth, this Court denied the request for Rule 2004 examination of Mr. Papoutsis in the current bankruptcy case.

32.    For all of the above reasons, the Rule 2004 Motion should be denied.

**WHEREFORE**, Ventwell, Inc. and APX Seetech Systems, Inc. requests this Court deny the Debtor's Motion.

Respectfully submitted:

CUNNINGHAM, CHERNICOFF
& WARSHAWSKY, P.C.

By:_____/s/___Robert E. Chernicoff_____
        Robert E. Chernicoff, Esquire

8

Attorney I.D. No. 23380
2320 North Second Street
P. O. Box 60457
Harrisburg, PA 17106-0457
(717) 238-6570
rec@cclawpc.com

Date: October 13, 2025

9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                    :   Case No. 1:25-01575-HWV
  ANDREW MULKERIN,                          :
                              :   Chapter 13
             Debtor.         :
                              :

## ORDER

Upon consideration of the Objection to Debtor's Motion for Rule 2004 Examination

of Ventwell, Inc. and APX Seetech, Inc., it is

**HEREBY ORDERED** that such Motion is DENIED.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Case No. 1:25-01575-HWV |
|   ANDREW MULKERIN, | : | |
| | : | Chapter 13 |
| Debtor. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, Jacob Laughman, paralegal with the law firm of Cunningham, Chernicoff &
Warshawsky, P.C. hereby certify that on October 13, 2025, a true and correct copy of the
attached **OBJECTION TO DEBTOR'S MOTION FOR RULE 2004
EXAMINATION OF VENTWELL, INC. AND APX SEETECH, INC.** was served
via electronic means through the Court's ECF filing system or by first-class mail, postage
prepaid, unless otherwise noted, as follows:

Andrew William Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050

Mario J. Hanyon
Brock & Scott, PLLC
302 Fellowship Road,
Ste 130
Mount Laurel, NJ 08054

Andrew L Spivack
Brock & Scott, PLLC
610 Old York Road
Suite 400
Jenkintown, PA 19046

BMW Bank of North America, c/o AIS Portfolio
Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

Kimberly A Bonner
JSDC Law Offices
11 EAST CHOCOLATE AVE SUITE 300
HERSHEY, PA 17033

United States Trustee
US Courthouse
1501 N. 6th St
Harrisburg, PA 17102

Brent Diefenderfer
CGA Law Firm
135 North George Street
York, PA 17401

Jack N Zaharopoulos
Standing Chapter 13 Trustee
8125 Adams Drive, Suite A
Hummelstown, PA 17036

  /s/ *Jacob Laughman*
Jacob Laughman

FILED
**October 23, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

Date: October 22, 2025

Via Certified Mail & Email: tighek2@gmail.com

To:
Leroy A. King Jr.
545 Aqua Court
York, PA 17404

**Re: Litigation Hold – 333 E. 7th Street and Related Proceedings**
Dear Leroy A. King Jr.,

Please be advised that I, Andrew W. Mulkerin, am a party and witness in active and anticipated litigation relating to the 2022 transaction, possession, and lockout at 333 E. 7th Street, York, PA, and related bankruptcy proceedings (In re Perform Group LLC, Case No. 1:21-bk-01345-HWV; In re Andrew W. Mulkerin, Case No. 1:25-bk-01575-HWV; In re Irene Mulkerin, Case No. 1:24-bk-03264-HWV). You are expected to be a party to future proceedings arising from these events and are therefore directed to preserve all records and communications that may be relevant.

Preserve without limitation:

• Internal and external correspondence, emails, and text messages among any of the recipients listed in this package, including communications with or about the York County Sheriff's Office and Trustee Steven Carr (and his associates).

• Wire records, term sheets, transactional documents, and assignments related to the Perform Group LLC bankruptcy (Case No. 1:21-bk-01345-HWV) and related transfers.

• Communications, notes, calendars, and records of site visits, property tours, or inspections (including any communications referencing the July 14, 2022 eviction and the December 15, 2023 eviction at 3735 Board Rd).

• All drafts, internal memoranda, billing statements, and correspondence related to the 333 E. 7th Street property, the sale/possession, any eviction or writs, and related bankruptcy or state-court actions.

• Any communications with or regarding Trustee Steven Carr, his office, or his representatives concerning the Perform Group estate, claims, or asset distributions.

Please preserve all potentially relevant materials from January 1, 2021 through December 31, 2025, including backups and archived data. Suspend any deletion, overwriting, or alteration of such information. This litigation hold remains in effect until further written notice.

Please confirm in writing within seven (7) days that a full litigation hold has been implemented.

Sincerely,

Andrew W. Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
(717) 802-1508
andy.mulkerin.pro.se@outlook.com

Date: October 22, 2025

Via Certified Mail & Email: kab@jsdc.com, jnr@jsdc.com

To:
Kimberly A. Bonner, Esq.
JSDC Law Offices (Counsel for Orrstown Bank / Successor to PeoplesBank)
11 E. Chocolate Avenue, Suite 300
Hershey, PA 17033

**Re: Litigation Hold – 333 E. 7th Street and Related Proceedings**
Dear Kimberly A. Bonner, Esq.,

Please be advised that I, Andrew W. Mulkerin, am a party and witness in active and anticipated litigation relating to the 2022 transaction, possession, and lockout at 333 E. 7th Street, York, PA, and to successor-liability issues arising from the merger between Orrstown Bank and PeoplesBank. You are directed to preserve all records subject to federal bank-regulatory requirements, including FDIC and FRB retention rules.

Preserve without limitation:

• Internal and external correspondence, emails, and text messages among any of the recipients listed in this package, including communications with or about the York County Sheriff's Office and Trustee Steven Carr (and his associates).

• Wire records, term sheets, transactional documents, and assignments related to the Perform Group LLC bankruptcy (Case No. 1:21-bk-01345-HWV) and related transfers.

• Communications, notes, calendars, and records of site visits, property tours, or inspections (including any communications referencing the July 14, 2022 eviction and the December 15, 2023 eviction at 3735 Board Rd).

• All drafts, internal memoranda, billing statements, and correspondence related to the 333 E. 7th Street property, the sale/possession, any eviction or writs, and related bankruptcy or state-court actions.

• Any communications with or regarding Trustee Steven Carr, his office, or his representatives concerning the Perform Group estate, claims, or asset distributions.

Please preserve all potentially relevant materials from January 1, 2021 through December 31, 2025, including backups and archived data. Suspend any deletion, overwriting, or alteration of such information. This litigation hold remains in effect until further written notice.

Please confirm in writing within seven (7) days that a full litigation hold has been implemented.

Sincerely,

Andrew W. Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
(717) 802-1508
andy.mulkerin.pro.se@outlook.com

Date: October 22, 2025

Via Certified Mail & Email: kkahlbaugh@bennettwilliams.com

To:
Keith Kahlbaugh & Bobby Behler Jr.
Bennett Williams Commercial
342 N. Queen Street
Lancaster, PA 17603

**Re: Litigation Hold – 333 E. 7th Street and Related Proceedings**
Dear Keith Kahlbaugh & Bobby Behler Jr.,

Please be advised that I, Andrew W. Mulkerin, am a party and witness in active and anticipated litigation relating to the 2022 transaction, possession, and lockout at 333 E. 7th Street, York, PA, and related bankruptcy proceedings (In re Perform Group LLC, Case No. 1:21-bk-01345-HWV; In re Andrew W. Mulkerin, Case No. 1:25-bk-01575-HWV). You and your brokerage are directed to preserve all documents, communications, and ESI relevant to these matters, including communications among any of the recipients of these notices and the York County Sheriff's Office, and any communications with or about Trustee Steven Carr or his associates.

Preserve without limitation:

• Internal and external correspondence, emails, and text messages among any of the recipients listed in this package, including communications with or about the York County Sheriff's Office and Trustee Steven Carr (and his associates).

• Wire records, term sheets, transactional documents, and assignments related to the Perform Group LLC bankruptcy (Case No. 1:21-bk-01345-HWV) and related transfers.

• Communications, notes, calendars, and records of site visits, property tours, or inspections (including any communications referencing the July 14, 2022 eviction and the December 15, 2023 eviction at 3735 Board Rd).

• All drafts, internal memoranda, billing statements, and correspondence related to the 333 E. 7th Street property, the sale/possession, any eviction or writs, and related bankruptcy or state-court actions.

• Any communications with or regarding Trustee Steven Carr, his office, or his representatives concerning the Perform Group estate, claims, or asset distributions.

Please preserve all potentially relevant materials from January 1, 2021 through December 31, 2025, including backups and archived data. Suspend any deletion, overwriting, or alteration of such information. This litigation hold remains in effect until further written notice.

Please confirm in writing within seven (7) days that a full litigation hold has been implemented.

Sincerely,

Andrew W. Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
(717) 802-1508
andy.mulkerin.pro.se@outlook.com

Date: October 22, 2025

Via Certified Mail & Email: info@triplecrowncorp.com

To:
Zack Yearick | Mark DiSanto | John DiSanto
Triple Crown Corporation / DMX Investments L.P. / Bulldozer Inc.
5351 Jaycee Avenue
Harrisburg, PA 17112

**Re: Litigation Hold – 333 E. 7th Street and Related Proceedings**
Dear Zack Yearick | Mark DiSanto | John DiSanto,

This letter serves as formal notice to preserve all materials and communications related to your acquisition of PeoplesBank's Claim 214 in the Perform Group LLC bankruptcy (1:21-bk-01345-HWV) and all subsequent dealings involving the property at 333 E. 7th Street, York, Pennsylvania. Please also preserve communications with or about Trustee Steven Carr and his associates.

Preserve without limitation:

• Internal and external correspondence, emails, and text messages among any of the recipients listed in this package, including communications with or about the York County Sheriff's Office and Trustee Steven Carr (and his associates).

• Wire records, term sheets, transactional documents, and assignments related to the Perform Group LLC bankruptcy (Case No. 1:21-bk-01345-HWV) and related transfers.

• Communications, notes, calendars, and records of site visits, property tours, or inspections (including any communications referencing the July 14, 2022 eviction and the December 15, 2023 eviction at 3735 Board Rd).

• All drafts, internal memoranda, billing statements, and correspondence related to the 333 E. 7th Street property, the sale/possession, any eviction or writs, and related bankruptcy or state-court actions.

• Any communications with or regarding Trustee Steven Carr, his office, or his representatives concerning the Perform Group estate, claims, or asset distributions.

Please preserve all potentially relevant materials from January 1, 2021 through December 31, 2025, including backups and archived data. Suspend any deletion, overwriting, or alteration of such information. This litigation hold remains in effect until further written notice.

Please confirm in writing within seven (7) days that a full litigation hold has been implemented.

Sincerely,

Andrew W. Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
(717) 802-1508
andy.mulkerin.pro.se@outlook.com

Date: October 22, 2025

Via Certified Mail & Email: rec@cclawpc.com

To:
Robert E. Chernicoff, Esq.
Cunningham, Chernicoff & Warshawsky, P.C.
2320 N. Second Street
Harrisburg, PA 17110

**Re: Litigation Hold – 333 E. 7th Street and Related Proceedings**
Dear Robert E. Chernicoff, Esq.,

Please be advised that I, Andrew W. Mulkerin, am a party and witness in active and anticipated litigation relating to the 2022 transaction, possession, and lockout at 333 E. 7th Street, York, PA, and related bankruptcy proceedings (In re Perform Group LLC, Case No. 1:21-bk-01345-HWV; In re Andrew W. Mulkerin, Case No. 1:25-bk-01575-HWV; In re Irene Mulkerin, Case No. 1:24-bk-03264-HWV). You and your firm are directed to preserve all documents, communications, and ESI relevant to these matters.

Preserve without limitation:

• Internal and external correspondence, emails, and text messages among any of the recipients listed in this package, including communications with or about the York County Sheriff's Office and Trustee Steven Carr (and his associates).

• Wire records, term sheets, transactional documents, and assignments related to the Perform Group LLC bankruptcy (Case No. 1:21-bk-01345-HWV) and related transfers.

• Communications, notes, calendars, and records of site visits, property tours, or inspections (including any communications referencing the July 14, 2022 eviction and the December 15, 2023 eviction at 3735 Board Rd).

• All drafts, internal memoranda, billing statements, and correspondence related to the 333 E. 7th Street property, the sale/possession, any eviction or writs, and related bankruptcy or state-court actions.

• Any communications with or regarding Trustee Steven Carr, his office, or his representatives concerning the Perform Group estate, claims, or asset distributions.

Please preserve all potentially relevant materials from January 1, 2021 through December 31, 2025, including backups and archived data. Suspend any deletion, overwriting, or alteration of such information. This litigation hold remains in effect until further written notice.

Please confirm in writing within seven (7) days that a full litigation hold has been implemented.

Sincerely,

Andrew W. Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
(717) 802-1508
andy.mulkerin.pro.se@outlook.com

Date: October 22, 2025

Via Certified Mail & Email: sheriff@yorkcountypa.gov

To:
York County Sheriff's Office
45 N. George Street
York, PA 17401

**Re: Litigation Hold – 333 E. 7th Street and Related Proceedings**
Dear York County Sheriff's Office,

Please be advised that I, Andrew W. Mulkerin, am a party and witness in active and anticipated litigation relating to the 2022 transaction, possession, and lockout at 333 E. 7th Street, York, PA, and related bankruptcy proceedings. Preserve all records, dispatch logs, communications, body-cam footage, and related materials concerning execution of the Writ of Possession in Leroy A. King Jr. v. Mulkerin et al., 2022-SU-000710, including communications that took place before the morning of December 15, 2023 (Board Rd eviction) and any communications with the parties and counsel listed in these notices.

Preserve without limitation:

• Internal and external correspondence, emails, and text messages among any of the recipients listed in this package, including communications with or about the York County Sheriff's Office and Trustee Steven Carr (and his associates).

• Wire records, term sheets, transactional documents, and assignments related to the Perform Group LLC bankruptcy (Case No. 1:21-bk-01345-HWV) and related transfers.

• Communications, notes, calendars, and records of site visits, property tours, or inspections (including any communications referencing the July 14, 2022 eviction and the December 15, 2023 eviction at 3735 Board Rd).

• All drafts, internal memoranda, billing statements, and correspondence related to the 333 E. 7th Street property, the sale/possession, any eviction or writs, and related bankruptcy or state-court actions.

• Any communications with or regarding Trustee Steven Carr, his office, or his representatives concerning the Perform Group estate, claims, or asset distributions.

Please preserve all potentially relevant materials from January 1, 2021 through December 31, 2025, including backups and archived data. Suspend any deletion, overwriting, or alteration of such information. This litigation hold remains in effect until further written notice.

Please confirm in writing within seven (7) days that a full litigation hold has been implemented.

Sincerely,

Andrew W. Mulkerin
1740 Adeline Drive
Mechanicsburg, PA 17050
(717) 802-1508
andy.mulkerin.pro.se@outlook.com

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

---

**In re:**

**Andrew W. Mulkerin, Debtor**

Chapter 13

Case No.: 1:25-bk-01575-HWV

## CERTIFICATE OF SERVICE

I, Andrew W. Mulkerin, hereby certify that on October 22, 2025, I served true and correct copies of the Litigation Hold Notices by Certified Mail and by electronic mail upon the following parties:

• Leroy A. King Jr. — 545 Aqua Court — tighek2@gmail.com

• Robert E. Chernicoff, Esq. — Cunningham, Chernicoff & Warshawsky, P.C. — rec@cclawpc.com

• Keith Kahlbaugh & Bobby Behler Jr. — Bennett Williams Commercial — kkahlbaugh@bennettwilliams.com

• Kimberly A. Bonner, Esq. — JSDC Law Offices (Counsel for Orrstown Bank / Successor to PeoplesBank) — kab@jsdc.com, jnr@jsdc.com

• Zack Yearick | Mark DiSanto | John DiSanto — Triple Crown Corporation / DMX Investments L.P. / Bulldozer Inc. — info@triplecrowncorp.com

• York County Sheriff's Office — 45 N. George Street — sheriff@yorkcountypa.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 22, 2025, at Mechanicsburg, Pennsylvania.

Andrew W. Mulkerin

1740 Adeline Drive
Mechanicsburg, PA 17050
(717) 802-1508
andy.mulkerin.pro.se@outlook.com

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

---

**In re:**
**Andrew W. Mulkerin, Debtor**
**Chapter 13**
**Case No.: 1:25-bk-01575-HWV**

---

**AMENDED CERTIFICATE OF SERVICE**

I, **Andrew W. Mulkerin**, hereby certify that on **October 22, 2025**, I served true and correct copies of the **Litigation Hold Notices** by **Certified Mail** and by **electronic mail** upon the following parties:

---

**1. Leroy A. King Jr.**
545 Aqua Court
York, PA 17404
tighek2@gmail.com

**2. Robert E. Chernicoff, Esq.**
Cunningham, Chernicoff & Warshawsky, P.C.
2320 N. Second Street
Harrisburg, PA 17110
rec@cclawpc.com

**3. Keith Kahlbaugh & Bobby Behler Jr.**
Bennett Williams Commercial
342 N. Queen Street
Lancaster, PA 17603
keith@bennettwilliams.com; bbehler@bennettwilliams.com;
info@bennettwilliams.com; contact@bennettwilliams.com

**4. Kimberly A. Bonner, Esq.**
JSDC Law Offices (Counsel for Orrstown Bank / Successor to PeoplesBank)

1

11 E. Chocolate Avenue, Suite 300

Hershey, PA 17033

kab@jsdc.com; jnr@jsdc.com

**5. Zack Yearick | Mark DiSanto | John DiSanto**

Triple Crown Corporation / DMX Investments L.P. / Bulldozer Inc.

5351 Jaycee Avenue

Harrisburg, PA 17112

info@triplecrowncorp.com

**6. York County Sheriff's Office**

45 N. George Street

York, PA 17401

rikeuerleber@yorkcountypa.gov; sheriff@yorkcountypa.gov

---

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **October 22, 2025**, at **Mechanicsburg, Pennsylvania**.

---

**/s/ Andrew W. Mulkerin**

Andrew W. Mulkerin

1740 Adeline Drive

Mechanicsburg, PA 17050

(717) 802-1508

andy.mulkerin.pro.se@outlook.com

2

Case 1:25-bk-01575-HWV    Doc 290-1    Filed 10/23/25    Entered 10/23/25 10:41:59    Desc  Amended Certificate of Service    Page 2 of 2

147

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

**In re:** Andrew W. Mulkerin, Debtor

Case No. 1:25-bk-01575-HWV

Chapter 13

> FILED
> **November 3, 2025**
> Clerk, U.S. Bankruptcy Court
> Middle District of Pennsylvania
> Harrisburg

**DEBTOR'S REPLY IN SUPPORT OF MOTION FOR RULE 2004 EXAMINATION**

**(Ventwell Inc. and APX Seetech Systems Inc.)**
*(Relates to Debtor's Motion Dkt. 244 and Objector's Opposition Dkt. 260)*

## I. Purpose and Context

1. This Reply supports Debtor's pending Rule 2004 Motion and addresses the opposition filed by counsel for Ventwell Inc. and APX Seetech Systems Inc. ("Seetech").

2. The Motion seeks narrowly targeted discovery concerning ownership, inter-company transactions, and financial records that directly bear on estate administration, plan feasibility, and potential recoveries.

3. The Debtor's goal for tomorrow's hearing is forward-looking—clarifying the factual record so this case can proceed efficiently toward plan confirmation and tax resolution.

## II. Rule 2004 Authority and Good Cause

4. Rule 2004 permits examination of *any entity* about "the acts, conduct, or property…or any matter which may affect the administration of the estate."

5. The requested materials—ownership ledgers, financials, tax K-1s, and inter-company transactions from 2019–present—plainly satisfy that standard.

1

6. Recent developments (2023 summonses, Dec 2024 buyback, 2024–25 address changes) demonstrate continuing relevance.

---

### III. No Pending Proceeding Bars Discovery

7. No adversary proceeding or contested matter duplicates this request. The *pending-proceeding rule* therefore does not apply.

8. The Motion simply seeks preliminary fact development to value assets and assess potential claims—exactly what Rule 2004 is for.

---

### IV. Scope and Protections

9. Debtor limits production to 2019–present, five custodians per entity, phased rolling production, and a two-tier protective order.

10. Privilege and confidentiality will be preserved through categorical logs and "Confidential/Attorneys' Eyes Only" designations.

---

### V. Why the Objection Fails

11. The opposition recycles arguments from unrelated motions, misstates facts, and minimizes undisputed evidence of ongoing corporate activity.

12. Nothing prevents entity-level discovery of corporations in which the Debtor holds substantial ownership interests; Rule 2004 explicitly allows it.

---

### VI. Requested Relief

13. Overrule the Objection and enter an order authorizing:

    a. Production within 21–30 days of the categories listed in Exhibit A (2019–present);

    b. Rule 2004 examinations within 45–60 days on the topics in Exhibit B;

    c. A two-tier protective order and privilege-log protocol; and

    d. Continuing court supervision for compliance.

2

## VII. Conclusion

14. The Debtor has shown good cause and proposed a practical framework that respects burden and confidentiality while enabling fair valuation.

15. Granting this Motion will clarify the estate's asset picture, assist the Trustee, and move the case toward confirmation.

**Dated:** November 3, 2025
Respectfully submitted,
/s/ Andrew W. Mulkerin
Andrew W. Mulkerin, Debtor Pro Se
1740 Adeline Drive • Mechanicsburg, PA 17050
andy.mulkerin.pro-se@outlook.com

## DECLARATION OF ANDREW W. MULKERIN

I declare under 28 U.S.C. § 1746 that:

1. I hold 47 % ownership in Ventwell Inc. and 47 % in APX Seetech Systems Inc.

2. Writs of summons were issued by Ventwell, Inc. and APX Seetech Systems, Inc. in 2023 — naming me, Mulkerin Holdings, LLC, and related business interests — and were subsequently re-issued later that same year. Ventwell completed a minority-interest buyback in December 2024, and both corporations filed updated business addresses during 2024 and 2025, confirming their continued existence and activity.

3. The requested documents and examinations concern ownership, transfers, tax records, and litigation files directly relevant to my financial condition and plan feasibility.

3

**Dated:** November 3, 2025

Respectfully submitted,

/s/ Andrew W. Mulkerin

Andrew W. Mulkerin, Debtor Pro Se

1740 Adeline Drive • Mechanicsburg, PA 17050

andy.mulkerin.pro-se@outlook.com

4

## EXHIBIT A – TABLE 1 POINT-BY-POINT REBUTTAL TO VENTWELL & SEETECH OBJECTION (DKT. 260)

| ¶ No. | Statement in Objection | Debtor's Rebuttal / Response |
| --- | --- | --- |
| 1 | "Debtor and his wife enjoyed a lifestyle supported by Mr. Papoutsis." | Irrelevant. Rule 2004 concerns estate administration, not lifestyle. Improper character evidence. |
| 2 | "Irene demanded trust payments; Delaware case settled $3.15 M with releases." | That settlement binds only the trust estate, not this Debtor's corporate interests. |
| 3 | "Court-approved settlement final." | Has no preclusive effect on separate corporate discovery. |
| 4 | "Debtor filed this case to demand information from father-in-law." | Petition filed for debt relief; requests target corporations, not personal data. |
| 5–6 | "Multiple bankruptcies show bad faith." | Prior dismissals were procedural. Current case is compliant and funded. |
| 7 | "Trustee has moved to dismiss; discovery premature." | Case remains pending; Rule 2004 discovery routinely proceeds alongside dismissal motions. |
| 8 | "Motion to convert to Sub V pending." | Procedural posture doesn't restrict Rule 2004 rights. |
| 9 | "Court denied July 2004 motion re APX entities." | That order addressed Papoutsis personally, not corporate entities; new facts justify renewal. |
| 10 | "Rule 2004 limited to prevent harassment." | Requests are targeted to financial data; no harassment shown. |

5

| ¶ No. | Statement in Objection | Debtor's Rebuttal / Response |
|---|---|---|
| 11 | "Ventwell/Seetech not interested parties." | Debtor owns 47 %; they hold estate-relevant data → Rule 2004 applies. |
| 12 | "Mathews/WaMu privacy cases bar production." | Those involve personal privacy; this seeks corporate records under protective order. |
| 13 | "Companies defunct since 2021." | False – 2024 buyback & 2025 address updates prove activity. |
| 14–15 | "Losses ≈ $2 M show no value." | Losses ≠ extinction of legal entity or shareholder rights. |
| 16 | "Fraud claims unsupported." | Motion cites RKL audit and specific transactions; Rule 2004 seeks verification. |
| 17 | "RKL audit lacks facts." | Audit exists; this discovery confirms its contents. |
| 18 | "Post-2021 irrelevant." | Concealment and redemption occurred after 2021 – critical period. |
| 19 | "Requests overbroad." | Limited date range & custodians; proportionate under Rule 26 standards. |
| 20 | "Duplicative of prior 2004." | Overlap expected but scope narrower with new 2023–25 facts. |
| 21 | "Debtor already knows financial status." | Access was cut off 2021; records needed for verification. |
| 22 | "He abandoned employment." | Irrelevant to shareholder rights or discoverability. |

6

| ¶ No. | Statement in Objection | Debtor's Rebuttal / Response |
|---|---|---|
| 23–25 | "Irene Mulkerin's 2004 motions denied." | Different debtor & subject matter; no preclusion. |
| 26 | "Debtor ineligible for Ch 13." | Eligibility litigated separately; does not bar Rule 2004 relief. |
| 27–28 | "Claims time-barred." | Limitations issues are merits questions; tolling may apply. |
| 29 | "No post-2021 activity." | 2023 summons, 2024 buyback, 2025 address update = active entities. |
| 30 | "No benefit to estate." | Determines asset value & offsets → clear benefit to creditors. |
| 31 | "Fifth harassment attempt." | New targets, new facts, narrow scope → good faith request. |
| 32 | "Therefore deny." | Every premise above is factually or legally incorrect; good cause shown. |

7

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

**In re:** Andrew W. Mulkerin, Debtor
**Case No. 1:25-bk-01575-HWV | Chapter 13**

---

**CERTIFICATE OF SERVICE**

I hereby certify that on **November 3, 2025**, I caused a true and correct copy of the **Debtor's Reply in Support of Motion for Rule 2004 Examination (Ventwell Inc. and APX Seetech Systems Inc.)** (relating to Debtor's Motion at Dkt. 244 and the Objector's Opposition at Dkt. 260), together with the accompanying **Declaration** and **Exhibit A** , to be submitted through the Court's **Electronic Document Submission System (EDSS)** for **docketing and service via CM/ECF** upon all registered users in this case, and by first-class U.S. Mail to any non-registered parties listed on the current creditor matrix.

Service was made upon, including but not limited to, the following parties of record:

- **Jack N. Zaharopoulos**, Chapter 13 Trustee
  8125 Adams Drive, Suite A, Hummelstown, PA 17036 *(via CM/ECF)*

- **Office of the United States Trustee**
  1501 N. 6th Street, Harrisburg, PA 17102 *(via CM/ECF)*

- **Robert E. Chernicoff, Esq.**, **Cunningham & Chernicoff, P.C.**
  Counsel for Ventwell Inc. and APX Seetech Systems Inc. *(Objectors)*
  2320 N. 2nd Street, Harrisburg, PA 17110 *(via CM/ECF)*

- **Mario J. Hanyon, Esq.** and **Andrew L. Spivack, Esq.**, **Brock & Scott, PLLC**
  Counsel for Freedom Mortgage Corporation *(via CM/ECF)*

- **Kim A. Bonner, Esq.**, **JSDC Law Offices**
  Counsel for Orrstown Bank *(via CM/ECF)*

- **Brent C. Diefenderfer, Esq.**, **CGA Law Firm**
  Counsel for Keith & Lisa Wolfe *(via CM/ECF)*

1

- **Kenneth W. Kleppinger, Esq.**, **Becket & Lee LLP**
  Counsel for American Express National Bank *(via CM/ECF)*

All other creditors and parties in interest will receive notice through **CM/ECF** or by mail per the **Official Creditor Matrix** on file.

Executed on **November 3, 2025**, at Mechanicsburg, Pennsylvania.

**/s/ Andrew William Mulkerin**

Andrew William Mulkerin, Debtor Pro Se

1740 Adeline Drive, Mechanicsburg, PA 17050

andy.mulkerin.pro-se@outlook.com

2

| | |
|---|---|
| **From:** | Irene MULKERIN <noreply@jotform.com> |
| **Sent:** | Tuesday, November 4, 2025 1:37 PM |
| **To:** | PAMB_Audio_Requests; PAMBml_TeamLeaders |
| **Subject:** | Re: Audio Hearing Request from Irene MULKERIN |

<div style="border:1px solid blue">

FILED
**November 4, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

</div>

**CAUTION - EXTERNAL:**

## PAMB Hearing Audio File Request

| | |
|---|---|
| Name | Irene MULKERIN |
| Email | irene.mulkerin@outlook.com |
| Phone Number | (717) 802-0724 |
| Case Number | 1:25-bk-01575 |
| Case Name | Andrew Mulkerin |
| Hearing Date | 11-04-2025 |
| Judge's Name | Judge Van Eck |

You can edit this submission and view all your submissions easily.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:

ANDREW W. MULKERIN,

Debtor.

Chapter 13

Case No. 1:25-bk-01575-HWV

FILED
**November 28, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

**DEBTOR'S REPLY IN FURTHER SUPPORT OF MOTION FOR RULE 2004 EXAMINATION OF VENTWELL, INC. AND APX SEETECH SYSTEMS, INC.**

(Relates to Motion Dkt. 244 and Objection Dkt. 260)

Debtor, Andrew William Mulkerin ("Debtor"), respectfully files this Reply in further support of his Motion for Rule 2004 Examination of Ventwell, Inc. ("Ventwell") and APX Seetech Systems, Inc. ("Seetech"). The Objection (Dkt. 260) rests on misstatements of fact, incorrect legal assertions, and an incomplete description of the procedural record. This Reply corrects the record, incorporates new evidence bearing directly on estate administration, and demonstrates why Rule 2004 relief is not only proper, but necessary.

This Reply clarifies why the Court should overrule the Objection and grant the Rule 2004 Motion.

**I. INTRODUCTION**

The Objection mischaracterizes the Debtor's request as a personal dispute or an attempt to re-litigate prior denials. It is neither. The Motion seeks targeted

1

corporate records of entities in which Debtor holds a forty-seven percent (47%) ownership interest—interests that are property of the estate under 11 U.S.C. §§ 541 and 1306. These records directly affect valuation, tax liabilities, plan feasibility, creditor recoveries, and Debtor's ability to defend against writs issued by these same entities.

The Objection also disregards significant new evidence—including the October 2, 2025 letter from Attorney Chernicoff copying trust beneficiaries on corporate correspondence (Exhibit A) —which sharply contradicts the assertion that Ventwell and Seetech ceased operations in 2021 and were unrelated to ongoing trust matters.

## II. CORRECTION OF THE RECORD AND FACTUAL MISSTATEMENTS

### A. Ventwell and Seetech have remained active entities through 2023–2025

The Objection asserts, without evidence, that both companies "went out of business in 2021."
The record shows the opposite:

1. **Writs of Summons issued in 2023 and reissued in November 2023** by or on behalf of Ventwell/Seetech.
2. **A December 2024 buyback of a minority shareholder's 5% interest** in Ventwell.
3. **A 2025 corporate address update by Seetech**, recorded on June 2, 2025— the very day Debtor filed this case.
4. **Active communications from counsel in 2025**, including the October 2 letter that copied trust beneficiaries Laura Paddack and Jamie Rockmore.

2

These facts appear in Debtor's Motion (Dkt. 244), Exhibits A–D, and the newly produced Chernicoff letter.

The Objection offers no rebuttal to any of these facts.

## B. Trust-beneficiary involvement confirms that corporate affairs extended beyond 2021

On October 2, 2025, Attorney Chernicoff copied two beneficiaries of the A.V. Papoutsis Irrevocable Trust —Laura Paddack and Jamie Rockmore—on correspondence opposing 2004 discovery into Ventwell/Seetech. Neither beneficiary has ever owned any part of Ventwell or Seetech.

This creates a reasonable and legally significant inference that Ventwell and Seetech may have been:

• transferred into the trust,

• pledged or used as trust-related collateral,

• integrated into trust asset management, or

• otherwise entangled with trust property.

This inference directly validates Debtor's earlier Schedule A emergency motion (Dkt. 131), which the Court denied procedurally, **before** this evidence existed.

This new evidence goes directly to ownership, valuation, potential transfers, and potential estate recoveries—core Rule 2004 concerns.

## C. The Objection misstates Debtor's access to records

3

Debtor had no access after 2021. All records were cut off. The Objection falsely claims Debtor "should have been aware" of all financials during his tenure. This does not rebut the fact that:

• corporate decisions, transactions, transfers, and tax allocations continued after 2021;

• Debtor has no access to any of them;

• and those later events directly affect estate property.

## D. The Objection ignores stock-repurchase activity

The December 2024 buyback—two years after alleged "closure"—proves activity inconsistent with dissolution.

## III. PROCEDURAL CLARIFICATIONS THE OBJECTION IGNORES

## A. The Court denied only the personal 2004 request into Papoutsis

The August 26 order addressed a request for personal discovery into Mr. Papoutsis—not corporate discovery of Ventwell and Seetech. The Court distinguished derivative claims from direct ones and explicitly acknowledged Debtor's 47% equity.

This Motion seeks:

  • corporate ownership records,

  • financials,

  • transfers,

  • K-1s,

  • writs,

  • lawsuits,

4

- inter-company transactions, and

- valuation information.

None of these fall within the prior denial.

## B. This request is not "duplicative" under the pending-proceeding rule

There is no adversary proceeding on these issues.

There is no contested matter on these merits.

There is no violation of any pending-proceeding limitation.

Rule 2004 is proper.

## C. The Objection mischaracterizes Dkt. 131 and Schedule A

Dkt. 131 concerned trust Schedule A—not corporate Seetech/Ventwell records. The two issues intersect now **only because** the Chernicoff cc-letter demonstrates trust-beneficiary involvement in corporate matters.

D. A complete point-by-point rebuttal of each paragraph of Dkt. 260 appears in Appendix A.

## IV. LEGAL STANDARD AND APPLICATION

## I. Standard Under Rule 2004

Federal Rule of Bankruptcy Procedure 2004 permits examination of "any entity" regarding "the acts, conduct, or property of the debtor, or... any matter which may affect the administration of the estate." Courts within the Third Circuit, including the Middle District of Pennsylvania, uniformly recognize that:

5

"Rule 2004 is properly invoked to explore the nature and extent of the debtor's assets, conduct, liabilities, and financial condition... [and] to determine whether wrongdoing has occurred."

— *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); accord *In re GHR Energy Corp.*, 35 B.R. 534, 536 (Bankr. D. Mass. 1983).

Rule 2004 may reach third parties, including non-debtor entities, so long as the inquiry bears on estate value, administration, or claims. As the Third Circuit held in *Unsecured Creditors' Comm. v. Noyes*, 990 F.2d 93, 96–97 (3d Cir. 1993), a Chapter 13 or 11 debtor-in-possession may invoke Rule 2004 to examine third parties when the trustee declines to do so.

## II. Application to Ventwell and APX Seetech

This request targets **corporate records of entities in which the Debtor holds a 47% equity interest**, indisputably estate property under 11 U.S.C. §§ 541(a)(1), 1306. These interests are not dormant or abandoned:

- **Ventwell repurchased a 5% shareholder interest in December 2024**—conclusive evidence of ongoing legal existence and operations.
- **Seetech updated its registered address with the Commonwealth on June 2, 2025**, the very day this case was filed—confirming good standing.
- **Both companies initiated Writs of Summons in 2023**, which were reissued later that year—active corporate litigation inconsistent with the "defunct" theory.

These facts defeat any assertion that Rule 2004 discovery is irrelevant or time-barred. The alleged 2021 closure is a factual misrepresentation, contradicted by public filings and litigation activity.

6

## III. Estate-Relevant Purpose

The discovery sought is tailored to:

- Determining estate asset value under **§ 1325(a)(4)**;
- Validating or challenging priority tax claims under **§ 507(a)(8)**;
- Supporting plan feasibility under **§ 1325(a)(6)** and, if converted, **§ 1129(a)(11)**;
- Identifying potential claims under **§§ 544, 548, and 549** based on post-2021 concealment and transactions;
- Assessing insider conduct, K-1 tax allocations, and potential asset diversion affecting recovery.

These are not speculative inquiries. They follow a 2021 audit (RKL LLP) that flagged intercompany loan irregularities and debt forgiveness. IRS notices and Dkt. 205 and Dkt 206 corroborate that the Debtor is already bearing the tax burden of suspect allocations.

## IV. The Objection's Legal Misstatements

The Companies' objection misstates controlling law:

- It cites *In re Mathews*, 2018 WL 5024167 (D. Del.), and *Washington Mut.*, 408 B.R. 45 (Bankr. D. Del. 2009), which concern purely **personal data** requests unrelated to estate administration. In contrast, corporate financials directly affecting estate valuation are routinely subject to Rule 2004 review.
- Rule 2004 discovery is **not limited by § 548's two-year lookback**, as the objection suggests. Longer periods apply under **§ 544(b)** and Pennsylvania's

7

Uniform Voidable Transactions Act (PUVTA), including tolling doctrines like:

- o **Adverse domination** (insiders controlling companies);
- o **Fraudulent concealment**;
- o **Equitable tolling** based on post-petition acts (e.g., 2024 repurchase).

- The "pending proceeding" rule does not apply. There is **no adversary or contested matter** duplicating this inquiry.

- The objection fails to cite *any* controlling Third Circuit authority refuting the Debtor's right to inspect estate property or exercise shareholder rights under Pennsylvania law (15 Pa.C.S. § 1508).

## V. Independent State-Law Rights Support 2004 Use

As detailed in Exhibit A of Debtor's 2004 Motion (Dkt 244), the Debtor retains statutory shareholder inspection rights under **15 Pa.C.S. § 1508**, which Pennsylvania courts have affirmed as independent, enforceable rights even outside bankruptcy. See *Shaffer v. Regester*, 417 Pa. 593, 207 A.2d 871 (1965). These rights are themselves part of the estate under **§ 541**, and enforcing them through Rule 2004 is not only permissible—it is appropriate.

## V. THE OBJECTION'S ARGUMENTS FAIL AS A MATTER OF LAW

### A. "Defunct since 2021" is contradicted by multiple active events

Objection ¶¶ 13–14 are demonstrably false.

### B. "Personal harassment" is disproven by the record

Debtor seeks only corporate documents affecting his own assets and liabilities.

8

## C. The Objection ignores plan feasibility

Plan confirmation in Chapter 13 (and potentially Subchapter V) requires this information.

The objection offers no alternative method by which Debtor could:

• complete tax filings,

• calculate liabilities,

• determine liquidation value under §1325(a)(4),

• or confirm feasibility under §1325(a)(6).

## D. The Objection misstates the Court's prior orders

None of the prior orders prohibit corporate 2004 discovery.

## E. The Objection attempts to relitigate the trust settlement

Much of the Objection improperly recites unrelated trust-litigation history.
It has no bearing on corporate 2004 discovery.

## VI. NEW EVIDENCE JUSTIFYING 2004 RELIEF

## A. The Chernicoff cc-letter copying trust beneficiaries

This is newly emergent evidence demonstrating:

• overlap between trust matters and corporate affairs,

• potential transfer or concealment of corporate assets,

• and validation of the Schedule A concerns.

It directly supports estate-administration goals.

## B. The Schedule A emergency motion

9

Dkt. 131 was denied procedurally, not substantively.

The new evidence (trust beneficiaries copied on corporate correspondence) would have materially changed that analysis.

## VII. THE COURT SHOULD OVERRULE THE OBJECTION

Debtor has shown:

1. Direct relevance to estate administration

2. Good cause under Rule 2004

3. Ongoing corporate activity

4. Concealment indicators

5. Trust/beneficiary involvement

6. Tax-filing necessity

7. Plan feasibility necessity

8. New evidence unavailable at time of prior orders

No burden or privilege concerns are insurmountable.

Debtor proposes a protective order and reasonable custodian limits.

## VIII. REQUEST FOR RELIEF

Debtor respectfully requests that the Court:

1. Overrule the Objection (Dkt. 260).

2. Grant the Rule 2004 Motion (Dkt. 244).

3. Order production within 21 days of the categories listed in the Motion and Exhibits.

4. Authorize corporate-designee examinations within 45–60 days.

5. Approve a two-tier protective order.

10

6.  Permit third-party subpoenas to RKL, Showalter, Miller, and Green.

7.  Grant such other relief as the Court deems just.

Respectfully submitted,

/s/ Andrew William Mulkerin

Debtor Pro Se

1740 Adeline Drive

Mechanicsburg, PA 17050

November 28, 2025

**Appendix A**

This Appendix identifies each paragraph of the Objection (Dkt. 260) and provides a direct response demonstrating why the asserted statements are inaccurate, irrelevant, unsupported, or legally incorrect.

**POINT-BY-POINT REBUTTAL TO "VENTWELL & SEETECH OBJECTION" (DKT. 260)**

| ¶ No. | Statement in Objection | Your Counter / Opposition Statement |
|---|---|---|
| 1 | "Debtor and his wife enjoyed a lifestyle supported by Mr. Papoutsis." | Irrelevant and prejudicial. Rule 2004 turns on relevance to estate administration, not family dynamics or 'lifestyle.' This is improper character evidence. |
| 2 | "Irene demanded trust payments; the Delaware litigation settled for $3.15 M with mutual releases." | Settlement in a separate case has no preclusive effect on Andy's independent bankruptcy. Ventwell/Seetech records concern his equity interests and guarantees, not the trust settlement. |

11

| ¶ No. | Statement in Objection | Your Counter / Opposition Statement |
|---|---|---|
| 3 | "Court approved settlement and order is final." | Irrelevant to this Rule 2004 Motion. Final approval in Case 24-03264 does not bar third-party discovery in Case 25-01575. |
| 4 | "Debtor filed this case a few days later and demanded information from father-in-law." | Timing coincidental; Chapter 13 petition filed for independent debt resolution. Request targets corporate records he co-owns, not personal data of father-in-law. |
| 5–6 | "Fourth individual and third business bankruptcy; prior cases dismissed for failures." | Irrelevant to Rule 2004 eligibility. Dismissals were procedural, not for bad faith. Past filings don't limit current right to discovery. |
| 7 | "Trustee has moved to dismiss current case for ineligibility." | While case is pending, Debtor is a 'party in interest' entitled to Rule 2004 discovery. Courts routinely grant 2004 motions even with dismissal motions pending. |
| 8 | "Motion to convert to Sub V is set for October 21." | Procedural posture irrelevant to discovery rights; Rule 2004 aids valuation and plan feasibility for any chapter. |
| 9 | "Court previously denied July 2004 Motion and told Debtor not to seek info on APX Entities." | Prior order concerned **Andrew Papoutsis personally**, not Ventwell/Seetech as separate corporations. Current motion has new targets and new facts (2023–2025 activity). No preclusion. |
| 10 | "Rule 2004 has limits to prevent harassment." | True in principle but inapplicable here; requests are tied to estate value and claims —not harassment. |
| 11 | "Ventwell and Seetech are neither debtors nor creditors nor interested parties; Debtor admits Papoutsis majority." | Rule 2004 explicitly allows examination of *any entity* with knowledge of the debtor's financial affairs. Andy's 47 % ownership and personal guarantees make them 'interested parties.' |
| 11 cont. | "Second attempt to circumvent order." | Different entities = different discovery. Prior order denied a motion as to Papoutsis personally; it does not bar entity-level records. |

12

| ¶ No. | Statement in Objection | Your Counter / Opposition Statement |
|---|---|---|
| 11 end | "Information irrelevant to bankruptcy." | False. Ownership, loans, and transfers impact asset valuation and feasibility—core bankruptcy issues. |
| 12 | "Cites Mathews / Washington Mut. re: third-party privacy." | Those cases concerned private personal data with no link to estate assets. This motion seeks corporate records Andy part-owns; privacy concerns are minimal and manageable via protective order. |
| 13 | "Both companies went out of business in 2021." | Factually wrong. Corporate registry shows address updates (2024–2025); Ventwell executed Dec 2024 buyback; writs filed 2023. Entities active and relevant. |
| 14–15 | "Andy was GM; companies lost $2 million." | Unsupported assertion without records. Losses do not erase legal existence or extinguish shareholder rights. Discovery will confirm truth. |
| 16 | "Allegations of oppression/fraud unsupported." | Motion cites specific facts — RKL audit findings, 2023 summons, 2024 buyback — more than sufficient to establish good cause. |
| 17 | "RKL audit claims lack facts." | Audit exists; Debtor attached summary excerpts. Discovery seeks to verify those records — exact purpose of Rule 2004. |
| 18 | "Debtor should have known financials; post-2021 irrelevant." | Awareness ≠ possession. He was locked out after 2021. Post-2021 period is critical because concealment and share redemption occurred then. |
| 19 | "Requests of enormous depth and breadth." | Scope is narrowed to 2019-present, 5 custodians, phased production. Proportional and standard for corporate accounting records. |
| 20 | "Almost identical to prior 2004." | Overlap expected because same financial ecosystem; current motion adds recent transactions and narrower date range—new facts justify renewal. |

13

| ¶ No. | Statement in Objection | Your Counter / Opposition Statement |
|---|---|---|
| 21 | "Debtor should already know financial status." | He cannot testify to current records without access. Corporate books and tax returns are primary sources for asset valuation and defenses. |
| 22 | "He abandoned employment without notice." | Irrelevant to discoverability; employment exit has no bearing on his rights as shareholder and creditor. |
| 23–25 | "Court denied Irene Mulkerin's 2004 motions; should control here." | Different debtor, different estate, different subject assets (FLP and trust vs. corporations). Those orders carry no res judicata or collateral estoppel effect here. |
| 26 | "Debtor may be ineligible for Chapter 13." | Irrelevant to Rule 2004; eligibility dispute does not extinguish right to discover estate assets while case is pending. |
| 27–28 | "No evidence of fraud; claims time-barred (§ 548 two-year limit)." | SOL arguments premature. Discovery may reveal concealment or post-2023 acts tolling limitations (equitable tolling, fraudulent concealment, adverse domination). |
| 29 | "Debtor offered no proof of post-2021 activity." | Wrong. Attached evidence shows Dec 2024 buyback, 2025 address change, 2023 summons—corporate activity ongoing. |
| 30 | "No benefit to estate; ancient documents." | Benefit clear: determines value of Debtor's ownership and potential claims; affects plan feasibility and creditor recovery. |
| 31 | "Fifth attempt to harass Papoutsis; court already denied all." | Misleading. Each motion involved different scope and parties. Current motion is narrow, fact-supported, and filed in good faith based on new evidence (2023–2025). |
| 32 | "Therefore motion should be denied." | Every premise supporting denial is factually or legally incorrect. Good cause is shown under Rule 2004 and no prior order bars this request. |

14

As demonstrated above, not a single paragraph of Dkt. 260 provides a valid basis to deny the Rule 2004 Motion.

15

Robert E. Chernicoff
Bruce J. Warshawsky
David B. Dowling
Olivia Unger Bort
Joseph M. Kanfer

Of Counsel
Amy J. Ginsberg

# CUNNINGHAM, CHERNICOFF & WARSHAWSKY, P.C.
ATTORNEYS AT LAW
P.O. BOX 60457
HARRISBURG, PA  17106-0457
_____
TELEPHONE:    (717) 238-6570
FAX:    (717) 238-4809

Jordan D. Cunningham
(1951-2022)

IRS No. 23-2274135

Street Address:
2320 North Second Street
Harrisburg, PA  17110

Sender's Email:
rec@cclawpc.com

October 2, 2025

**VIA ELECTRONIC MAIL**
Andrew Mulkerin
1740 Adeline Drive
Mechanicsburg, PA  17050

>    **RE:    Bankruptcy Case**
>    **MDPA No. 25-1575**
>    **Our File No. 906025**

Dear Mr. Mulkerin:

The purpose of this letter is to place you on notice that with respect to the Motion for Rule 2004 Examination of Ventwll, Inc. and APX Seetech Systems, Inc. filed at Document No. 244 in your case we believe that such violates the provisions of Rule 11 of the Federal Rule of Civil Procedure as adopted by the Federal Rules of Bankruptcy Procedure in Rule 9011.  The latest Motion which you filed at Document 244 once again seeks information regarding Ventwell and Seetech as set forth in the Motion filed at Document 72.  On August 26, 2025, the Court denied this Motion.  The Court also indicated on the record that it would not entertain any further Motions regarding 2004 Examinations concerning Ventwell and Seetech.  Nonetheless, you have filed the latest Motion.

Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, you have twenty-one (21) days to withdraw your Motion.  Failure to do so may result in the filing of a Motion for Sanctions against you.

Sincerely yours,

CUNNINGHAM, CHERNICOFF
& WARSHAWSKY, PC

s/ *Robert E. Chernicoff*
Robert E. Chernicoff

REC/jmb
c:    Charles Tiches
Laura Paddack
Jamie Rockmore
Olivia Unger Bort, Esquire
Joseph M. Kanfer, Esquire

UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:
ANDREw MULKERIN, Debtor
Case No.: 1:25-bk-01575-HWV
Chapter 13

CERTIFICATE OF SERVICE

I, Andrew Mulkerin, hereby certify that on November 28, 2025, I caused a true and correct copy of **DEBTOR'S REPLY IN FURTHER SUPPORT OF MOTION FOR RULE 2004 EXAMINATION OF VENTWELL, INC. AND APX SEETECH SYSTEMS, INC.** to be filed electronically with the Clerk of the Bankruptcy Court for the Middle District of Pennsylvania, using the CM/ECF system, which electronically notifies all registered participants in this case.

Dated: November 28, 2025

Mechanicsburg, Pennsylvania

Respectfully submitted,

/s/ Andrew Mulkerin
Andrew Mulkerin
Debtor, Pro Se
1740 Adeline Drive
Mechanicsburg, PA 17050

1 of 1

UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:

ANDREW WILLIAM MULKERIN, Debtor

Chapter 13

Case No. 1:25-bk-01575-HWV

ORDER GRANTING DEBTOR'S MOTION FOR RULE 2004 EXAMINATION OF VENTWELL, INC. AND APX SEETECH SYSTEMS, INC.
(Relates to Dkt. 244, Objection Dkt. 260, and Debtor's Reply)

Upon consideration of the Debtor's Motion for Rule 2004 Examination of Ventwell, Inc. and APX Seetech Systems, Inc. ("the Companies") (Dkt. 244), the Objection filed at Dkt. 260, the Debtor's Reply, and the entire record, and for good cause shown under Federal Rule of Bankruptcy Procedure 2004, it is hereby ORDERED that:

1. The Objection at Dkt. 260 is OVERRULED.
2. The Motion for Rule 2004 Examination (Dkt. 244) is GRANTED in full.
3. On or before twenty-one (21) days from entry of this Order, Ventwell, Inc. and APX Seetech Systems, Inc. shall produce to the Debtor all documents responsive to the categories identified in the Motion and incorporated exhibits, including but not limited to: ownership records, financial statements, capital account records, tax returns and K-1s, intercompany loan documentation, records of transfers or distributions, litigation files, and

corporate governance materials, for the period January 1, 2019 through the present, and earlier to the extent necessary to establish formation, initial ownership, or chain of title.

4. Within seven (7) days of entry of this Order, each Company shall identify in writing the custodians of records, the locations and systems where responsive documents are maintained, and any third-party accountants or agents who possess or control responsive materials.

5. The Companies shall produce documents on a rolling basis and shall provide a privilege log identifying any documents withheld on grounds of privilege within fourteen (14) days after completing each production tranche.

6. The Debtor is authorized to conduct examinations under Rule 2004 of one or more knowledgeable corporate representatives designated by each Company. Such examinations shall occur within forty-five (45) to sixty (60) days after entry of this Order at a mutually agreed date, time, and manner, including by remote means if necessary.

7. The Debtor is authorized to issue subpoenas pursuant to Federal Rule of Bankruptcy Procedure 2004(c) and Rule 9016 to accountants, financial consultants, and other third parties who possess or control responsive information relating to the Companies.

8. A two-tier protective order (Confidential and Attorneys' Eyes Only) shall govern the use and disclosure of any sensitive corporate information produced pursuant to this Order. If the parties are unable to agree to a form of protective order within seven (7) days, either party may submit a proposed form to the Court for resolution.

9. Nothing in this Order limits the rights of any party to seek relief from the Court regarding burden, privilege, or scope after good-faith conferral.

10. The Court retains jurisdiction to enforce, modify, or implement the provisions of this Order.

IT IS SO ORDERED.

**Mike McHugh**

| | |
|---|---|
| **From:** | Irene MULKERIN <noreply@jotform.com> |
| **Sent:** | Tuesday, December 2, 2025 1:12 PM |
| **To:** | PAMB_Audio_Requests; PAMBml_TeamLeaders |
| **Subject:** | Re: Audio Hearing Request from Irene MULKERIN |

**CAUTION - EXTERNAL:**

FILED
**December 2, 2025**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

## PAMB Hearing Audio File Request

| | |
|---|---|
| Name | Irene MULKERIN |
| Email | irene.mulkerin@outlook.com |
| Phone Number | (717) 802-0724 |
| Case Number | 1:25-bk-01575 |
| Case Name | Andrew Mulkerin |
| Hearing Date | 12-02-2025 |
| Judge's Name | Judge Van Eck |

You can edit this submission and view all your submissions easily.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:                                  :
                                        :          CHAPTER 13
ANDREW WILLIAM MULKERIN,                :
                                        :          CASE NO. 1:25-bk-01575-HWV
              Debtor.                   :

**ORDER**

Upon consideration of the Motion for Examination under Rule 2004 of Ventwell, Inc.

and APX Seetech Systems, Inc. filed by the Debtor, Doc. 244, and all related pleadings, Docs.

260, 295, and the hearing held on December 2, 2025, for the reasons stated on the record, it is

**ORDERED** that the Motion is **DENIED**.

By the Court,

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: December 2, 2025

# Notice Recipients

District/Off: 0314–1            User: AutoDocketer            Date Created: 12/2/2025
Case: 1:25–bk–01575–HWV        Form ID: pdf010               Total: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db            Andrew William Mulkerin        1740 Adeline Drive        Mechanicsburg, PA 17050

                                                                        TOTAL: 1

United States Bankruptcy Court

Middle District of Pennsylvania

In re:                                                                                    Case No. 25-01575-HWV

Andrew William Mulkerin                                                    Chapter 13

     Debtor

# CERTIFICATE OF NOTICE

| District/off: 0314-1 | User: AutoDocke | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Dec 02, 2025 | Form ID: pdf010 | Total Noticed: 1 |

The following symbols are used throughout this certificate:
**Symbol        Definition**

+            Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 04, 2025:**

NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| db | + Email/PDF: andy.mulkerin.pro-se@outlook.com | Dec 02 2025 18:58:00 | Andrew William Mulkerin, 1740 Adeline Drive, Mechanicsburg, PA 17050-1681 |

TOTAL: 1

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 04, 2025                          Signature:        /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 2, 2025 at the address(es) listed below:

| Name | Email Address |
|---|---|
| Andrew L Spivack | on behalf of Creditor Freedom Mortgage Corporation andrew.spivack@brockandscott.com  wbecf@brockandscott.com |
| Brent Diefenderfer | on behalf of Creditor Keith & Lisa Wolfe bdiefenderfer@cgalaw.com jhall@cgalaw.com;rshearer@cgalaw.com;rminello@cgalaw.com;kbrayboy@cgalaw.com;ephillips@cgalaw.com;r48835@notify.bestcase.com |
| Jack N Zaharopoulos | ecf_pahu_alt@trustee13.com |
| Kenneth William Kleppinger | on behalf of Creditor American Express National Bank kkleppinger@becket-lee.com |

District/off: 0314-1                        User: AutoDocke                        Page 2 of 2

Date Rcvd: Dec 02, 2025                     Form ID: pdf010                        Total Noticed: 1

Kimberly A Bonner
                    on behalf of Creditor Orrstown Bank kab@jsdc.com  jnr@jsdc.com

Mario J. Hanyon
                    on behalf of Creditor Freedom Mortgage Corporation wbecf@brockandscott.com  mario.hanyon@brockandscott.com

Natalie McGhee
                    on behalf of Creditor American Express National Bank nmcghee@becket-lee.com

Robert E Chernicoff
                    on behalf of Creditor Andrew V Papoutsis rec@cclawpc.com
                    jbartley@cclawpc.com;jlaughman@cclawpc.com;jkj@cclawpc.com

Robert E Chernicoff
                    on behalf of Creditor Leroy A. King  Jr. rec@cclawpc.com, jbartley@cclawpc.com;jlaughman@cclawpc.com;jkj@cclawpc.com

United States Trustee
                    ustpregion03.ha.ecf@usdoj.gov


TOTAL: 10

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| ANDREW WILLIAM MULKERIN, | : | |
| | : | CASE NO. 1:25-bk-01575-HWV |
| Debtor. | : | |

## ORDER

Upon consideration of the Motion for Examination under Rule 2004 of Ventwell, Inc.

and APX Seetech Systems, Inc. filed by the Debtor, Doc. 244, and all related pleadings, Docs.

260, 295, and the hearing held on December 2, 2025, for the reasons stated on the record, it is

**ORDERED** that the Motion is **DENIED**.

By the Court,

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: December 2, 2025

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
ANDREW WILLIAM MULKERIN,
          Debtor

KEITH E. WOLFE and
LISA B. WOLFE,
          Claimants/Movants
      v.
ANDREW WILLIAM MULKERIN,
          Debtor/Respondent

Chapter 13

Case No. 25-01575

### MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY AND TO QUASH SUBPOENAS SERVED IN CONNECTION WITH DEBTOR'S OBJECTION TO CLAIM NO. 4

AND NOW, this 16th day of December, 2025, come Creditors Keith E. Wolfe and Lisa B. Wolfe (herein "the Wolfes"), by and through their counsel, CGA Law Firm and Brent C. Diefenderfer, Esquire, and bring this Motion for Protective Order, a statement of which follows:

1.     Movants, Keith E. Wolfe and Lisa B. Wolfe, are Claimants in this case based upon their filing of Claim No. 4.

2.     Respondent, Andrew William Mulkerin, is the Debtor in this case.

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Order of Reference in Bankruptcy Matters of the United States District Court for the Middle District of Pennsylvania. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4.     On July 7, 2025, Movants filed claim No. 4 in this matter.

5.     On August 11, 2025, Respondent filed an Objection to Claim No. 4. The Wolfes filed a response to the POC objection. The objection has been continued once before at the request of the Parties and several hearing for the Debtor's case are scheduled on January 7, 2025, including POC objection hearing for the Wolfe Claim and Chapter 13 Trustee's Motion to Dismiss.

6.    The Claim objection is a contested matter governed by F.R.B.P 9014(c).

7.    On or about November 19, 2025, Respondent sent an email to the undersigned enclosing certain Interrogatories and Requests for Production of Documents ("Discovery Requests").  Attached as **Exhibit A** are true and correct copies of the Discovery Requests.

8.    On or about December 6, 2025, the Debtor sent the undersigned counsel an email purporting to serve subpoenas for the Wolfes to attend a Court hearing scheduled for 12/19/25. Attached as **Exhibit B** is a true and correct copy of the documents.  This document is herein referred to as the "AI Subpoena."

9.    In response, the undersigned counsel indicated to the Debtor via email that he would not accept service of any subpoena that was not validly issued and served.  A subpoena must be issued by the Clerk (Rule 45(a)(3) and may not be served by a party. See Rule 45(b)1. The AI Subpoena was not issued by the Clerk of Court, the Debtor is not an attorney and the Debtor cannot serve the subpoena himself. The AI Subpoenas is also misleading because there is no court hearing scheduled for 12/19/25.

10.    On or about December 12, 2025, the Debtor caused the document purporting to be a subpoena, attached as **Exhibit C,**  to be served via the York County Sheriff upon Lisa Wolfe (herein the "Incomplete District Court Subpoena").  This document makes use if the official District Court Form but remains defective because:

a.    **Exhibit C** is not signed or issued by the District Court Clerk. Without a signature of the Clerk, the document does not carry the authority of the Court. The Debtor is not an attorney or officer of the Court. Only the Clerk of the District Court can issue a subpoena. See Rule 45(a)(3). Despite not being attorney, the Debtor affixed his name to the attorney section of the subpoena thereby materially misrepresenting his authority to issue the subpoena.

b.    The subpoena does not state the title of the action.  See Rule 45(a)(1)(i). The subpoena merely states "bankruptcy case" without reference the contested matter in question or even the name of the Debtor's case.

c.    The Debtor did not sign the subpoena via original signature but merely affixed /s/ as a signature.

d.    The subpoena is overly broad as it requests potentially privileged communications.

### Discovery is Unnecessary When The Claim Will be Paid by the Companion Case

11.    A claim identical to the claim filed in this matter was filed in Debtors' spouses' case docketed to <u>Irene Mulkerin</u>, Case No. 1:24-bk-03264-HWV as Claim #1.

12.    The Court has already approved Claim #1 in Irene Mulkerin's case in the amount of $339,753.98.

13.    The instant Claim arises for the same underlying transaction – a personal guarantee signed by the Debtor and his spouse Irene Mulkerin for indebtedness incurred in connection with the purchase of business assets from the Wolfes.

14.    This case needs no discovery as the Wolfe's claim is anticipated to be paid in full through the Chapter 7 Trustee's distribution in Irene Mulkerin's making the hearing unnecessary.

15.    While the Wolfes' claim remains valid until the underlying indebtedness paid, there is no reason why the hearing should proceed unless the distribution in Irene Mulkerin's case is not paid.  The simple solution is to continue the hearing until trustee makes a distribution.

### Discovery in Contested Matters Is Limited and Must Be Relevant and Proportionate

16.    Under F.R.B.P. 9014(c), the incorporation of Part VII rules applies only to the extent the Court directs otherwise. Even where discovery is permitted, it is subject to the proportionality and relevance requirements of F.R.B.P. 9026(b)(1).

17.    The applicable discovery rules set forth in F.R.B.P. 7026, which incorporate Fed.R.Civ.P. 26(b)(1), provide that the scope of discovery must be proportional to the needs of the case.

18.    Federal Rule of Bankruptcy Procedure 9026(b)(1) limits discovery to matters that are relevant to the parties' claim and further limits discovery if the burden or expense of the proposed discovery outweighs its likely benefit.

19.    Since the Wolfe's claim will be paid through Debtor's spouse's case, there is no need to engage in extensive, expensive and unnecessary discovery.

20.    The information requested in the Discovery Requests is not relevant to the claim objection. Rather, it concerns the derivative claims of the Debtor's LLC entities.  These derivative claims can only be asserted by the Debtor's business entities – not the Debtor individually and are therefore not part of the Debtor's bankruptcy estate.

21.    All of the underlying supporting claim materials, including the complaint for confession of judgment, note and guaranty are already attached in support of the Wolfe's claim.

## The Discovery Requests and "Subpoenas" Are Overly Broad, Unduly Burdensome, and Harassing

{02437913/1}

22.     The Discovery Requests span years of unrelated matters and request information that will ultimately not be relevant to any material fact in the claim objection proceeding.

23.     The Discovery Requests concern irrelevant topics that have been drafted by generative AI without regard to the facts or claims involved or regard to privileged communications.

24.     The Debtor has weaponized generative AI in this case and his previous case.  He and his spouse have not verified information before submitting it to the Court (including citations to hallucinated 3rd circuit authority) and have citing real cases but asserted incorrect or misleading  legal assertions. They have wasted the Court's time and the Wolfe's time and resources. The Discovery Requests and Subpoenas are just another example among many and violate the obligations of F.R.B.P. 9026(g).  The requests are designed solely to harass the Wolfes and needlessly increase litigation costs.

25.     Debtor has been warned by at several stages in the case about the dangers of using generative AI content without proper authentication and verification. The Debtor has once again been mislead by the AI and he has not verified the information that he has submitted to the Court or under authority of the Court.

26.     The Discovery Requests request information on speculative third-party issues, are not tied to any pending adversary proceeding, or any state-court litigation that the Debtor is actively pursuing that would give rise to such inquiries.

27     Numerous requests expressly seek attorney-client communications and attorney work product, including communications with counsel regarding litigation strategy, claim preparation, and judgment enforcement. Such materials are absolutely protected and are not discoverable in a claim objection proceeding.

28. The Discovery Requests seek information concerning third-party transactions, legal strategies, and privileged communications—none of which relate to the allowance or disallowance of the Wolfe claim.

29. These following requests are categorically barred and independently warrant entry of a protective order.

- RFP #9, 10, 16 to Lisa Wolfe. These requests seek communications between the Wolfes and their counsel concerning litigation strategy and preparation of pleadings, which are protected by attorney–client privilege and work product doctrine.

  - #9. "All notes, drafts, emails, or communications relating to the filing or preparation of the confession of judgment against Irene Mulkerin."

  - #10 "All communications relating to the timing or coordination of judgment filings against Debtor or Irene."

  - #16 "All communications with any creditor or attorney regarding strategy, expected outcomes, or coordination."

- RFP #5,12, 13 to Keith Wolfe. These requests expressly target privileged attorney communications and litigation strategy and encompasses communications with counsel and legal analysis of bankruptcy eligibility and strategy.

  - #5. "All communications you had with…CGA Law Firm . . .Stock and Leader."

  - #12. "All communications relating to filing confessions of judgment….and your claim strategy"

- o   #13.  "All communications between you and any bank or creditor about Debtor's eligibility for bankruptcy or treatment in bankruptcy."

- RFP #19 to Keith Wolfe. "All communications with any creditor in Debtor's bankruptcy regarding strategy or case outcomes." This request explicitly seeks litigation strategy discussions protected by privilege and work product

- Interrogatory #19 to Keith Wolfe.  "Describe every communication you had with counsel (CGA Law Firm) where Debtor, MTM, Irene, or related litigation was discussed before filing  your Proof of Claim"  This directly requests attorney–client communications.

- Interrogatory #20 to Keith Wolfe: "Explain the basis for your confession of judgment against Irene in October 2024, including who drafted it, who advised you, and what information you relied on."  This interrogatory eeks legal advice, drafting responsibility, and counsel's protected work product and privilege.

30.    The Incomplete District Court Subpoena requests the Wolfes bring "documents or ESI exchange with any attorney…..concerning calculation, enforcement or modification of the claim."  Even if the Incomplete District Court Subpoena had been properly issued—which it was not—it would be subject to mandatory quash under Fed. R. Civ. P. 45(d)(3)(A) because it requires disclosure of privileged material, impose an undue burden, and is issued for an improper purpose.

### A Protective Order is Needed and Objections to Discovery Insufficient

31.    Under F.R.B.P. 9026(c), as incorporated by F.R.B. P. 7026 and 9014, the Court may issue any order necessary to protect parties from annoyance, embarrassment, oppression, or undue burden or expense.

32.    In accordance with F.R.B.P. 2026(c)(1), the undersigned counsel certifies that he has engaged in a good faith effort to resolve this discovery dispute with the Debtor.  In response, the Debtor told the undersigned counsel that "as for discovery, my views have not changed from what I already conveyed. If you intend to pursue a protective order, you should file it."  See **Exhibit D.**

33.    Debtor's conduct throughout this case has compelled the Wolfes and other parties to incur unnecessary attorney fees, which now includes answering unnecessary and irrelevant discovery requests and responding to defective "subpoenas."

33.    Without a protective order, the Debtor will continue issuing unnecessary and overly broad discovery and purported subpoenas regardless of objections. The Debtor has already issued multiple defective subpoenas that purport to carry court authority and have imposed an immediate and unnecessary burden on the Wolfes to defend a claim that will ultimately be satisfied when the Trustee makes distribution in Irene Mulkerin's case.

34.    This is not a one-off dispute over scope of discovery. The Debtor is now infamous in this District. He has issued subpoenas without clerk's authority, misrepresented himself as an attorney on the subpoena, cited nonexistent hearings, on several occasions cited non-existent and hallucinated AI generative cases or materially mislead everyone on what those cases' findings of fact and conclusions of law.  There are now hundreds of docket entries in this case, and it is manifestly clear that the Debtor is intentionally engaging in conduct to increase litigation costs for the Wolfes.

35.     Moreover, objections will not prevent the Debtor from continuing to issue improper discovery demands or from re-issuing defective subpoenas that purport to carry the authority of the Court. Despite being advised that his subpoenas were invalid, the Debtor escalated his conduct by causing a sheriff to serve an unsigned and improperly issued subpoena, further demonstrating that objections alone will not curb continued misuse of discovery tools.

36.     The Debtor's repeated attempts to invoke judicial authority through invalid subpoenas and unauthorized discovery demonstrate a pattern of conduct warranting prospective relief. A protective order is required to establish clear boundaries, prevent further abuse, and conserve judicial resources.

37.     There is a Motion to Dismiss pending for the same day as the POC objection hearing.  For the reasons set forth in the Trustee's motion to dismiss, the Debtor's case is very likely to be dismissed on 1/7/26 because the case exceeds the debt limits.  There is no reason why the Wolfes should be required to put forth the effort, time and expense of production and response when there is a high degree of certainty that the Debtor's case will be dismissed.

38.     The Debtor is not prejudiced because the Debtor's business entities have recourse to state court remedies and discovery and can attempt to pursue whatever state court remedies they may think they have in state court. Debtor

**WHEREFORE**, Movants, Keith E. Wolfe and Lisa B. Wolfe, request this Court to issue a protective order granting the following relief:

{02437913/1}

A.    Quashing and striking the Discovery Requests and Subpoenas served by the Debtor;

B.    Prohibiting the Debtor from serving further discovery (including subpoenas) without prior leave of Court;

C.    Confirming that the documentation identified in Exhibit B and C are not valid subpoenas requiring attendance or response by the Wolfes;

D.    Awarding reasonable attorney fees and costs incurred by the Wolfes in responding to the improper discovery and subpoenas and filing this Motion;

E.    Granting such further relief as the Court deems just and proper.

Respectfully submitted,

CGA Law Firm

/s/Brent C. Diefenderfer, Esquire
Brent C. Diefenderfer, Esquire
Sup. Ct. I.D. No. 93685
135 North George Street
York, PA 17401
(717) 848-4900
bdiefenderfer@cgalaw.com
*Counsel for the Claimants/Movants*

{02437913/1}

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                          Chapter 13
ANDREW WILLIAM MULKERIN,
                    Debtor

KEITH E. WOLFE and                              Case No. 1:25-bk-01575-HWV
LISA B. WOLFE,
                    Claimants/Movants
v.
ANDREW WILLIAM MULKERIN,
                    Debtor/Respondent

CERTIFICATE OF SERVICE

       I hereby certify that on December 16, 2025, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which sent notification of such filing to the following Filing Users:


Andrew William Mulkerin
1740 Adeline Dr.
Mechanicsburg, PA 17050


/s/Brent C. Diefenderfer, Esquire
Brent C. Diefenderfer, Esquire
CGA Law Firm
135 North George Street
York, PA 17401
(717) 848-4900
*Counsel for the Claimants/Movants*

{02437913/1}

Case 1:25-cv-02519-JKM    Document 2    Filed 02/02/26    Page 195 of 316

## UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter 13

---

## DEBTOR'S FIRST REQUESTS FOR PRODUCTION TO LISA B. WOLFE

---

## REQUESTS FOR PRODUCTION — LISA B. WOLFE

### RFP No. 1

All communications, notes, texts, or emails relating to the MTM asset sale and closing.

---

### RFP No. 2

All communications with **Drew Wildonger** or Kermitool regarding MTM, Debtor, or the Wolfe Note.

---

### RFP No. 3

All communications with **Traditions Bank**, **PeoplesBank**, or **Orrstown** involving Debtor or MTM.

---

### RFP No. 4

All communications with Bennett Williams, Triple Crown, Barley Snyder, or any realtor or broker regarding MTM or 333 E. 7th Avenue.

---

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 1 of 22

195

## RFP No. 5

All documents reflecting your role in or awareness of the **$100,000 agreement** drafted by Wildonger.

## RFP No. 6

All communications you had with MTM customers after the asset sale.

## RFP No. 7

All communications with **Andrew V. Papoutsis** or anyone associated with him regarding MTM or Debtor.

## RFP No. 8

All documents reflecting any Wolfe Transportation operations involving MTM customers.

## RFP No. 9

All notes, drafts, emails, or communications relating to the filing or preparation of the **confession of judgment** against Irene Mulkerin.

## RFP No. 10

All communications relating to the timing or coordination of judgment filings against Debtor or Irene.

## RFP No. 11

All documents you used or reviewed in preparing or approving Claim No. 4-1.

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 2 of 22

196

**RFP No. 12**

All communications between you and any third party in which you discussed Debtor's business struggles or legal problems.

---

**RFP No. 13**

All communications relating to being paid through **Irene's Chapter 7** case.

---

**RFP No. 14**

All documents relating to MTM property, equipment, or customers you interacted with or obtained access to after the sale.

---

**RFP No. 15**

All communications with Orrstown Bank or PeoplesBank regarding Debtor.

---

**RFP No. 16**

All communications with any creditor or attorney regarding strategy, expected outcomes, or coordination.

---

**RFP No. 17**

All communications relating to 333 E. 7th Avenue, including foreclosure or Traditions Bank activity.

---

**RFP No. 18**

All documents reflecting any benefit you received from MTM's business after the sale.

---

Case 1:25-bk-01575-HWV   Doc 425-1   Filed 12/16/25   Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests   Page 3 of 22

197

**END OF RFPs — LISA B. WOLFE**

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 4 of 22

198

## UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter 13

---

## DEBTOR'S FIRST REQUESTS FOR PRODUCTION TO KEITH E. WOLFE

**TO:** Keith E. Wolfe, via counsel.

---

## REQUESTS FOR PRODUCTION — KEITH E. WOLFE

### RFP No. 1

All documents, notes, texts, or emails relating to the negotiation, execution, or enforcement of:

- the APA (asset purchase agreement),
- the Non-Compete Agreement,
- the Promissory Note,
- the Guarantee,
- any drafts thereof.

---

### RFP No. 2

All documents exchanged with **Drew Wildonger** or **Kermitool, Inc.** from 2015–2025.

---

### RFP No. 3

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 5 of 22

199

All communications you had with **Traditions Bank** before and after the MTM sale.

---

### RFP No. 4

All communications you had with **PeoplesBank or Orrstown Bank**, relating to Debtor, MTM, or the Wolfe Note.

---

### RFP No. 5

All communications you had with:

- Bennett Williams
- Triple Crown
- Barley Snyder
- CGA Law
- Stock & Leader
- any realtor
- any consultant

regarding MTM or Debtor.

---

### RFP No. 6

All documents relating to your introduction of **Drew Wildonger** to Debtor, including any prior communications between you and Wildonger.

---

### RFP No. 7

All notes, texts, emails, or documents relating to the **$100,000 draft agreement** created by Wildonger.

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 6 of 22

200

## RFP No. 8

All documents describing interactions with MTM's customers **after** the asset sale.

## RFP No. 9

All communications between you and **Andrew V. Papoutsis**, directly or indirectly.

## RFP No. 10

All communications with any person connected to:

- Ventwell
- Seetech
- the FLP
- Papoutsis
- Chernicoff

before or after the sale.

## RFP No. 11

All documents relating to inspections or access by Wildonger to MTM equipment, financials, or operations.

## RFP No. 12

All communications relating to:

- filing confessions of judgment,
- timing the filings,
- coordinating filings with any third party,

Case 1:25-bk-01575-HWV   Doc 425-1   Filed 12/16/25   Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests   Page 7 of 22

201

- your claim strategy.

### RFP No. 13

All communications between you and any bank or creditor about **Debtor's eligibility** for bankruptcy or treatment in bankruptcy.

### RFP No. 14

All communications where you shared any information about MTM or Debtor with a third party.

### RFP No. 15

All internal documents you relied on when filing **Claim No. 4-1**.

### RFP No. 16

All documents showing MTM customers or revenue that flowed to you (or any Wolfe entity) after the sale.

### RFP No. 17

All communications relating to being paid through **Irene's Chapter 7** case.

### RFP No. 18

All communications between you and Orrstown Bank about Debtor or MTM.

### RFP No. 19

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36    Desc Exhibit A-Discovery Requests    Page 8 of 22

202

All communications with any creditor in Debtor's bankruptcy regarding strategy or case outcomes.

### RFP No. 20

All documents relating to any knowledge you had of the 333 E. 7th Avenue property, including foreclosure or bank pressure.

### END OF RFPs — KEITH E. WOLFE

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 9 of 22

203

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter 13

---

**DEBTOR'S FIRST INTERROGATORIES TO CLAIMANT KEITH E. WOLFE**

*(Pursuant to Fed. R. Bankr. P. 7033 & 9014)*

**TO:** Keith E. Wolfe, through counsel Brent C. Diefenderfer, Esq., CGA Law Firm.

Debtor propounds the following interrogatories on Claimant **Keith E. Wolfe** concerning **Proof of Claim No. 4-1**, the underlying 2022–2024 business transaction, the state-court confession of judgment, and all related communications, dealings, and events.

These interrogatories are **continuing** under Rule 26(e).

---

**INTERROGATORIES TO KEITH E. WOLFE**

**1. Identify every person you communicated with regarding Debtor, Irene Mulkerin, MTM, Wolfe Tool & Machine, the APA, or the Wolfe Note between January 1, 2021 and present.**

Include names, dates, method of communication, and subject matter.

---

**2. Describe all communications you have had with any bank or financial institution concerning Debtor, MTM, or the Wolfe transaction, including but not limited to:**

- Traditions Bank

- PeoplesBank ("Orrstown Bank" after merger)

- Orrstown Bank

- Kinsley

- Bennett Williams

- Triple Crown

For each: state **when**, **who**, and **what was discussed**.

---

## 3. Describe your full relationship with Drew Wildonger and/or Kermitool, Inc. from 2015–2025.

Describe:

- how often you interacted,

- business dealings,

- subcontracted work,

- shared customers,

- payments,

- referrals,

- any assistance provided.

---

## 4. Explain why you presented Drew Wildonger in July 2023 as a "neutral buyer who contacted you," when text messages show a long existing familiarity.

Provide your explanation.

---

## 5. Identify all communications you had with Wildonger between June–August 2023 relating to:

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 11 of 22

205

- MTM's finances

- MTM payroll

- foreclosure

- MTM customer lists

- MTM equipment

- potential sale of MTM

- the proposed $100,000 "agreement" drafted by Wildonger.

---

**6. Describe your involvement in the drafting of the July 18, 2023 "Agreement to Pay $100,000.00" between Debtor and Wildonger.**

State who proposed it, who drafted it, and who you spoke with about it.

---

**7. Identify all meetings or phone calls you participated in with Wildonger and/or his attorney regarding MTM.**

Provide dates, participants, and subjects discussed.

---

**8. Describe all communications you had with *any* party about the non-compete agreement, including whether you considered yourself bound by it and any steps you took to comply (or not comply) with it.**

---

**9. Explain all communications you had with Traditions Bank, PeoplesBank/Orrstown, Bennett Williams, Triple Crown, or Barley Snyder about MTM, the APA, or Debtor in the months before and after the asset sale.**

---

**10. Identify every person who provided you with information about Debtor's businesses, lawsuits, or financial condition before:**

Case 1:25-bk-01575-HWV     Doc 425-1     Filed 12/16/25     Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests     Page 12 of 22

206

- The APA on Sept. 30, 2022
- The confessed judgment in 2024
- The filing of Claim No. 4-1

---

**11. State whether you communicated with Andrew V. Papoutsis at any time before, during, or after the Wolfe Tool & Machine sale.**

If yes: provide dates, content, and purpose.

*(Note: This is the AVP connection you mentioned.)*

---

**12. Describe all knowledge you had of communications between Papoutsis and Wildonger (if any), and whether you discussed the sale or Debtor with Papoutsis.**

---

**13. Identify all documents you possess relating to MTM, including:**

- Emails
- Text messages
- Spreadsheets
- Quotes
- Photos
- Notes
- APA drafts
- Non-compete materials
- Communications with third parties
- Information provided to or received from banks.

---

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36    Desc Exhibit A-Discovery Requests    Page 13 of 22

207

**14. Explain why you introduced Wildonger into MTM matters if you had pre-existing business dealings with him, contrary to your representations to Debtor.**

---

**15. Describe every instance where you communicated with Traditions Bank about MTM, Debtor, or the Wolfe Note — including the substance of all communications.**

---

**16. Describe all interactions you had with PeoplesBank prior to and after the asset sale, including whether you discussed MTM or Debtor with any representative.**

*(This ties PeoplesBank → Traditions → Wolfe → Orrstown.)*

---

**17. Explain all involvement you had (directly or indirectly) regarding actions affecting MTM's facility at 333 E. 7th Avenue, including communications with Kinsley or Traditions Bank.**

---

**18. State whether you coordinated any action at any time with:**

- Traditions Bank
- PeoplesBank/Orrstown
- Papoutsis
- Triple Crown
- Bennett Williams
- Chernicoff
- Any creditor in Debtor's case

about MTM, the APA, or the confessed judgment.

---

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 14 of 22

208

**19. Describe every communication you had with counsel (CGA Law Firm) where Debtor, MTM, Irene, or related litigation was discussed before filing your Proof of Claim.**

**20. Explain the basis for your confession of judgment against Irene in October 2024, including who drafted it, who advised you, and what information you relied on.**

**21. Explain in detail the factual basis of Claim No. 4-1 beyond the face of the documents filed.**

**22. Describe all communications where you discussed Debtor's eligibility for Chapter 13 or the impact your claim could have on eligibility.**

**23. Identify any third party who advised you to file in both cases (Irene's and Andy's), and describe all communications with that party.**

**24. Explain all discussions you had regarding being paid from Irene's Chapter 7 case, including who informed you of that option and when.**

**25. Describe every communication you have had with Orrstown Bank about Debtor, MTM, or any related litigation.**

**26. Identify all facts you intend to rely upon at the Claim 4-1 hearing.**

(This forces them to preview their case.)

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36    Desc Exhibit A-Discovery Requests    Page 15 of 22

209

**27. Describe every conversation in which you or Lisa discussed "delivering information" about Debtor or MTM to a bank, creditor, broker, or attorney.**

---

**28. Provide all communications with any representative of Wolfe Transportation, Inc. relating to MTM customers or competing operations post-sale.**

---

**29. Describe all profits, benefits, or opportunities gained by you or your business from MTM customers or contracts after the sale.**

---

**30. State whether you dispute that your post-sale conduct contributed to MTM's financial distress.**

If yes: provide your full explanation.

---

**END OF INTERROGATORIES TO KEITH WOLFE**

Case 1:25-bk-01575-HWV   Doc 425-1   Filed 12/16/25   Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests   Page 16 of 22

210

UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter 13

---

**DEBTOR'S FIRST INTERROGATORIES TO CLAIMANT LISA B. WOLFE**

*(Pursuant to Fed. R. Bankr. P. 7033 & 9014)*

**TO:** Lisa B. Wolfe, through counsel Brent C. Diefenderfer, Esq.

Debtor propounds these interrogatories to Claimant **Lisa B. Wolfe** concerning **Proof of Claim No. 4-1**, the 2022–2024 MTM transaction, the confessed judgment, and all communications or actions related to the claim.

These interrogatories are **continuing** under Rule 26(e).

---

**INTERROGATORIES TO LISA WOLFE**

**1. Identify every communication you have had regarding Debtor, Irene Mulkerin, MTM, Wolfe Tool & Machine, the APA, or the Wolfe Note from January 2021 to present.**

Identify names, dates, method of communication, and subject matter.

---

**2. Describe your role in the negotiations, execution, and follow-through of the asset sale to MTM on September 30, 2022.**

Include all responsibilities and actions you personally took.

---

Case 1:25-bk-01575-HWV    Doc 425-1    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit A-Discovery Requests    Page 17 of 22

211

**3. Identify all communications you had with any of the following regarding Debtor, MTM, or the Wolfe Note:**

- Traditions Bank

- PeoplesBank / Orrstown Bank

- Bennett Williams

- Triple Crown Corporation

- Barley Snyder

- CGA Law Firm

- Andrew V. Papoutsis

- Drew Wildonger / Kermitool

For each: state date, participants, and substance.

---

**4. Explain your understanding of the Non-Compete Agreement included in the APA and describe all steps you took to comply with it after the closing.**

---

**5. Identify all customers, clients, or business contacts of MTM or Wolfe Tool & Machine that you interacted with after the asset sale.**

State why those contacts occurred.

---

**6. Describe all communications you had with Drew Wildonger before, during, or after July 2023 regarding:**

- MTM finances

- MTM payroll

- MTM equipment

- MTM customer lists

- potential sale or acquisition
- the $100,000 draft agreement

---

**7. Explain how you first learned that Wildonger was interested in MTM and describe any discussions you had with him before introducing him to Debtor.**

---

**8. Describe any role you played in facilitating Drew Wildonger's inspection of MTM's shop, equipment, inventory, payroll, or customers.**

---

**9. Identify every person with whom you discussed the possibility of filing a confession of judgment against Irene Mulkerin, and state the substance of each discussion.**

---

**10. Describe all communications in which you discussed the timing of filing the confession of judgment in 2024 (York County 2024-NO-007143).**

---

**11. Describe your involvement in preparing, reviewing, or approving the documents attached to the Wolfe Proof of Claim No. 4-1.**

---

**12. Identify all sources of information you relied on when signing or approving any documents relating to Claim No. 4-1.**

---

**13. Explain all discussions you had with Keith Wolfe about MTM's financial distress, performance, or operations after the APA.**

---

**14. State whether you had knowledge of communications between Keith Wolfe and Papoutsis regarding Debtor, MTM, or the business sale.**

If yes, describe what you knew and when.

**15. Identify all documents in your possession relating to the MTM transaction or Debtor, including:**

- emails

- texts

- notes

- spreadsheets

- business documents

- communications with Keith, advisors, banks, brokers, or attorneys.

**16. Describe your role in coordinating with counsel at CGA Law Firm regarding:**

- the Wolfe claim,

- the confession of judgment,

- communications with banks,

- and the bankruptcy filings.

**17. State whether you communicated with Traditions Bank at any time regarding:**

- MTM,

- Debtor,

- the APA,

- or potential financial issues before or after the sale.

**18. Describe all interactions you had with PeoplesBank or Orrstown Bank, including any discussions regarding:**

- MTM,

- Debtor,

- the sale,

- or post-closing customer movement.

**19. Describe any communications where you discussed 333 E. 7th Avenue (the MTM facility), including its lease, foreclosure, owner, or Traditions Bank.**

**20. Identify any communications you had with lenders, brokers, or attorneys where you shared or received information about Debtor's business struggles or litigation.**

**21. Describe all profits, benefits, contracts, or business opportunities you or your household obtained from MTM customers after the asset sale.**

**22. Explain whether you or Keith provided MTM-related information to any creditor, bank, or attorney after the sale, and describe that information.**

**23. Identify all factual bases you will rely on at the hearing on Claim No. 4-1.**

**24. State whether you dispute the allegation that your actions contributed to MTM's financial distress.**

If you dispute it, provide your explanation.

Case 1:25-bk-01575-HWV   Doc 425-1   Filed 12/16/25   Entered 12/16/25 16:54:36   Desc Exhibit A-Discovery Requests   Page 21 of 22

215

**25. Identify all communications where you discussed being paid from Irene Mulkerin's Chapter 7 case, including when you first learned of that possibility.**

**26. Explain why your claim was filed in both Andy's and Irene's cases despite your stated belief that the claim would be satisfied in Irene's case through Trustee Carr.**

**27. State whether you communicated with any other creditor in Debtor's case regarding coordinated strategy, filings, or case outcomes.**

**28. Identify any communication you had with Orrstown Bank or its counsel concerning:**

- Debtor

- MTM

- your Proof of Claim

- or the upcoming hearing.

**29. Describe the nature and extent of your involvement in Wolfe Transportation, Inc. and any business operations that could have overlapped with MTM customers after the sale.**

**30. State whether you coordinated any actions with Keith Wolfe regarding MTM, the APA, or any litigation involving Debtor.**

**END OF INTERROGATORIES TO LISA B. WOLFE**

UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:

ANDREW WILLIAM MULKERIN, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter **13**

---

## SUBPOENA TO APPEAR AND TESTIFY AT HEARING

**DIRECTED TO:**

**Lisa B. Wolfe**
3240 Starlight Drive
York, PA 17402

---

**YOU ARE COMMANDED to appear in person to give testimony at a hearing in the above-captioned bankruptcy case.**

**DATE: December 19, 2025**
**TIME: 9:30 AM**
**LOCATION:**
**Sylvia H. Rambo U.S. Courthouse**
1501 N. 6th Street, 3rd Floor
Harrisburg, PA 17102
Before Chief Judge **Henry W. Van Eck**

---

## Purpose of Testimony

You are required to testify regarding **Claim No. 4**, including but not limited to:

### A. Origination & Basis of the Claim

- The circumstances surrounding the alleged debt owed by the Debtor.

- Any underlying agreements, negotiations, or communications that formed the basis of Claim 4.

- The factual events giving rise to the purported liability.

## B. Claim Amount & Supporting Calculations

- How the amount was calculated.

- Any interest, fees, adjustments, offsets, or credits applied.

- Any related transactions, payments, reimbursements, or financial exchanges.

## C. Communications & Documentation

- All communications with the Debtor relating to the alleged debt.

- Any written, electronic, or verbal communications relating to performance, payment expectations, or disputes.

- Any communications with third parties involving the claim or related agreements.

## D. Decision to File Claim 4 in Debtor's Bankruptcy Case

- Who authorized the filing.

- What documents were relied upon.

- Any internal discussions or review before filing the claim.

## E. Relation to Business Dealings

Without asserting wrongdoing, your testimony is required to explain:

- The roles, activities, or financial dealings between the Wolfes and Debtor relating to the work or business referenced in the claim.

- Any expectations of repayment, partnership, contribution, or buyout connected with the claim.

---

## Document Production Requirement

You must **bring the following documents** with you unless the Debtor agrees otherwise IN WRITING:

1. All documents supporting Claim No. 4, whether previously filed or not.

2. All contracts, agreements, drafts, promissory notes, or written understandings underlying the alleged debt.

3. All emails, messages, letters, or other communications with the Debtor regarding the claim.

4. All internal notes, memos, or summaries related to Claim 4.

5. Any documents showing how the claim amount was calculated.

6. Any documents reflecting payments, contributions, or financial transfers relating to the subject matter of the claim.

*(This is all standard for a subpoena in a claim objection hearing — nothing inflammatory.)*

---

**Notice to Witnesses**

Failure to appear may subject you to sanctions under **Fed. R. Civ. P. 45(g)**.

You may consult with your attorney before responding to this subpoena.

If you wish to designate another representative to testify **in your place**, YOU MUST:

1. Obtain the Debtor's written consent, AND

2. Ensure the designee has full, superior knowledge of all topics above.

Absent such agreement, **your personal appearance is required.**

---

**ISSUED BY:**

/s/ **Andrew William Mulkerin**
Debtor Pro Se
1740 Adeline Drive

Mechanicsburg, PA 17050

Email: **andy.mulkerin.pro-se@outlook.com**

Phone: 717-802-1508

Dated: **December 4, 2025**

Case 1:25-bk-01575-HWV    Doc 425-2    Filed 12/16/25    Entered 12/16/25 16:54:36    Desc Exhibit B-Generative AI Subpoena    Page 4 of 8

220

# UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

**In re:**

**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter **13**

---

## SUBPOENA TO APPEAR AND TESTIFY AT HEARING

**DIRECTED TO:**

**Keith E. Wolfe**
3240 Starlight Drive
York, PA 17402

---

**YOU ARE COMMANDED to appear in person to give testimony at a hearing in the above-captioned bankruptcy case.**

**DATE: December 19, 2025**
**TIME: 9:30 AM**
**LOCATION:**
**Sylvia H. Rambo U.S. Courthouse**
1501 N. 6th Street, 3rd Floor
Harrisburg, PA 17102
Before Chief Judge **Henry W. Van Eck**

---

**Purpose of Testimony**

You are required to testify regarding **Claim No. 4**, including but not limited to:

**A. Origination & Basis of the Claim**

- The circumstances surrounding the alleged debt owed by the Debtor.

Case 1:25-bk-01575-HWV    Doc 425-2    Filed 12/16/25    Entered 12/16/25 16:54:36    Desc Exhibit B-Generative AI Subpoena    Page 5 of 8

221

- Any underlying agreements, negotiations, or communications that formed the basis of Claim 4.

- The factual events giving rise to the purported liability.

## B. Claim Amount & Supporting Calculations

- How the amount was calculated.

- Any interest, fees, adjustments, offsets, or credits applied.

- Any related transactions, payments, reimbursements, or financial exchanges.

## C. Communications & Documentation

- All communications with the Debtor relating to the alleged debt.

- Any written, electronic, or verbal communications relating to performance, payment expectations, or disputes.

- Any communications with third parties involving the claim or related agreements.

## D. Decision to File Claim 4 in Debtor's Bankruptcy Case

- Who authorized the filing.

- What documents were relied upon.

- Any internal discussions or review before filing the claim.

## E. Relation to Business Dealings

Without asserting wrongdoing, your testimony is required to explain:

- The roles, activities, or financial dealings between the Wolfes and Debtor relating to the work or business referenced in the claim.

- Any expectations of repayment, partnership, contribution, or buyout connected with the claim.

---

**Document Production Requirement**

You must **bring the following documents** with you unless the Debtor agrees otherwise IN WRITING:

1. All documents supporting Claim No. 4, whether previously filed or not.

2. All contracts, agreements, drafts, promissory notes, or written understandings underlying the alleged debt.

3. All emails, messages, letters, or other communications with the Debtor regarding the claim.

4. All internal notes, memos, or summaries related to Claim 4.

5. Any documents showing how the claim amount was calculated.

6. Any documents reflecting payments, contributions, or financial transfers relating to the subject matter of the claim.

*(This is all standard for a subpoena in a claim objection hearing — nothing inflammatory.)*

---

**Notice to Witnesses**

Failure to appear may subject you to sanctions under **Fed. R. Civ. P. 45(g)**.

You may consult with your attorney before responding to this subpoena.

If you wish to designate another representative to testify **in your place**, YOU MUST:

1. Obtain the Debtor's written consent, AND

2. Ensure the designee has full, superior knowledge of all topics above.

Absent such agreement, **your personal appearance is required.**

---

**ISSUED BY:**

/s/ **Andrew William Mulkerin**
Debtor Pro Se
1740 Adeline Drive

Mechanicsburg, PA 17050

Email: **andy.mulkerin.pro-se@outlook.com**

Phone: 717-802-1508

Dated: **December 4, 2025**

Case 1:25-bk-01575-HWV    Doc 425-2    Filed 12/16/25    Entered 12/16/25 16:54:36
Desc Exhibit B-Generative AI Subpoena    Page 8 of 8

224

AO 88 (Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Pennsylvania

| N/A – Bankruptcy Case | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | Civil Action No. 1:25-bk-01575-HWV |
| N/A – Bankruptcy Case | ) | |
| Defendant | ) | |

**SUBPOENA TO APPEAR AND TESTIFY**
**AT A HEARING OR TRIAL IN A CIVIL ACTION**

REC'D YORK CO SHERIFF
8 DEC '25 PM2:39

To: Lisa B. Wolfe, 3240 Starlight Drive, York, PA 17402

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place set forth below to testify at a hearing or trial in this civil action. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: | Sylvia H. Rambo U.S. Courthouse 1501 N. 6th Street, 4th Floor Harrisburg, PA 17102 | Courtroom No.: 4th Floor - Room 2 |
|---|---|---|
| | | Date and Time: 01/07/2026 9:40 am |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*: All documents supporting Claim 4, including the underlying contract, payment history, communications regarding the debt, any assignments, and all documents or ESI exchanged with any attorney or third party concerning calculation, enforcement, or modification of the claim.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/08/2025

CLERK OF COURT

OR

/s/Andrew William Mulkerin

_____
Signature of Clerk or Deputy Clerk

_____
Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Andrew William Mulkerin

Andrew William Mulkerin , who issues or requests this subpoena, are:

Andrew William Mulkerin, Debtor, Pro Se 2. andy.mulkerin.pro-se@outlook.com, 3. 717-802-1508

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 1:25-bk-01575-HWV   Doc 425-3   Filed 12/16/25   Entered 12/16/25 16:54:36   Desc Exhibit C-Incomplete District Court Subpoena   Page 1 of 2

225

(Rev. 02/14) Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (page 2)

Civil Action No. 1:25-bk-01575-HWV

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   Lisa Wolfe

on *(date)*   12/10/25  .

☑ I served the subpoena by delivering a copy to the named person as follows:   in person
at listed address.

on *(date)*   12/10/25   ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$       120.00      .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00    .

I declare under penalty of perjury that this information is true.

Date:   12/10/25

_____
*Server's signature*

Bradley Myers    12-334
*Printed name and title*

45 N. George St. York, PA 17401.
*Server's address*

Additional information regarding attempted service, etc.:

Case 1:25-bk-01575-HWV    Doc 425-3    Filed 12/16/25    Entered 12/16/25 16:54:36    Desc Exhibit C-Incomplete District Court Subpoena    Page 2 of 2

226

| From: | Brent C. Diefenderfer |
|---|---|
| To: | Andy Mulkerin |
| Cc: | keithlisawolfez12369091@cgalaw.filevineapp.com |
| Subject: | RE: Service of Discovery – Interrogatories & RFPs to Keith and Lisa Wolfe (Claim No. 4-1) |
| Date: | Wednesday, November 19, 2025 10:46:00 AM |

Dear Mr. Mulkerin:

I have reviewed the discovery requests you recently served. As previously explained, these requests bear no relevance to the Wolfes' claim and appear directed at matters you have no standing to pursue. They concern speculative third-party issues, are not tied to any pending adversary proceeding, and you have not initiated any state-court litigation that would give rise to such inquiries. We have addressed these deficiencies on multiple prior occasions and the Court has cautioned you.

The requests are overly broad, unduly burdensome, disproportionate to the needs of the case, and— particularly concerning—seek information and communications protected by attorney–client privilege and the work-product doctrine.

As you know, the Wolfe claim has already been approved in Irene's Chapter 7 case. Once distributions are made in that case, the claim in your proceeding will be withdrawn, eliminating the need for unnecessary discovery. Against that backdrop, the continued service of irrelevant and improper requests appears intended only to impose expense, delay, and harassment upon my clients.

Unless you provide written confirmation by tomorrow at 5:00 p.m. that you are withdrawing these discovery requests in their entirety, I will proceed with filing a motion for protective order and will seek appropriate sanctions, which include but are not limited to a Motion for Sanctions pursuant to Rule 9011.

**Brent C. Diefenderfer**
Attorney

**CGA Law Firm**
135 N. George Street | York, PA 17401
Direct: (717) 718-7127 | Office: (717) 848-4900 ext. 127
Fax: (717) 843-9039 | bdiefenderfer@cgalaw.com

*To self-schedule an appointment / phone /zoom call:*
https://calendly.com/cga-brent (current clients only)

*To make a Payment:* https://tinyurl.com/Law-Pay-Link

Alternative Dispute Resolution | Bankruptcy | Corporate & Business Law | Creditor Representation | Debt Restructuring | Elder Law | Estate Administration | Estate Planning, Wills & POA | Family Law | Health Law | Labor & Employment Law | Litigation | Mediation | Medicaid Planning | Municipal Law | Real Estate Law | School Law | Tax Law | Title Insurance | Zoning and Land Use

This electronic material and the information in it is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or taking of any action in reliance upon the information herein is strictly prohibited. If you have received this communication in error, please notify CGA Law Firm immediately at (717) 848-4900, return the original message to us by email and delete the message from your computer system. Emails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with CGA Law Firm by email is deemed to have accepted these risks. CGA Law Firm is not responsible for any damage arising from the use of e-mail. Thank you.

**From:** Andy Mulkerin <andy.mulkerin.pro-se@outlook.com>

| | |
|---|---|
| **From:** | Andy Mulkerin |
| **To:** | Brent C. Diefenderfer |
| **Subject:** | [External] Re: Notice of Discovery Served & Preservation of Records |
| **Date:** | Monday, November 24, 2025 7:07:22 PM |

Mr. Diefenderfer,

Thank you for your email.

Since you reiterated that the Wolfe claim will be withdrawn from my Chapter 13 case upon distribution in Irene's Chapter 7, I need one clarification:

Will you also be withdrawing your clients' support for the Chapter 13 Trustee's motion to dismiss?

Your clients' support for dismissal remains on the docket and has been cited in the present posture of the case. If the Wolfes truly have no continuing stake in my case, withdrawing that support would align with the position you have now repeated.

As for the discovery, my views have not changed from what I already conveyed. If you intend to pursue a protective order, you should file it. That is the proper mechanism for addressing any asserted objections, and I have no concern with the Court reviewing the scope and relevance of the requests. A clear record will benefit everyone.

Please confirm your clients' position regarding their continued support for the dismissal motion.

Best regards,

Andrew Mulkerin

Pro se Debtor

---

**From:** Andy Mulkerin <andy.mulkerin.pro-se@outlook.com>
**Sent:** Thursday, November 20, 2025 4:47 PM
**To:** Brent C. Diefenderfer <bdiefenderfer@cgalaw.com>
**Cc:** Irene Mulkerin <irene.mulkerin@outlook.com>; keithlisawolfez12369091@cgalaw.filevineapp.com <keithlisawolfez12369091@cgalaw.filevineapp.com>

Alternative Dispute Resolution | Bankruptcy | Corporate & Business Law | Creditor Representation | Debt Restructuring | Elder Law | Estate Administration | Estate Planning, Wills & POA | Family Law | Health Law | Labor & Employment Law | Litigation | Mediation | Medicaid Planning | Municipal Law | Real Estate Law | School Law | Tax Law | Title Insurance | Zoning and Land Use

This electronic material and the information in it is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or taking of any action in reliance upon the information herein is strictly prohibited. If you have received this communication in error, please notify CGA Law Firm immediately at (717) 848-4900, return the original message to us by email and delete the message from your computer system. Emails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with CGA Law Firm by email is deemed to have accepted these risks. CGA Law Firm is not responsible for any damage arising from the use of e-mail. Thank you.

---

**From:** Andy Mulkerin <andy.mulkerin.pro-se@outlook.com>
**Sent:** Wednesday, November 19, 2025 9:00 PM
**To:** Brent C. Diefenderfer <bdiefenderfer@cgalaw.com>
**Cc:** Irene Mulkerin <irene.mulkerin@outlook.com>
**Subject:** [External] Notice of Discovery Served & Preservation of Records
**Importance:** High

Brent,

Thank you for your email.

I do **not** intend to withdraw the discovery. The interrogatories and requests for production served on November 18 are directed to:

1. The basis and calculation of Claim 4-1 as filed in **my** Chapter 13 case;

2. The Wolfes' own conduct, communications, and knowledge in connection with the MTM transaction and resulting judgment; and

3. Issues that go directly to my objection to their claim and to the overall structure and funding of any future plan.

I have standing to object to Claim 4-1 in my case, and once an objection is filed and noticed, the claim and the facts supporting it are properly the subject of discovery under Rule 9014. The fact that the Wolfes may receive a distribution in Irene's case does **not** automatically extinguish their claim here, nor does it retroactively erase the factual issues raised by their filings, their state-court judgment, or their conduct in and around the MTM transaction.

Your email simply asserts "no relevance" and "no standing" in the abstract, but it does not engage with the actual text of the discovery or the specific topics raised in my objection. Many of the requests are straightforward:

- How the judgment amount was derived;

- What communications occurred with lenders and other parties before and after the sale;

- What they knew about my business operations and litigation environment at the time they pursued the confessed judgment; and

- How their positions in Irene's case and in mine fit together.

Those are not "speculative third-party issues." They are squarely tied to the Wolfes' claim and the role it plays in my Chapter 13 case.

As to privilege and work product: those doctrines are raised by **specific objections** to specific requests, not by a blanket threat. If there are particular interrogatories or document requests you believe call for privileged material, you can assert privilege and log it in the ordinary way. A global demand that I "withdraw the discovery in its entirety" is not a meaningful response.

The Court has repeatedly made clear that I am entitled to object to claims and, where appropriate, to build a factual record around those objections. If you believe a protective order is warranted as to particular requests, you are of course free to file your motion. I will respond on the merits and let the Court decide whether my discovery is "irrelevant and improper" or whether it is aimed at exactly the kind of issues that ought to be examined in connection with Claim 4-1.

In the meantime, I expect that responsive, non-privileged materials will be preserved and that any objections will be made in the normal course, not assumed by threat.

Respectfully,
**Andrew W. Mulkerin**
Debtor Pro Se
Case No. 1:25-bk-01575-HWV
andy.mulkerin.pro-se@outlook.com

**Sent:** Tuesday, November 18, 2025 12:06 AM
**To:** Brent C. Diefenderfer <bdiefenderfer@cgalaw.com>
**Subject:** [External] Service of Discovery – Interrogatories & RFPs to Keith and Lisa Wolfe (Claim No. 4-1)
**Importance:** High

Brent,

Good morning. Please find attached **Debtor's First Interrogatories and First Requests for Production** directed separately to **Keith E. Wolfe** and **Lisa B. Wolfe** regarding Claim No. 4-1 in Case No. 1:25-bk-01575-HWV.

These discovery requests are being served pursuant to Fed. R. Bankr. P. 7033, 7034, and 9014.
A Notice of Service will be filed on the docket today.

As the discovery responses are due 30 days after service, I will be filing a short motion requesting that Wednesday's hearing be continued or treated as a status/scheduling conference so that a complete factual record can be developed before any evidentiary ruling.

If your clients are still willing to concur in a brief continuance, please let me know and I will include that in the filing.

Thank you.

Respectfully,
Andrew W. Mulkerin
Debtor Pro Se
Case No. 1:25-bk-01575-HWV
andy.mulkerin.pro-se@outlook.com

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>ANDREW WILLIAM MULKERIN,<br>　　　　Debtor | Chapter 13 |
| KEITH E. WOLFE and<br>LISA B. WOLFE,<br>　　　　　Claimants/Movants<br>　　v.<br>ANDREW WILLIAM MULKERIN,<br>　　　　　Debtor/Respondent | Case No. 1:25-bk-01575-HWV |

## ORDER

AND NOW, upon consideration of Movant's Motion for Protective Order Regarding Discovery Served in Connection With Debtor's Objection to Claim No. 4, and all other matters of record, Movant's request for relief is GRANTED.

The Court hereby issues a protective order directing that Movants Keith E. Wolfe and Lisa B. Wolfe are not obligated to respond to the Interrogatories and Request for Production of Documents served by Debtor, Andrew William Mulkerin, and further directs that no further discovery take place regarding Claim No. 4 absent leave from this Court. Furthermore, the documentation purporting to be subpoena propounded by the Debtor are invalid. Reasonable attorneys' fees are hereby awarded and to be determined in an amount at a hearing.

{02437913/1}

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| ANDREW WILLIAM MULKERIN | : | CASE NO.: 1:25-bk-01575-HWV |
| | : | |
| Debtor. | : | |

===============================================================

| | | |
|---|---|---|
| ORRSTOWN BANK | : | |
| | : | |
| Movant. | : | |
| and | : | |
| | : | |
| ANDREW WILLIAM MULKERIN | : | |
| | : | |
| Debtor. | : | |

### ORRSTOWN BANK'S MOTION FOR A PROTECTIVE ORDER REGARDING DEBTOR'S DISCOVERY REQUESTS

Orrstown Bank ("Orrstown"), by and through its attorneys, JSDC Law Offices, and files this Motion for a Protective Order Regarding Debtor's Discovery Requests, as follows:

1.      Debtor commenced the above-captioned bankruptcy filing on June 2, 2025.

2.      Orrstown filed its Proof of Claim on August 11, 2025 (Claim No. 11, hereinafter "Claim"), which Claim includes copies of the Credit Agreement & Disclosure, Mortgage, and Bankruptcy Form 410A with the required breakdown of the amount owed and the loan history from the date of default.

3.      Debtor filed an Objection to Orrstown's Claim on September 12, 2025, and Orrstown filed its Response on October 10, 2025.

4.      A hearing was scheduled on Debtor's Objection to Orrstown's Claim on November 19, 2025, and was continued to January 7, 2025.

5.    On November 18, 2025, Debtor served written discovery directed to Orrstown, a copy of which is attached hereto and made a part hereof as Exhibit "A" ("hereinafter "Debtor's Discovery Requests").

6.    Debtor's Discovery Requests, consisting of 30 Interrogatories and 15 Requests for Production of Documents, request an abundance of irrelevant and privileged information, including but not limited to all communications between Orrstown and its counsel, all communication between Orrstown and other creditors, and all internal or external documents referencing PeoplesBank and its merger with Orrstown.

7.    Debtor's Discovery Requests do not have any relevancy to Orrstown's Claim or Debtor's Objection to Orrstown's Claim.

8.    Counsel for Orrstown attempted to resolve this discovery dispute with Debtor and on December 12, 2025 advised Debtor that the instant motion would be filed unless Debtor withdrew his Discovery Requests, however, counsel for Orrstown did not receive a response from Debtor as of the time of the filing of this Motion.

9.    Orrstown respectfully requests, pursuant to F.R.B.P. 7026(c), made applicable to this proceeding by F.R.B.P. 9014(c), the Court enter a protective order excusing its response to Debtor's Discovery Requests attached hereto as Exhibit "A".

WHEREFORE, Orrstown respectfully that this Honorable Court grant the foregoing Motion and enter a protective Order in the form filed with this Motion.

Respectfully submitted,

**JSDC Law Offices**

Date: December 17, 2025                    BY:    /s/ Kimberly A. Bonner
                                                  Kimberly A. Bonner, Esquire
                                                  PA ID #89705; kab@jsdc.com
                                                  11 E. Chocolate Avenue, Suite 300
                                                  Hershey, PA  17033
                                                  (717) 533-3280
                                                  (717) 298-2059 FAX
                                                  *Attorneys for Orrstown Bank*

236

# EXHIBIT " A "

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter 13

---

**DEBTOR'S FIRST INTERROGATORIES TO ORRSTOWN BANK**

*(Pursuant to Fed. R. Bankr. P. 7033 and 9014)*

**DEFINITIONS**

"Debtor" means Andrew W. Mulkerin.

"Orrstown," "You," or "the Bank" means Orrstown Bank and all subsidiaries, officers, employees, agents, representatives, counsel, and persons acting on its behalf.

"Loan" means the home equity loan or second mortgage forming the basis of Claim No. 14-1.

"Litigation Information" means any information about Debtor's businesses, lawsuits, trust matters, liens, tax matters, or bankruptcy history.

"Communication" means any verbal, written, electronic, or otherwise recorded communication.

"Brad Tanguay" refers to the Orrstown Senior Vice President, Special Assets Division.

These interrogatories are **continuing** under Rule 26(e).

---

## 📘 INTERROGATORIES

**Interrogatory No. 1**

Identify every person at Orrstown Bank who reviewed, analyzed, discussed, or made decisions regarding Debtor's Loan account from January 1, 2023 to present.

**Interrogatory No. 2**

Identify all persons who participated in or were consulted in preparation for the Bank's litigation strategy or bankruptcy-related actions regarding Debtor, including internal staff and outside counsel.

**Interrogatory No. 3**

State whether Orrstown conducted any review of Debtor's business income, corporate operations, or potential business reorganization capacity at any time prior to initiating foreclosure or filing Claim No. 14-1.
If yes, describe the review.
If no, state that no review was conducted.

**Interrogatory No. 4**

Describe in detail all information Orrstown possessed or reviewed regarding Debtor's businesses (including JeffVent, MTM, Ventwell, Seetech, or any business involving Debtor) prior to initiating foreclosure or making decisions regarding the Loan.

**Interrogatory No. 5**

State whether Orrstown received any Litigation Information from any third party regarding Debtor or his businesses, including but not limited to:

- PeoplesBank

- Traditions Bank

- Bennett Williams Realty

- Triple Crown Corporation

- Andrew V. Papoutsis

Case 1:25-bk-01575-HWV    Doc 426-1    Filed 12/17/25    Entered 12/17/25 12:37:30
Desc Exhibit A- Debtor's Discovery Requests    Page 3 of 14

238

- Robert Chernicoff, Esq.

- Any representative of Ventwell or APX Seetech

- Any counsel in state litigation involving Debtor

For each "yes," identify the person, date, and substance.

---

## Interrogatory No. 6

Identify every lawsuit, lien, foreclosure, writ, or legal proceeding involving Debtor or any of his businesses that Orrstown reviewed, downloaded, discussed, or used in its decision-making process.

---

## Interrogatory No. 7

Describe Orrstown's internal policy regarding loans that exceed 120 days past due, including:

- foreclosure initiation,

- litigation posture,

- modification options,

- forbearance criteria,

- and any exceptions to the policy.

---

## Interrogatory No. 8

State whether Orrstown's 120-day delinquency policy is absolute or allows case-by-case exceptions, and identify all exceptions made since 2018.

---

## Interrogatory No. 9

Case 1:25-bk-01575-HWV   Doc 426-1   Filed 12/17/25   Entered 12/17/25 12:37:30
Desc Exhibit A- Debtor's Discovery Requests   Page 4 of 14

239

Identify all internal documents, communications, scripts, or talking points used by Orrstown representatives when discussing delinquent borrowers who have filed bankruptcy.

---

**Interrogatory No. 10**

For the March 13, 2024 call between Debtor and Brad Tanguay, state:

- whether Mr. Tanguay took notes,

- whether any call logs exist,

- whether he briefed any supervisor after the call,

- and whether the call was discussed within the Bank.

---

**Interrogatory No. 11**

Describe with specificity all Litigation Information Mr. Tanguay possessed at the time of the March 13, 2024 call.

---

**Interrogatory No. 12**

State whether Orrstown trained Mr. Tanguay to inform borrowers that foreclosure is "predetermined" or "inevitable" after 120 days past due.

---

**Interrogatory No. 13**

Identify all statements or assertions made by Mr. Tanguay during the March 13, 2024 call that were based on:

a) internal Orrstown records
b) third-party information
c) bankruptcy filings
d) assumptions
e) litigation downloads

Case 1:25-bk-01575-HWV    Doc 426-1    Filed 12/17/25    Entered 12/17/25 12:37:30    Desc Exhibit A- Debtor's Discovery Requests    Page 5 of 14

240

Specify which category each falls into.

## Interrogatory No. 14

Identify all meetings, discussions, reports, or communications in which Mr. Tanguay informed anyone at Orrstown that he spoke to Debtor on March 13, 2024.

## Interrogatory No. 15

Describe any communications Orrstown had with:

- PeoplesBank

- Traditions Bank

- Bennett Williams

- Triple Crown

- Barley Snyder

- CGA Law Firm

- or any representative of the Wolfes

regarding Debtor or his businesses.

## Interrogatory No. 16

Identify all foreclosure-related documents generated internally regarding Debtor's Loan, including drafts, memos, internal summaries, and attorney instructions.

## Interrogatory No. 17

State whether Orrstown discussed Debtor's bankruptcy filings (Case 00270 or 01575) internally or with counsel **before** filing Claim No. 14-1.

**Interrogatory No. 18**

Identify all persons who accessed or reviewed Debtor's bankruptcy filings on PACER or any other electronic platform.

**Interrogatory No. 19**

State whether Orrstown tracked the litigation involving:

- the trust dispute involving Irene Mulkerin

- the FLP

- Papoutsis-related litigation

- or the 333 East 7th Avenue property

If so, describe the information reviewed and its source.

**Interrogatory No. 20**

Describe the factual basis for Orrstown's assertion that Debtor was incapable of making plan payments or complying with bankruptcy obligations.

**Interrogatory No. 21**

Identify all facts Orrstown had — or believed it had — regarding Debtor's business income or earning potential in 2023–2024.

**Interrogatory No. 22**

State whether Orrstown considered or discussed any potential loan modification, restructure, re-amortization, or workout alternatives for Debtor's Loan before seeking foreclosure.

**Interrogatory No. 23**

Case 1:25-bk-01575-HWV    Doc 426-1    Filed 12/17/25    Entered 12/17/25 12:37:30    Desc Exhibit A- Debtor's Discovery Requests    Page 7 of 14

242

Describe any communication Orrstown had with Trustee Zaharopoulos, Trustee Carr, or the Office of the United States Trustee regarding Debtor.

---

## Interrogatory No. 24

State whether Orrstown has any internal documents referencing Debtor's:

- "multiple lawsuits,"
- "business closures,"
- "trust issues,"
- "family financial matters,"
- or "delaying the inevitable."

If yes, describe them.

---

## Interrogatory No. 25

Identify every third-party record (court docket, lien search, real estate report, business record, public database) Orrstown used to build its narrative regarding Debtor's financial condition.

---

## Interrogatory No. 26

State whether Orrstown disputes that Mr. Tanguay told Debtor:

"We will fight tooth and nail to get your bankruptcy dismissed."

If so, state your version of the call.

---

## Interrogatory No. 27

Identify all persons who approved or reviewed the content of Orrstown's statements to the Court in Claim No. 14-1.

Case 1:25-bk-01575-HWV   Doc 426-1   Filed 12/17/25   Entered 12/17/25 12:37:30   Desc Exhibit A- Debtor's Discovery Requests   Page 8 of 14

243

**Interrogatory No. 28**

State whether Orrstown received or relied upon any information from **Andrew V. Papoutsis** or any person affiliated with him regarding Debtor or MTM.

**Interrogatory No. 29**

State whether Orrstown has had any communication with any creditor in Debtor's case (including the Wolfes) regarding strategy, payment likelihood, or Debtor's bankruptcy posture.

**Interrogatory No. 30**

Identify all facts supporting Orrstown's position that Debtor's situation was "inevitable," "predetermined," or "unchangeable" as of March 13, 2024.

Case 1:25-bk-01575-HWV    Doc 426-1    Filed 12/17/25    Entered 12/17/25 12:37:30    Desc Exhibit A- Debtor's Discovery Requests    Page 9 of 14

244

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter 13

---

**DEBTOR'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO ORRSTOWN BANK**

*(Fed. R. Bankr. P. 7034 & 9014)*

**TO:** Orrstown Bank, by counsel Kimberly A. Bonner, Esq.

Below are Debtor's Requests for Production of Documents. Orrstown must produce all responsive documents in its possession, custody, or control.

---

**DEFINITIONS**

All definitions used in the interrogatories apply here. "Documents" include: emails, texts, memos, reports, recordings, call logs, notes, drafts, correspondence, charts, spreadsheets, screenshots, PACER downloads, internal summaries, and any electronically stored information (ESI).

---

**INSTRUCTIONS**

1. Produce documents **as they are kept in the usual course of business** or organized to correspond with each request.

2. If any document is withheld on privilege:

   - provide a **privilege log** identifying date, author, recipients, subject matter, and basis for privilege.

3. These RFPs are **continuing**; you must supplement under Rule 26(e).

4. Produce all responsive documents for the period **January 1, 2021 to present**, unless otherwise specified.

---

## REQUESTS FOR PRODUCTION — ORRSTOWN BANK

### RFP No. 1

All documents, notes, emails, call logs, or summaries relating to the **March 13, 2024 phone call** between Debtor and Brad Tanguay.

---

### RFP No. 2

All internal communications referring or relating to Debtor, his businesses, or any litigation involving him or Irene Mulkerin.

---

### RFP No. 3

All documents reviewed, downloaded, or referenced by Orrstown relating to:

- MTM
- Ventwell
- APX Seetech Systems
- Mulkerin Holdings
- the FLP
- Papoutsis
- lawsuits involving Debtor or Irene
- 333 East 7th Avenue

---

### RFP No. 4

Case 1:25-bk-01575-HWV    Doc 426-1    Filed 12/17/25    Entered 12/17/25 12:37:30    Desc Exhibit A- Debtor's Discovery Requests    Page 11 of 14

246

All documents relating to any **lien search**, **property report**, **litigation search**, **PACER download**, or **third-party data** Orrstown obtained concerning Debtor or his businesses.

---

## RFP No. 5

All internal policies, manuals, or guidelines regarding:

- 120-day delinquency
- foreclosure initiation
- handling bankrupt borrowers
- workout or modification criteria
- "no-exception" accounts
- internal escalation procedures

---

## RFP No. 6

All communications between Orrstown and **any other creditor** of Debtor, including but not limited to:

- PeoplesBank
- Traditions Bank
- Bennett Williams
- Triple Crown
- CGA Law Firm
- Stock & Leader
- Andrew V. Papoutsis
- Robert Chernicoff

---

Case 1:25-bk-01575-HWV   Doc 426-1   Filed 12/17/25   Entered 12/17/25 12:37:30
Desc Exhibit A- Debtor's Discovery Requests   Page 12 of 14

247

**RFP No. 7**

All communications between Orrstown Bank and **counsel for Orrstown** regarding:

- Claim No. 14-1

- Debtor's bankruptcies

- foreclosure strategy

- expected testimony for hearings

- reviewing the March 13 call

---

**RFP No. 8**

All internal documents describing why Orrstown concluded Debtor "could not" make payments or perform in bankruptcy.

---

**RFP No. 9**

All drafts, versions, or attachments of **Claim No. 14-1**, including any internal review notes or attorney edits.

---

**RFP No. 10**

All documents identifying or summarizing any **business-related** information Orrstown reviewed about Debtor or the basis of that information.

---

**RFP No. 11**

All documents referencing Debtor's:

- "multiple lawsuits,"

- "business closures,"

Case 1:25-bk-01575-HWV     Doc 426-1     Filed 12/17/25     Entered 12/17/25 12:37:30
Desc Exhibit A- Debtor's Discovery Requests     Page 13 of 14

248

- "trust issues,"

- "family on food stamps,"

- "inevitability" of foreclosure,

- or "delaying the inevitable."

## RFP No. 12

All communications between Orrstown and **the U.S. Trustee**, **Chapter 13 Trustee**, or **any bankruptcy court personnel** about Debtor.

## RFP No. 13

All documents relating to Orrstown's decision to oppose or support remote testimony in any hearing involving Debtor.

## RFP No. 14

All communications, emails, or internal summaries referencing **the Wolfes**, their state-court judgments, or their claims against Debtor or Irene.

## RFP No. 15

All internal or external documents referencing **PeoplesBank**, its merger into Orrstown, or any information PeoplesBank possessed about Debtor before the merger.

## END OF RFPs — ORRSTOWN

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| ANDREW WILLIAM MULKERIN | : | CASE NO.: 1:25-bk-01575-HWV |
| | : | |
| Debtor. | : | |

=====================================================================

| | |
|---|---|
| ORRSTOWN BANK | : |
| | : |
| Movant. | : |
| and | : |
| | : |
| ANDREW WILLIAM MULKERIN | : |
| | : |
| Debtor. | : |

ORDER

Upon consideration of the Motion of Orrstown Bank for a Protective Order Regarding

Debtor's Discovery Requests, and Debtor's response, if any, it is hereby ORDERED that the

Motion is GRANTED. It is further ORDERED that Orrstown's responses to Debtor's

Interrogatories and Requests for Production of Documents propounded on November 18, 2025

are excused.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                          :        CHAPTER 13
    ANDREW WILLIAM MULKERIN          :        CASE NO.: 1:25-bk-01575-HWV
                  Debtor.      :
========================================================

    ORRSTOWN BANK                        :
                 Movant         :
        vs.                                       :
    ANDREW WILLIAM MULKERIN          :
               Respondent.   :

CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true and correct copy of the foregoing Motion for a Protective Order Regarding Debtor's Discovery Requests was served on the following this 17th day of December, 2025 via electronic notification and/or via First Class U. S. Mail, Postage Pre-paid:

Andrew William Mulkerin          Jack N. Zaharopoulos
1740 Adeline Drive               8125 Adams Drive, Suite A
Mechanicsburg, PA 17050          Hummelstown, PA 17036
*Debtor (Pro Se)*                *Chapter 13 Trustee*


        JSDC LAW OFFICES

        BY:    s/ Kimberly A. Bonner
        Scott A. Dietterick, Esquire
        Kimberly A Bonner, Esquire
        Attorneys for Movant
        11 E. Chocolate Avenue, Suite 300
        Hershey, PA  17033
        (717) 533-3280
        (717) 533-2795 FAX
        sad@jsdc.com; kab@jsdc.com
        PA I.D. #55650; PA I.D. #89705

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | CHAPTER 13 |
| ANDREW WILLIAM MULKERIN | ) | |
| | ) | CASE NO.  1-25-bk-01575-HWV |
| | ) | |
| Debtor. | ) | |
| | ) | |
| AMERICAN EXPRESS NATIONAL BANK | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW WILLIAM MULKERIN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

### AMERICAN EXPRESS NATIONAL BANK'S MOTION FOR PROTECTIVE ORDER REGARDING DEBTOR'S DISCOVERY REQUESTS

American Express National Bank ("American Express"), by and through its undersigned counsel, files this Motion for Protective Order Regarding Debtor's Discovery Requests as follows:

1.      On June 2, 2025, Debtor filed a voluntary petition under Chapter 13, Title 11 of the United States Code.

2.      On July 18, 2025, American Express filed its Claim 7-1 including Debtor's final pre-petition account statement and a claim balance itemization.

3.      On September 12, 2025, Debtor objected to Claim 7-1 and American Express filed its Response.

4.      On November 18, 2025, Debtor served written discovery directed to American Express, a copy of which is attached hereto and made a part hereof as Exhibit "A" ("hereinafter "Debtor's Discovery Requests").

5.      At the November 19, 2025 hearing, the matter was continued.

6.      On December 1, 2025, American Express filed an amended claim, Claim 7-2. Claim 7-2 included Debtor's final pre-petition account statement, a claim balance itemization, an affidavit from American Express including the Cardmember Agreement and account statements supporting the claim balance.

7.      Upon the filing of Claim 7-2, the Court entered an Order mooting the Objection to Claim 7.

8.      Debtor filed an Objection to Claim 7-2 on December 2, 2025 with a response deadline of January 1, 2025.  The Objection was deemed deficient by the Court on December 3, 2025. The deficiency was not corrected by the December 10, 2025 deadline imposed.

9.      On December 4, 2025, Debtor served a second set of written discovery directed to American Express, a copy of which is attached hereto and made a part hereof as Exhibit "B" (hereinafter "Debtor's Discovery Requests").

## ARGUMENT

10.      The Federal Rules of Civil Procedure allow discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, courts are not unlimited in their discretion to allow discovery.  Courts are obligated to limit discovery 'proportional[ly] to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." See Fed.R. Civ. P. 26(b)(1).

11.    Debtor's Discovery Requests, together, consist of 30 Interrogatories and 25 Requests for Production of Documents. A number of these requests seek information pertaining to whether American Express identifies the account as a business account rather than a personal account.  American Express is not contesting its records identify and treat the account as business; however, Debtor remains personally liable on the account per the applicable terms and conditions governing the account.

12.    Debtor's admissions of liability in his own pleadings (paragraph 2 of Debtor's Objection to Claim 5 and paragraph 2 of Debtor's Objection to Claim 6) belies the importance of discovery with regard to this issue.

13.    Moreover, to the extent the Debtor seeks attorney-client communications and attorney work product, including communications between American Express and its counsel and communication between American Express and other creditors/third parties, such information is privileged.

14.    Due to the Debtor's failure to correct deficiencies in the Objection, Debtor's Discovery Requests are not based on any pending case or controversy and are improper/premature.

15.    Counsel for American Express has attempted to resolve this discovery dispute with Debtor and on December 18, 2025 advised Debtor that the instant motion would be filed.

16.    American Express respectfully requests, pursuant to F.R.B.P. 7026(c), made applicable to this proceeding by F.R.B.P. 9014(c), the Court enter a protective order excusing its response to Debtor's Discovery Requests attached hereto as Exhibits "A" and "B" at this time.

17.    To the extent the Court finds the burden of discovery on admitted issues outweighs the benefits of information regarding the same, and the Debtor corrects the deficiency cited, American Express seeks additional time to respond to Debtor's requests given the limited availability of staff at both American Express and Counsel for American Express due to the federal holidays. Such request has also been made to the Debtor which was denied.

**WHEREFORE,** American Express respectfully that this Honorable Court grant the foregoing Motion and enter a protective Order in the form filed with this Motion.

Respectfully Submitted,
BECKET & LEE LLP

BY:    */s/ Natalie M. McGhee*
Natalie M. McGhee, PA Bar #85816
P.O. Box 3001
Malvern, PA 19355
Telephone: (610) 644-7800
Facsimile: (610) 993-8493
Email: nmcghee@becket-lee.com
*Counsel for American Express National Bank*

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter 13

---

**DEBTOR'S FIRST INTERROGATORIES TO AMERICAN EXPRESS NATIONAL BANK**

*(Pursuant to Rule 7033 & Rule 9014(c))*

Debtor propounds the following interrogatories on **American Express National Bank** ("AmEx") regarding **Claim No. 7-1** and the credit account ending **6005**, titled:

**APX SEETECH SYSTEMS, INC / ANDREW W MULKERIN**
*(See Claim 7-1, page 4 — billing header)*

Claim 7 - AMEX --- Seetech Syst…

---

**INTERROGATORIES**

**1. Identify all persons with knowledge**

Identify every AMEX employee, servicer, agent, or third-party who possesses knowledge regarding:

- account opening,

- underwriting,

- credit approval,

- guaranty evaluation,

- APX Seetech Systems corporate credit review,

- any communications with Debtor,

- any escalation to corporate management (including 2021–2022 communications).

Provide full names, titles, dates, and a summary of knowledge.

---

## 2. State whether Debtor ever executed a personal guaranty

For the account ending in 6005, state:

- whether AMEX claims a **personal guaranty**,

- the date of execution,

- the signatory,

- and identify all documents evidencing Debtor's personal liability.

If no guaranty exists, say so explicitly.

---

## 3. Explain why the account was billed to APX Seetech Systems, Inc.

The March 29, 2024 statement lists:

**"APX SEETECH SYSTEMS INC / ANDREW W MULKERIN"** (page 4)
**Business Gold Rewards**
**Preset Spending Limit: $0.00**
**Pay Over Time Limit: $12,000**

Claim 7 - AMEX --- Seetech Syst…

Explain:

- Why AMEX treated the account as a corporate charge line;

- Whether Seetech was the primary obligor;

- Whether the account was under corporate underwriting;

- Whether Seetech owed the balance before AMEX pursued Debtor personally.

## 4. Explain AMEX's internal escalation in 2021–2022

Debtor previously communicated with:

- **Courtney Kelso (EVP & GM, Global Commercial Card)**

- **Nicole Gamboa (AMEX Corporate Division)**

Describe:

- The internal findings,

- The results of AMEX's internal review,

- Whether AMEX documented concerns regarding corporate ownership, authority, or guaranty.

## 5. Identify all collection attempts toward APX Seetech Systems, Inc.

State:

- whether AMEX attempted to collect from APX Seetech Systems, Inc.,

- the dates of all collection activity,

- the responsible Seetech officer contacted (including Andrew V. Papoutsis),

- and results of such attempts.

## 6. Explain why the account was charged off in November 2023

(See Claim 7-1 page 7 itemization.)

Claim 7 - AMEX --- Seetech Syst…

Provide:

- reason for charge-off,

- AMEX's understanding of the obligor at charge-off,

- whether charge-off was coded under "commercial" or "consumer".

## 7. Identify all internal AMEX system notes related to the account

Identify all internal note categories such as:

- Global Case Management
- Commercial Portfolio Management
- High-Risk Account Review
- Fraud/Risk Underwriting
- Guaranty review
- Disputed authority
- Corporate entity mismatch

## 8. Explain why the account shows a zero "preset spending limit"

The March 29, 2024 statement shows:

"Preset Spending Limit: $0.00"

Claim 7 - AMEX --- Seetech Syst…

Explain:

- whether this is consistent with corporate accounts facing internal restrictions,
- whether the account had been frozen for investigation,
- whether Seetech's corporate status triggered restrictions.

## 9. Explain the "Pay Over Time" exposure

Statement shows:

- **Pay Over Time Balance: $12,729.87**
- **Pay In Full Balance: $7,967.38**

- **Minimum Due: $10,948.19**

Explain:

- who AMEX believed owed the Pay Over Time portion,

- whether these charges were corporate,

- whether Debtor personally authorized these amounts.

---

## 10. Explain why no Cardmember Agreement was attached to Claim 7-1

Rule 3001(c)(1) required:

- the contract,

- the guaranty,

- and the writing forming the basis of the claim.

Explain:

- why it was omitted,

- whether AMEX possesses one,

- and whether AMEX contends Debtor ever signed one.

---

## 11. Identify all communications with Becket & Lee regarding claim authority

State:

- what information AMEX provided to Becket & Lee before the claim was filed,

- whether AMEX verified personal liability before authorizing counsel to file.

---

## 12. State all reasons AMEX chose to file the claim against Debtor personally rather than APX Seetech Systems

Explain the decision-making process, including:

- internal routing,

- escalation notes,

- guaranty status,

- and any risk determination.

---

## 13. Identify every AMEX policy applicable to corporate cards where no guaranty was signed

Provide references to:

- Commercial Card Terms,

- Corporate Liability vs. Joint Liability,

- Small Business Underwriting Policies,

- Personal Guaranty requirements.

---

## 14. Describe all attempts to contact Andrew V. Papoutsis regarding this account

State:

- dates,

- methods,

- responses,

- and results.

---

## 15. Explain any involvement by AMEX's Fraud / Risk / Compliance departments

State:

- whether account was flagged,

- underlying reasons,

- review results,

- whether Seetech or Papoutsis were ever evaluated for fraud risk.

**UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA**

In re:
**ANDREW WILLIAM MULKERIN**, Debtor

Case No. **1:25-bk-01575-HWV**

Chapter 13

## DEBTOR'S FIRST REQUESTS FOR PRODUCTION TO AMERICAN EXPRESS

AmEx shall produce the following within 30 days:

1. **All Cardmember Agreements** and amendments (2018–2024).

2. **The Application** used to open the account ending 6005.

3. **Any Personal Guaranty** signed by Debtor (if one exists).

4. **Complete Transaction Ledger** from 2018–2024.

5. **All internal notes** for the account (Global Case Management, High Risk, etc.).

6. **All correspondence** between AMEX and APX Seetech Systems, Inc.

7. **All internal escalation logs** relating to Debtor's 2021–2022 complaints.

8. **All internal risk, fraud, or compliance reviews** concerning Seetech or Papoutsis.

9. **All records of collection efforts** directed to Seetech.

10. **Call logs / emails / chats** between Debtor and AMEX management (Kelso, Gamboa).

11. **All documents provided to Becket & Lee** before Claim 7-1 was filed.

12. **All documents supporting the $20,697.25 figure**, including:

- principal,

- finance charges,

- fees,

- Pay Over Time accruals.

13. **All AMEX policies** concerning corporate liability vs. personal guaranty.

14. **All account freeze or restriction notices**, including the $0.00 spending limit.

15. **Any documents identifying APX Seetech as the primary obligor.**

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Chapter 13

Case No. 1:25-bk-01575-HWV

---

## DEBTOR'S SECOND INTERROGATORIES TO AMERICAN EXPRESS NATIONAL BANK REGARDING AMENDED CLAIM NO. 7-2

---

Pursuant to Fed. R. Bankr. P. 7033 and 9014 and Fed. R. Civ. P. 33, Debtor, **Andrew William Mulkerin**, propounds the following **Second Interrogatories** to **American Express National Bank** ("AMEX") with respect to **Amended Proof of Claim No. 7-2**. These interrogatories are in addition to, and not a replacement for, Debtor's First Interrogatories previously served regarding Claim No. 7-1.

AMEX shall answer these interrogatories in writing and under oath within **thirty (30) days** of service.

---

## I. DEFINITIONS & INSTRUCTIONS

1. **"Debtor"** means Andrew William Mulkerin.

2. **"Claim 7-2"** means American Express National Bank's **Amended Proof of Claim No. 7-2**, filed December 1, 2025, in Case No. 1:25-bk-01575-HWV.

3. **"Account"** means the credit-card account forming the basis of Claim 7-2, including any predecessor accounts, internal account numbers, sub-accounts, and all related statements, underwriting files, servicing files, and internal notes.

4. **"Business Card" / "Business Account"** means any account AMEX offers, markets, underwrites, codes, or treats internally as a commercial or business credit product.

5. **"Consumer Card" / "Consumer Account"** means any account AMEX offers, markets, underwrites, codes, or treats internally as a personal, consumer, or non-business credit product.

6. **"KYC" / "CIP"** means AMEX's "Know Your Customer" and "Customer Identification Program" processes, including but not limited to identity verification, business-entity verification, beneficial-owner identification, and risk classification.

7. **"Internal Records"** means all non-public data maintained in AMEX's systems regarding the Account, including but not limited to: customer profiles, business profiles, risk codes, product codes, marketing codes, account-type flags, underwriting notes, and collection notes.

8. **"Identify"** when used with respect to a **person** means to state the person's name, title, employer, and last known business address. When used with respect to a **document** means to state the date, type of document, author, recipient(s), and a brief description of its subject matter.

9. Unless otherwise specified, the relevant time period is from **January 1, 2018 to the present.**

10. These interrogatories are continuing. AMEX must supplement or correct its answers if it learns that any answer is incomplete or incorrect in any material respect.

---

## II. INTERROGATORIES

**Interrogatory No. 1 – Business vs. Consumer Classification**

Describe in detail **how AMEX currently classifies the Account underlying Claim 7-2** within its internal systems (e.g., business vs. consumer), including:

a. All **internal product codes**, **account-type codes**, or flags used for the Account;
b. Whether the Account is presently designated as a **business card** or **consumer**

**card**; and

c. All facts and criteria AMEX relies on to support that classification.

---

## Interrogatory No. 2 – KYC / CIP and Business Association

Describe AMEX's **KYC/CIP process** as applied to the Account at opening, including:

a. Whether AMEX collected information identifying any **business entity** (e.g., APX Seetech Systems, Inc., Ventwell, Inc.) in connection with the Account application;
b. What information was collected regarding that entity (e.g., legal name, EIN, address, nature of business); and
c. All persons and/or systems responsible for verifying that information.

---

## Interrogatory No. 3 – Underwriting Basis

Describe in detail the **underwriting basis** for the Account, including:

a. Whether AMEX underwrote the Account as a **business** product or **consumer** product;
b. All underwriting criteria used (e.g., business revenue, time in business, business credit information, personal credit support); and
c. All internal guidelines or policies (by title and general description) that governed underwriting of this type of account at the time of approval.

---

## Interrogatory No. 4 – Business Name on Statements

Explain why the Account statements and/or claim documentation identify **APX SEETECH SYSTEMS, INC.** and/or **VENTWELL INC.** in conjunction with Debtor's name, including:

a. Who decided that the business name(s) would appear on the Account;
b. Whether the presence of the business name(s) in the customer-facing materials reflects the Account's classification as a business product; and

c. Whether AMEX considers those business entities to have been **customers**, **cardmembers**, or **account counterparts** in any internal record.

---

## Interrogatory No. 5 – Change in Classification or Treatment

State whether AMEX has **ever changed** its internal classification or treatment of the Account (e.g., from business to consumer or vice versa), and if so:

a. The **date** of each change;
b. The **reason** for each change;
c. The **person(s)** who authorized or implemented the change; and
d. Whether such change occurred **before or after** Debtor's initial AMEX objection (Doc. 182) and the filing of Claim 7-2.

---

## Interrogatory No. 6 – Decision to File Claim 7-2 in Debtor's Personal Case

Describe in detail how AMEX decided to file Claim 7-1 and then **amend it to Claim 7-2** in Debtor's personal bankruptcy case, including:

a. Who made the decision to file the claim in **Debtor's individual name**;
b. Whether AMEX considered filing any claim (or allocating liability) to **APX Seetech Systems, Inc.** or **Ventwell, Inc.** instead of, or in addition to, Debtor personally; and
c. What internal **risk**, **legal**, or **KYC** departments (if any) reviewed or approved the decision to file or amend the claim.

---

## Interrogatory No. 7 – AMEX Risk / Compliance Review

State whether AMEX's **risk, compliance, or legal departments** have reviewed:

a. Debtor's prior communications with AMEX concerning the Account;
b. The presence of APX Seetech Systems, Inc. and Ventwell, Inc. in the Account records; and
c. The implications of those facts under AMEX's **KYC/CIP** and **business-card policies**.

If yes, identify:

i. The reviewing department(s);
ii. The date(s) of any such review; and
iii. Any material conclusions or directions resulting from that review (e.g., "treat as business," "treat as consumer," "file in individual case," "do not contact business entity").

---

## Interrogatory No. 8 – Communications with APX Seetech Systems, Inc. / Ventwell, Inc.

Identify and describe any communications AMEX has had with **APX Seetech Systems, Inc.** and/or **Ventwell, Inc.** regarding the Account, including:

a. Dates of contact;
b. The nature of the contact (phone, email, letter);
c. The topics discussed (e.g., account disputes, liability, payment, closure); and
d. Any positions those entities took regarding ownership, responsibility, or classification of the Account.

---

## Interrogatory No. 9 – Communications with Third Parties in or Around this Case

Identify any communications AMEX or its counsel has had, from January 1, 2022 to the present, with any of the following concerning the Account or Claim 7:

- **Andrew V. Papoutsis**

- **Ventwell, Inc.** (through any officer, director, or attorney)

- **APX Seetech Systems, Inc.** (through any officer, director, or attorney)

- **Robert E. Chernicoff, Esq.** or **Cunningham & Chernicoff, P.C.**

- **Orrstown Bank / PeoplesBank**

- **Leroy A. King, Jr.**

- **Keith & Lisa Wolfe**

For each contact, state:

a. The **date**;
b. The **participants**;
c. The **subject matter**; and
d. Whether AMEX shared or received any information about Debtor, the Account, or this bankruptcy case.

---

## Interrogatory No. 10 – AMEX Contacts: Courtney Kelso and Nicole Gamboa

State whether AMEX (including its legal and risk teams) has reviewed any communications involving:

- **Courtney Kelso**, and/or

- **Nicole Gamboa**

relating to Debtor, APX Seetech Systems, Inc., Ventwell, Inc., or the Account at issue. If so, identify:

a. The nature of those roles (e.g., titles, departments);
b. The approximate dates of Debtor's contacts with those individuals; and
c. Any internal conclusions or steps taken by AMEX as a result of those communications.

---

## Interrogatory No. 11 – AMEX Policies on Business Cards and Personal Liability

Describe AMEX's policies, in effect at the time the Account was opened and at the time Claim 7-2 was filed, regarding:

a. When a **business card** may be collected as a **personal liability** in bankruptcy;
b. Under what circumstances AMEX files a claim in an **individual debtor's** case for a business-coded account; and
c. What internal review (if any) is required before treating a business-coded account as a purely personal claim.

You may identify policy manuals by title and date, rather than attaching them, but answers must describe the substance of those policies as applied to this Account.

---

**Interrogatory No. 12 – Basis for Continuing to Assert Claim 7-2 as a Personal Claim**

State **all reasons** AMEX continues to assert Claim 7-2 as a personal claim against Debtor, rather than conceding that it is a **business obligation**, including:

a. All facts AMEX contends support personal liability;
b. Whether AMEX has considered **withdrawing** or **reclassifying** Claim 7-2 in light of its own internal records; and
c. Any internal disagreement or discussion within AMEX about the correct classification or enforcement path for this Account.

---

**Interrogatory No. 13 – Differences Between Claim 7-1 and Claim 7-2**

Explain in detail each way in which **Claim 7-2 differs from Claim 7-1**, including:

a. Any changes in the **documentation** attached;
b. Any changes in the **account description, coding, or classification**; and
c. Any changes in AMEX's asserted theory of **liability** or **standing**.

---

**Interrogatory No. 14 – Identification of Witnesses**

Identify all persons AMEX expects or intends to call as witnesses (live or by declaration) in any future evidentiary hearing regarding Claim 7-2, and for each such person, state:

a. Their name, title, and role at AMEX (or its agents); and
b. The subject matter areas about which they are expected to testify (e.g., "classification and underwriting," "KYC/CIP," "account history," "collections and claim decision").

---

## Interrogatory No. 15 – Identification of Documents Supporting AMEX's Position

Identify by date and general description all documents, internal records, and reports AMEX contends **support its position** that Claim 7-2 is properly filed as a personal claim in Debtor's Chapter 13 case, rather than as a business obligation of APX Seetech Systems, Inc. or Ventwell, Inc.

---

**Respectfully submitted,**

/s/ Andrew William Mulkerin

**Andrew William Mulkerin**

Debtor Pro Se

1740 Adeline Drive

Mechanicsburg, PA 17050

Email: **andy.mulkerin.pro-se@outlook.com**

Dated: December 4, 2025

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In re:

**ANDREW WILLIAM MULKERIN**, Debtor

Chapter 13

Case No. 1:25-bk-01575-HWV

---

## DEBTOR'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS

TO AMERICAN EXPRESS NATIONAL BANK REGARDING AMENDED CLAIM NO. 7-2

Debtor, Andrew William Mulkerin ("Debtor"), pursuant to Fed. R. Bankr. P. 7034 and 9014 and Fed. R. Civ. P. 34, requests that American Express National Bank ("AMEX") produce the documents described below within thirty (30) days of service.

These requests are **in addition to, and not a replacement for**, Debtor's First Requests for Production previously served regarding Claim No. 7-1. Because Claim No. 7-2 arises from the same underlying account, these requests are directed to the same Account and set of operative facts.

---

## I. DEFINITIONS

Unless otherwise indicated:

1. **"Debtor"** means Andrew William Mulkerin.

2. **"Claim 7-2"** means American Express National Bank's Amended Proof of Claim No. 7-2, filed December 1, 2025, in Case No. 1:25-bk-01575-HWV.

3. **"Account"** means the credit-card account that forms the basis of Claim 7-2, including any predecessor account numbers, sub-accounts, and all related statements, underwriting files, servicing files, and internal notes.

4. **"Business Card" / "Business Account"** means any account AMEX offers, markets, underwrites, codes, or treats internally as a commercial or business credit product.

5. **"Consumer Card" / "Consumer Account"** means any account AMEX offers, markets, underwrites, codes, or treats internally as a personal, consumer, or non-business credit product.

6. **"Internal Records"** means any non-public data maintained in AMEX's systems regarding the Account, including but not limited to customer profiles, business profiles, product codes, risk codes, account-type flags, notes, and internal comments.

7. **"Document"** has the broad meaning set forth in Fed. R. Civ. P. 34 and includes electronically stored information (ESI).

8. Unless otherwise stated, the relevant time period is **January 1, 2018 to present**.

These requests are **continuing**; AMEX must supplement its responses if it learns that any response was incomplete or incorrect in any material respect.

---

## II. REQUESTS FOR PRODUCTION

**Request No. 1 – Complete Underwriting File**

Produce the complete underwriting file for the Account forming the basis of Claim 7-2, including:

- application materials;

- KYC / CIP records;

- any business-entity information collected at opening (including APX Seetech Systems, Inc. or Ventwell, Inc.);

- approval notes;

- risk-classification sheets; and

- any internal summaries prepared at or near the time of approval.

**Request No. 2 – Internal Classification & Coding Records**

Produce all documents reflecting how AMEX internally classified the Account at any time (business vs. consumer), including:

- internal product codes;

- account-type codes;

- risk flags;

- coding tables; and

- any reports or screenshots showing the Account's classification in AMEX's systems.

**Request No. 3 – System Screenshots / Exports**

Produce screenshots, system exports, or printouts from AMEX's internal systems showing:

- the Account profile;

- associated business entities (including APX Seetech Systems, Inc. and/or Ventwell, Inc.);

- customer profile(s);

- risk / segment codes;

- collection notes; and

- any internal comments concerning how the Account should be treated (business vs. consumer).

**Request No. 4 – Documents Referencing APX Seetech Systems, Inc. or Ventwell, Inc.**

Produce all documents in AMEX's possession that reference **APX Seetech Systems, Inc.** or **Ventwell, Inc.** in connection with the Account, including:

- onboarding or application records;

- dispute files;

- servicing notes;

- correspondence; and

- internal memoranda or emails.

---

## Request No. 5 – Internal Legal / Risk / Compliance Reviews

Produce all documents reflecting any **risk, compliance, or legal review** of:

- Debtor's prior disputes regarding the Account;

- the presence of APX Seetech Systems, Inc. and/or Ventwell, Inc. in connection with the Account; or

- the decision to file Claim 7-1 or Claim 7-2 in Debtor's personal Chapter 13 case.

This includes any internal "issue logs," memos, email threads, or review notes.

---

## Request No. 6 – Communications With APX Seetech / Ventwell / Related Counsel

Produce all documents reflecting communications between AMEX (including its agents or counsel) and any of the following regarding the Account or Claim 7:

- APX Seetech Systems, Inc. (any officer, director, employee, or representative);

- Ventwell, Inc. (any officer, director, employee, or representative);

- Attorney **Robert E. Chernicoff** or his firm;

- **Andrew V. Papoutsis**;

- any other person purporting to act on behalf of those entities.

---

### Request No. 7 – Communications With Other Creditors in This Case

Produce all documents reflecting communications between AMEX (including counsel) and any of the following about Debtor, this Account, or Claim 7:

- Orrstown Bank / PeoplesBank;

- Keith & Lisa Wolfe;

- Leroy A. King, Jr.;

- any other creditor appearing in Debtor's case.

---

### Request No. 8 – Documents Concerning the Decision to Amend to Claim 7-2

Produce all documents concerning AMEX's decision to:

- file Claim 7-1, and

- amend it to Claim 7-2,

including any internal emails, memoranda, risk/legal review notes, or other documents addressing why the claim was amended, what concerns prompted the amendment, and how the filing strategy was determined.

---

### Request No. 9 – Communications Involving Courtney Kelso and/or Nicole Gamboa

Produce all documents, notes, logs, or internal summaries reflecting communications involving:

- **Courtney Kelso**, and/or

- **Nicole Gamboa**,

relating to Debtor, the Account, APX Seetech Systems, Inc., or Ventwell, Inc., including any escalation, internal review, or recommended course of action.

**Request No. 10 – Documents Supporting AMEX's Current Litigation Position**

Produce all documents AMEX intends to rely upon to support its position that Claim 7-2 is properly filed as a **personal** claim against Debtor (rather than as a business obligation of APX Seetech Systems, Inc. or Ventwell, Inc.), including—

- any policy excerpts;

- account agreements;

- internal guidelines; and

- correspondence or internal analyses related to this classification.

**Respectfully submitted,**

/s/ Andrew William Mulkerin

Andrew William Mulkerin

Debtor Pro Se

1740 Adeline Drive

Mechanicsburg, PA 17050

Email: andy.mulkerin.pro-se@outlook.com

Dated: December 4, 2025

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | CHAPTER 13 |
| ANDREW WILLIAM MULKERIN | ) | |
| | ) | CASE NO.  1-25-bk-01575-HWV |
| | ) | |
| Debtor. | ) | |
| | ) | |
| AMERICAN EXPRESS NATIONAL BANK, | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW WILLIAM MULKERIN, | ) | |
| Respondent. | ) | |
| | ) | |

**ORDER GRANTING AMERICAN EXPRESS NATIONAL BANK'S MOTION FOR
PROTECTIVE ORDER REGARDING DEBTOR'S DISCOVERY REQUESTS**

Upon consideration of the Motion of American Express National Bank for a Protective

Order Regarding Debtor's Discovery Requests, and Debtor's response, if any, it is hereby

ORDERED that the Motion is GRANTED. It is further ORDERED that American Express

National Bank's responses to Debtor's Interrogatories and Requests for Production of

Documents propounded on November 18, 2025 and December 4, 2025 are excused.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | CHAPTER 13 |
| ANDREW WILLIAM MULKERIN | ) | |
| | ) | CASE NO.  1-25-bk-01575-HWV |
| | ) | |
| Debtor. | ) | |
| | ) | |
| AMERICAN EXPRESS NATIONAL | ) | |
| BANK, | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANDREW WILLIAM MULKERIN, | ) | |
| Respondent. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE FOR AMERICAN EXPRESS NATIONAL BANK'S MOTION FOR PROTECTIVE ORDER REGARDING DEBTOR'S DISCOVERY REQUESTS

I, the undersigned, do hereby certify that on the 18th day of December, 2025, I served or caused to be served, via the Court's electronic filing service, or U.S. Mail, true and correct copies  true and correct copies of the AMERICAN EXPRESS NATIONAL BANK'S MOTION FOR PROTECTIVE ORDER REGARDING DEBTOR'S DISCOVERY REQUESTS, upon the parties listed on the following page.

Parties Served:

| | |
|---|---|
| Andrew William Mulkerin<br>1740 Adeline Drive<br>Mechanicsburg, PA 17050-1681 | Jack N. Zaharopoulos<br>Chapter 7 Trustee<br>8125 Adams Drive, Suite A<br>Hummelstown, PA 17036-8625 |

BY:    */s/ Natalie M. McGhee*
Natalie M. McGhee, PA Bar #85816
P.O. Box 3001
Malvern, PA 19355
*Counsel for American Express National Bank*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| ANDREW WILLIAM MULKERIN, | : | |
| | : | CASE NO. 1:25-bk-01575-HWV |
| Debtor. | : | |

## ORDER

Upon consideration of the Motion for Protective Order filed by Keith & Lisa Wolfe (the "Wolfes"), Doc. 425, the Court makes the following findings:

A. No hearing or response is required in this matter.

B. The Debtor has filed an Objection to the Wolfes' claim. (*See* Doc. 98.) However, the subpoenas and related discovery requests served by the Debtor are not actually directed to resolve that Objection. Instead, the discovery seeks broad information concerning non-debtor entities and alleged third-party conduct that would not materially assist the Court in determining the allowance or treatment of the Wolfes' claim.

C. Discovery in bankruptcy cases is limited to matters that are relevant and proportional to issues properly before the Court. The scope of the subpoenas and discovery requests, and the burdens imposed, are disproportionate to any legitimate bankruptcy purpose; therefore, good cause exists for protection under Rule 26(c) of the Federal Rules of Civil Procedure, made applicable to this case by Rules 7026, 9014, and 9016 of the Federal Rules of Bankruptcy Procedure.

Accordingly, it is

**ORDERED** that:

1. The Motion for Protective Order is **GRANTED**.

2. The subpoenas at issue, to the extent valid or recognized, are **QUASHED**.

1

3.  The Wolfes are excused from responding to the Debtor's discovery requests described in the Motion for Protective Order.

4.  The Wolfes may file an application for reasonable attorneys' fees and costs incurred in making the instant Motion within 14 days of the entry of this Order.

5.  The Debtor may file a response to any such application within 14 days thereafter.

6.  The Court will determine whether a hearing is necessary to resolve the fee application or whether the matter may be decided on the papers.

By the Court,

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: December 19, 2025

2

# Notice Recipients

District/Off: 0314–1                        User: AutoDocketer                        Date Created: 12/19/2025
Case: 1:25–bk–01575–HWV                     Form ID: pdf010                          Total: 2

**Recipients of Notice of Electronic Filing:**
aty          Brent Diefenderfer          bdiefenderfer@cgalaw.com

                                                                                    TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db          Andrew William Mulkerin          1740 Adeline Drive          Mechanicsburg, PA 17050

                                                                                    TOTAL: 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| ANDREW WILLIAM MULKERIN, | : | |
| | : | CASE NO. 1:25-bk-01575-HWV |
| Debtor. | : | |

## ORDER

Upon consideration of the Motion for Protective Order filed by Orrstown Bank

("Orrstown"), Doc. 426, the Court makes the following findings:

A. No hearing or response is required in this matter.

B. The Debtor has filed an Objection to Orrstown's claim. (*See* Doc. 186.) However, the discovery requests served by the Debtor are not actually directed to resolve that Objection. Instead, the discovery seeks broad information concerning non-debtor entities and alleged third-party conduct that would not materially assist the Court in determining the allowance or treatment of Orrstown's claim.

C. Discovery in bankruptcy cases is limited to matters that are relevant and proportional to issues properly before the Court. The scope of the discovery requests, and the burdens imposed, are disproportionate to any legitimate bankruptcy purpose; therefore, good cause exists for protection under Rule 26(c) of the Federal Rules of Civil Procedure, made applicable to this case by Rules 7026, 9014, and 9016 of the Federal Rules of Bankruptcy Procedure.

Accordingly, it is

**ORDERED** that:

1. The Motion for Protective Order is **GRANTED**.

1

2. Orrstown is excused from responding to the Debtor's discovery requests described in the

Motion for Protective Order.

By the Court,

_Henry W. Van Eck_

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: December 19, 2025

2

# Notice Recipients

District/Off: 0314–1                    User: AutoDocketer                    Date Created: 12/19/2025
Case: 1:25–bk–01575–HWV                 Form ID: pdf010                       Total: 2


**Recipients of Notice of Electronic Filing:**
aty          Kimberly A Bonner          kab@jsdc.com

                                                                                        TOTAL: 1


**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db           Andrew William Mulkerin          1740 Adeline Drive          Mechanicsburg, PA 17050

                                                                                        TOTAL: 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

IN RE:                                          :
                                                :        CHAPTER 13
ANDREW WILLIAM MULKERIN,                         :
                                                :        CASE NO. 1:25-bk-01575-HWV
            Debtor.                              :

**ORDER**

Upon consideration of the Motion for Protective Order filed by American Express

National Bank ("American Express"), Doc. 428, the Court makes the following findings:

A.  No hearing or response is required in this matter.

B.  The Debtor has filed an Objection to American Express's claim. (*See* Doc. 396.)

    However, the Court has declined to act on this Objection due to a procedural deficiency

    that has not been cured. (*See* Doc. 405.) As a result, no recognized Objection is presently

    in a posture capable of adjudication. The discovery requests are therefore premature and

    are not directed to any matter currently pending before the Court.

C.  Discovery in bankruptcy cases is limited to matters that are relevant and proportional to

    issues properly before the Court. The scope of the discovery requests, and the burdens

    imposed, are disproportionate to any legitimate bankruptcy purpose; therefore, good

    cause exists for protection under Rule 26(c) of the Federal Rules of Civil Procedure,

    made applicable to this case by Rules 7026, 9014, and 9016 of the Federal Rules of

    Bankruptcy Procedure.

Accordingly, it is

    **ORDERED** that:

1.  The Motion for Protective Order is **GRANTED**.

1

2. American Express is excused from responding to the Debtor's discovery requests described in the Motion for Protective Order.

By the Court,

_____

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: December 19, 2025

2

# Notice Recipients

District/Off: 0314–1                    User: AutoDocketer                    Date Created: 12/19/2025
Case: 1:25–bk–01575–HWV               Form ID: pdf010                       Total: 2

**Recipients of Notice of Electronic Filing:**
aty          Natalie McGhee          nmcghee@becket–lee.com

                                                                                    TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db           Andrew William Mulkerin          1740 Adeline Drive          Mechanicsburg, PA 17050

                                                                                    TOTAL: 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 13 |
| ANDREW WILLIAM MULKERIN, | : | |
| | : | CASE NO. 1:25-bk-01575-HWV |
| Debtor. | : | |

**DISCOVERY MANAGEMENT ORDER**

Upon consideration of the Motions for Protective Orders filed in this case, Docs. 425,

426, 428, and the Court's December 19, 2025 Orders granting these Motions, Docs. 431, 432,

433, the Court makes the following findings:

A.  This Order is necessary to ensure the orderly administration of the case and to enforce the

limits on discovery imposed by the Federal Rules of Bankruptcy Procedure.

B.  Discovery in bankruptcy is not freestanding. It is permitted only to the extent it is

relevant and proportional to issues properly before the Court and in a posture capable of

adjudication. Discovery may not be used to investigate collateral disputes, to probe

creditor motives or litigation strategy, or to obtain internal or privileged communications

that would not materially assist the Court in resolving a pending matter.

C.  The Court has been presented with multiple discovery requests directed to different

creditors that were broad in scope and untethered to the resolution of the matters before

the Court. Such discovery exceeds the limits imposed by the Federal Rules of Bankruptcy

Procedure and will not be permitted.

Accordingly, it is

**ORDERED** that:

1.  Before serving any future discovery requests on any party, the Debtor shall seek leave of

Court, identifying the following:

1

   a.   the specific pending matter to which the discovery is directed;

   b.   the relevance of the requested discovery to that matter; and

   c.   why the discovery is proportional under Federal Rule of Civil Procedure 26(b)(1), as incorporated through Federal Rules of Bankruptcy Procedure 7026 and 9014.

2. Any future discovery requested by the Debtor must be narrowly tailored to a specific issue properly before the Court and in a posture capable of adjudication.

3. Discovery directed to internal deliberations, litigation strategy, attorney-client communications, attorney work product, or matters collateral to claim allowance, plan confirmation, or estate administration is not permitted absent prior authorization of the Court.

4. Failure to comply with this Order may result in the denial of requested discovery or the entry of further protective orders.

By the Court,

Henry W. Van Eck, Chief Bankruptcy Judge
Dated: December 19, 2025

2

# Notice Recipients

District/Off: 0314–1                    User: AutoDocketer                    Date Created: 12/19/2025
Case: 1:25–bk–01575–HWV                 Form ID: pdf010                      Total: 5

**Recipients of Notice of Electronic Filing:**
tr          Jack N Zaharopoulos          info@pamd13trustee.com
aty         Brent Diefenderfer           bdiefenderfer@cgalaw.com
aty         Kimberly A Bonner            kab@jsdc.com
aty         Natalie McGhee               nmcghee@becket–lee.com

                                                                            TOTAL: 4

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db          Andrew William Mulkerin          1740 Adeline Drive          Mechanicsburg, PA 17050

                                                                            TOTAL: 1

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

In re:

**ANDREW WILLIAM MULKERIN,**

Debtor.

Chapter 13
Case No. 1:25-bk-01575-HWV

> FILED
> **December 29, 2025**
> Clerk, U.S. Bankruptcy Court
> Middle District of Pennsylvania
> Harrisburg

---

## APPELLANT'S DESIGNATION OF RECORD

Pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(1)(B), Appellant Andrew William Mulkerin, Debtor-Appellant, hereby designates the following items to be included in the record on appeal from the **Order Denying Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc.** (Dkt. 404), entered December 2, 2025.

This designation is limited to materials that were before the Bankruptcy Court, referenced on the docket, or proffered and identified in connection with the Rule 2004 motions and hearings, and is submitted for purposes of appellate review of whether the Bankruptcy Court abused its discretion or denied due process by ruling without permitting development or consideration of a factual record.

---

## A. Pleadings and Motions

1. **Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc.**
   (Dkt. 244)

2. **Objection to Debtor's Motion for Rule 2004 Examination** filed by Ventwell, Inc.
   (Dkt. 260)

3. **Debtor's Reply in Support of Motion for Rule 2004 Examination**
   (Dkt. 295)

4. **Debtor's Reply in Further Support of Motion for Rule 2004 Examination of Ventwell, Inc. and APX Seetech Systems, Inc.**
(Dkt. 391)

---

## B. Hearing Materials

1. **Transcript of Hearing held December 2, 2025**, regarding Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc.
(corresponding to Proceeding Memo Dkt. 399)
*(to be included when prepared and docketed)*

2. **Proceeding Memo for Hearing held December 2, 2025**
(Dkt. 399)

---

## C. Orders and Related Entries

1. **Order Denying Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc.**
(Dkt. 404)

2. **BNC Certificate of Notice of Order**
(Dkt. 411)

---

## D. Prior Related Rule 2004 Rulings and Hearings Relevant to the Decision Appealed

(Designated solely to the extent the Bankruptcy Court expressly relied upon, referenced, or incorporated its prior Rule 2004 rulings or reasoning into the December 2, 2025 decision.)

1. **Proceeding Memo, Text Order, and Order Denying Motion for Examination under Rule 2004 of Andrew V. Papoutsis**
(Dkts. 146, 147, 148)

2. **Proceeding Memo and Order Denying Motion for Examination under Rule 2004 of Sean Summers, Esq.**
   (Dkts. 226, 236)

3. **Proceeding Memo for Hearing on Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc., held November 4, 2025 (matter continued)**
   (Dkt. 308)

---

**E. Exhibits and Proffers Associated with the Rule 2004 Motions**

All exhibits, declarations, affidavits, and documentary materials filed, referenced, or proffered in connection with the Rule 2004 motions and related replies and supplements, to the extent reflected on the docket or referenced in the hearing record, including but not limited to:

- Exhibits attached to the **Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc.** (Dkt. 244);

- Exhibits attached to the **Debtor's Supplement to Motion for Rule 2004 Examination of Andrew V. Papoutsis** (Dkt. 110);

- Exhibits attached to the **Debtor's Reply in Further Support of Motion for Rule 2004 Examination of Ventwell, Inc. and APX Seetech Systems, Inc.** (Dkt. 391);

- Exhibits, documentary proffers, and materials expressly identified or referenced by the Debtor during the hearings on the Rule 2004 motions, including the December 2, 2025 hearing (Dkt. 399), which the Bankruptcy Court declined to consider or admit prior to ruling.

(Designated solely for purposes of appellate review of whether the Bankruptcy Court abused its discretion or denied due process by resolving the Rule 2004 motions without permitting development or consideration of a factual record.)

---

Respectfully submitted,

/s/ **Andrew William Mulkerin**

Andrew William Mulkerin

Debtor-Appellant, Pro Se

1740 Adeline Drive

Mechanicsburg, PA 17050

(717) 802-1508

andy.mulkerin.pro-se@outlook.com

Dated: **December 29, 2025**

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re:

Andrew William Mulkerin                                    Chapter 13

**Debtor 1**                                              Case number 1:25–bk–01575–HWV

## Notice

Notice: There was a discrepancy noted between the data entered in CM/ECF and what is shown on the pdf image attached to docket entry #452. Notice: The Court cannot transmit to the District Court as the record on appeal all items identified on the Appellants Designation of Record (Dkt No. 452). The Court is unable to determine what documents are intended to be included by the header of and last bulleted category in Section E or whether the Court has possession of these documents. See Local Rule 8009–1. Pursuant to Fed. R. Bankr. P. 8009(a)(5), (g); and L.B.R. 8009–1, on or before January 30, 2026, please: (i) specifically identify each exhibit you wish to designate as part of the record (including the date of the hearing, proponents name, and exhibit identification number), and (ii) provide the Court copies of any exhibits which were originally submitted on paper that you wish to be transmitted as part of the record on appeal. If the requested specific exhibit designations and/or paper documents are not received by January 30, 2026, the Court will transmit the other items in your designation to the District Court and mark the record on appeal as complete. Please review the noted discrepancy for accuracy. If the information you provided is not accurate, please refile or amend your document. (RE: related document(s)452). (Gambini, Christopher)

| **Address of the Bankruptcy Clerk's Office:**<br>Sylvia H. Rambo US Courthouse<br>1501 N. 6th Street<br>Harrisburg, PA 17102<br>(717) 901–2800 | **For the Court:**<br>Seth F. Eisenberg<br>Clerk of the Bankruptcy Court:<br>By: ChristopherGambini, Deputy Clerk |
|---|---|
| Hours Open: Monday – Friday 9:00 AM – 4:00 PM | Date: January 2, 2026 |

Notice Text Entries (Form nttext) (3/20)

# Notice Recipients

District/Off: 0314–1                 User: AutoDocketer              Date Created: 1/2/2026

Case: 1:25–bk–01575–HWV           Form ID: nttext                Total: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db          Andrew William Mulkerin       1740 Adeline Drive       Mechanicsburg, PA 17050

TOTAL: 1

# UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:

**ANDREW WILLIAM MULKERIN**,

Debtor, Pro Se

Case No. **1:25-bk-01575-HWV**

<div style="border:1px solid blue">

FILED
**January 13, 2026**
Clerk, U.S. Bankruptcy Court
Middle District of Pennsylvania
Harrisburg

</div>

---

## AMENDED APPELLANT'S DESIGNATION OF CONTENTS TO BE INCLUDED IN THE RECORD ON APPEAL

### *(Clarifying Section E Pursuant to Dkt. 460)*

Appellant Andrew William Mulkerin, appearing *pro se*, hereby files this **Amended Designation of Record** for the limited purpose of clarifying **Section E** of the Appellant's Designation of Record filed at Dkt. **452**, in response to the Clerk's Notice entered at Dkt. **460**.

This amendment is intended solely to identify **specific exhibits** for transmission under Fed. R. Bankr. P. 8009(a) and Local Rule 8009-1. All other portions of Dkt. 452 remain unchanged.

---

## SECTION E — EXHIBITS AND EVIDENTIARY MATERIALS

The following exhibits and evidentiary materials are designated for inclusion in the record on appeal arising from the **Order Denying Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc. (Dkt. 404, entered December 2, 2025)**:

1. **Debtor's Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc.**
   Filed September 29, 2025 — **Dkt. 244**
   Proponent: Andrew William Mulkerin

2. **Objection to Motion for Rule 2004 Examination**
Filed October 13, 2025 — **Dkt. 260**
Proponent: Ventwell, Inc. / APX Seetech Systems, Inc.

3. **Debtor's Reply in Support of Motion for Rule 2004 Examination**
Filed November 3, 2025 — **Dkt. 295**
Proponent: Andrew William Mulkerin

4. **Debtor's Reply in Further Support of Motion for Rule 2004 Examination of Ventwell, Inc. and APX Seetech Systems, Inc.**
Filed November 28, 2025 — **Dkt. 391**
Proponent: Andrew William Mulkerin
*(including Exhibit A attached thereto)*

5. **Proceeding Memorandum for Hearing on Rule 2004 Motion (November 4, 2025)**
Entered November 4, 2025 — **Dkt. 308**
Proponent: Bankruptcy Court

6. **Proceeding Memorandum for Continued Hearing on Rule 2004 Motion (December 2, 2025)**
Entered December 2, 2025 — **Dkt. 399**
Proponent: Bankruptcy Court

7. **Order Denying Motion for Examination under Rule 2004 of Ventwell, Inc. and APX Seetech Systems, Inc.**
Entered December 2, 2025 — **Dkt. 404**

8. **Transcript of Hearing Held December 2, 2025 (Rule 2004 Motion)**
Transcript requested and to be transmitted upon availability — **Dkt. 401 / 403**
Proponent: Court Reporter
*(No paper copy submitted; electronic transcript to be transmitted when available)*

9. **Transcript of Hearing Held November 4, 2025 (Rule 2004 Motion)**
Transcript requested and to be transmitted upon availability — **Dkt. 311 / 313**

Proponent: Court Reporter

*(No paper copy submitted; electronic transcript to be transmitted when available)*

---

## PAPER EXHIBITS

Appellant represents that the above-listed exhibits were filed electronically on the Court's CM/ECF system and that no additional paper exhibits are in Appellant's possession that require separate submission for transmission at this time.

If the Court determines that any listed exhibit requires paper submission, Appellant will promptly comply.

---

## CONCLUSION

This Amended Designation is filed to cure the clerical deficiency identified at Dkt. 460 and to permit transmission of the complete record on appeal. Appellant respectfully requests that the Clerk proceed with record transmission upon receipt of this clarification.

Respectfully submitted,

/s/ **Andrew William Mulkerin**
Andrew William Mulkerin, Pro Se
1740 Adeline Drive
Mechanicsburg, PA 17050
(717) 802-1508

Date: January 12, 2026

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF PENNSYLVANIA

In re:

ANDREW WILLIAM MULKERIN,

Debtor.

> FILED
> **January 13, 2026**
> Clerk, U.S. Bankruptcy Court
> Middle District of Pennsylvania
> Harrisburg

(On appeal from the United States Bankruptcy Court for the Middle District of Pennsylvania Bankr. Case No. 1:25-bk-01575-HWV)

APPELLANT'S MOTION TO SUPPLEMENT AND CLARIFY THE RECORD ON APPEAL PURSUANT TO FED. R. BANKR. P. 8009(e)

AND NOW, Appellant Andrew William Mulkerin, appearing pro se, respectfully moves this Court pursuant to Federal Rule of Bankruptcy Procedure 8009(e) to supplement and clarify the record on appeal, and states as follows:

I. WHAT THIS MOTION IS — AND IS NOT

This motion is a record-integrity motion. It seeks only to ensure that the appellate record accurately and completely reflects the proceedings, filings, and procedural context that Appellees themselves have elected to place at issue on appeal.

This motion is not a merits brief. It does not ask this Court to review the correctness of any ruling, resolve disputed factual issues, or adjudicate questions of motive, fault, or credibility. Nor does it seek to relitigate the scope or outcome of any discovery dispute.

Appellees have chosen to frame the appeal through a selective, multi-proceeding counter-designation that aggregates filings from multiple courts, cases, and

1

procedural postures. Once that choice is made, Rule 8009(e) exists to ensure that appellate review is not conducted on a materially incomplete or distorted record.

The timing and structure of Appellees' counter-designation underscore why supplementation is necessary. Although Rule 8009 permits counter-designation following a notice of appeal, Appellees filed expansive record and issue statements after dismissal of the underlying bankruptcy case, while continuing to rely on prior proceedings to support arguments of redundancy, mootness, and lack of bankruptcy purpose.

As framed by Appellees, the appeal no longer concerns a single Rule 2004 ruling in isolation. Instead, Appellees' counter-designation and counter-statement of issues present a cross-case narrative in which repeated denials, dismissals, and discontinued actions are invoked to suggest finality, exhaustion, or procedural foreclosure.

Where Appellees rely on such aggregation to define the appeal, Rule 8009(e) requires that the appellate record include the procedural history explaining why discovery was sought across forums, how access to records was constrained or redirected, and what procedural avenues remained available—or unavailable—at each stage.

This motion therefore seeks only to align the record with the posture Appellees themselves have created, so that appellate review proceeds on a complete and accurate account of the proceedings already being invoked.

## II. PROCEDURAL POSTURE AND WHY THE RECORD STILL MATTERS

This appeal arises from orders entered in In re Andrew William Mulkerin, Case No. 1:25-bk-01575-HWV, including orders denying Rule 2004 discovery and

2

related procedural rulings governing record access, scope limitations, and evidentiary development.

The underlying Chapter 13 case was subsequently dismissed without prejudice. Appellant does not seek through this motion to revive the bankruptcy case, disturb the dismissal, or obtain substantive relief unavailable after dismissal.

Appellees nevertheless elected to file a Counter-Designation of the Record and a Counter-Statement of Issues on Appeal asserting, inter alia, mootness, duplication of discovery requests, and lack of bankruptcy purpose.

Those asserted grounds do not exist in the abstract. They depend on procedural context—what discovery was sought, what access was foreclosed, what limitations were imposed by the Bankruptcy Court, and what procedural consequences followed the denial of record access.

Consistent with that framing, Appellees invoke filings and outcomes from multiple proceedings to support their appellate posture while omitting subsequent and parallel proceedings that explain how and why record access was pursued through alternative procedural mechanisms.

Dismissal of the underlying bankruptcy case does not eliminate the need for an accurate appellate record where Appellees themselves rely on cross-case aggregation to argue mootness, redundancy, or procedural foreclosure. Where such arguments are advanced, the record must reflect the full procedural sequence giving rise to them.

III. CLARIFICATION OF CASE IDENTIFICATION

3

Appellees' counter-designation misidentifies the operative bankruptcy case number in multiple instances.

The correct and operative case number for this appeal is In re Andrew William Mulkerin, Case No. 1:25-bk-01575-HWV.

This clarification is material where Appellees aggregate filings across multiple proceedings. Precision in record identification is required for accurate appellate review.

IV. RULE 8009(e) STANDARD

Federal Rule of Bankruptcy Procedure 8009(e) authorizes the Court to correct, supplement, or clarify the record where material items are omitted or misstated by error or accident.

Appellant seeks supplementation only of materials that:

(a) are part of the court record;

(b) are referenced or relied upon by parties in the current procedural posture;

(c) are necessary to understand how the appealed orders were reached; and

(d) bear directly on issues Appellees have chosen to raise.

Appellant does not seek to introduce new evidence, expand the issues on appeal, or alter the standard of review. The sole purpose of this motion is to ensure that the appellate record accurately reflects the proceedings already invoked by Appellees.

V. SELECTIVE AGGREGATION AND CONTEXTUAL OMISSION

4

Appellees' counter-designation aggregates materials from multiple, distinct proceedings, including:

(a) this Chapter 13 case;

(b) Appellant's prior Chapter 13 case (Case No. 1:24-bk-00270-HWV);

(c) Appellant's spouse's bankruptcy case (In re Irene Mulkerin, Case No. 1:24-bk-03264-HWV); and

(d) a Franklin County Court of Common Pleas action involving trust and partnership governance disputes.

Although these matters arise in different courts and procedural postures, they are factually interconnected in that each involves efforts to obtain financial records, valuation information, or governance documents relating to overlapping entities or interests.

Across these aggregated proceedings, Appellees' designation consistently includes outcome documents—such as orders, denials, and dismissals—while omitting the procedural and evidentiary materials that preceded those outcomes, including hearings, oral rulings, factual proffers, discovery motions, scope limitations imposed by the courts, and the procedural consequences that followed denial of record access.

The resulting record reflects what occurred, but not how or why. By removing the procedural context in which discovery was sought, limited, or foreclosed, the designation presents rulings as isolated determinations rather than as the culmination of sustained, cross-forum efforts to obtain access to records.

This form of selective aggregation—combining multiple proceedings to argue mootness, duplication, or lack of purpose, while omitting the shared procedural

5

history that explains why those proceedings exist—produces a materially incomplete appellate record.

Rule 8009(e) is intended to prevent precisely this circumstance. Where Appellees rely on cross-case aggregation to frame the appeal, the record must include the procedural context necessary for meaningful appellate review.

## VI. MATERIAL OMISSIONS REQUIRING CORRECTION

Appellees' counter-designation selectively includes outcome orders, dismissals, and adverse rulings across multiple proceedings, while omitting the foundational filings that explain how the record was developed, what factual material was proffered, and why discovery and evidentiary development were procedurally foreclosed rather than abandoned.

### A. This Chapter 13 Case (Case No. 1:25-bk-01575-HWV)

In this case, Appellees designate a substantial number of filings, including Rule 2004 motions, objections, replies, proceeding memoranda, orders denying discovery, and the ultimate order of dismissal. The issue is therefore not the volume of materials included, but the manner in which the designated materials are curated and framed.

The counter-designation emphasizes adverse rulings and denials while minimizing or fragmenting the record explaining the scope, purpose, and factual predicates of the discovery sought—particularly the evidentiary proffers, sworn declarations, and valuation-related materials submitted in support of Rule 2004 relief.

Although Appellees include certain discovery motions and replies, the designation deemphasizes the cumulative record demonstrating that Appellant repeatedly sought discrete, existing records from Ventwell, Inc. and APX Seetech Systems,

6

Inc. for articulated bankruptcy purposes tied to feasibility, claim treatment, business-debt classification, and estate administration.

The docket reflects extensive sworn record-building in this case, including affidavits, multi-exhibit supplements, evidentiary briefs, valuation analyses, and preservation filings addressing missing K-1s, intercompany transactions, and APX-controlled operations.

As a result, the designated record creates the appearance that discovery requests were unsupported, repetitive, or harassing, when the docket instead reflects that discovery was curtailed through procedural rulings without adjudication of the underlying factual disputes.

The case ultimately terminated on procedural grounds without resolution of those factual matters. Presentation of denials and dismissal divorced from the evidentiary and procedural context that preceded them creates the appearance of abandonment or lack of substance, rather than exclusion through procedural foreclosure.

B. In re Andrew Mulkerin (Case No. 1:24-bk-00270-HWV)

Appellees reference this prior Chapter 13 case but designate only a narrow subset of filings that suggests a single, isolated discovery effort followed by dismissal.

The docket reflects extensive sworn record-building from the outset of the case, including early motions and affidavits addressing APX-controlled entities, business shutdowns, asset interference, and coordinated creditor conduct.

Following the initial motions to compel, Appellant filed supplemental and follow-on discovery motions directed at APX-controlled entities, accompanied by certificates of service, hearing appearances, and proceeding memoranda.

<div align="center">7</div>

Appellant also filed multiple motions expressly requesting evidentiary hearings, supported by exhibits and factual proffers. Orders denying those requests were procedural and did not adjudicate the underlying factual disputes.

Appellees' omission of these filings creates the appearance that no substantive evidence was presented, when the docket instead reflects continuous factual development from the inception of the case.

C. In re Irene Mulkerin (Case No. 1:24-bk-03264-HWV)

Appellees designate compromise orders and select Rule 2004 denials from this case, but omit substantial post-compromise discovery and record-access litigation that bears directly on the issues Appellees raise on appeal.

Omitted filings include Rule 2004 motions, motions for turnover under 11 U.S.C. § 542, derivative-standing motions, and related hearings addressing valuation, accounting, and governance issues.

D. Franklin County Court of Common Pleas

(Case No. 2025-3353; Mulkerin v. Papoutsis / Papoutsis Family Limited Partnership)

Appellees include the docket and a voluntary discontinuance from this action but omit the operative pleadings and motions that defined the procedural posture of the case at the time of discontinuance, including the Second Amended Verified Complaint and contemporaneous motions challenging governance documents.

8

By omitting these materials while including only the discontinuance, Appellees obscure the fact that the action was procedurally active and factually developed at the time it was terminated.

E. What the Omissions Demonstrate

When the designated materials are viewed alongside what has been omitted, a consistent pattern emerges: Appellees have included orders, dismissals, and filings adverse to Appellant, while excluding operative pleadings, evidentiary proffers, preservation efforts, and verified factual submissions.

This selective curation results in a record that presents outcomes without the procedural and factual context necessary for meaningful appellate review.

Supplementation under Rule 8009(e) is therefore required to ensure that the appellate record accurately reflects the proceedings Appellees themselves rely upon.

VII. RELIEF REQUESTED

WHEREFORE, Appellant respectfully requests that the Court:

Order that the Record on Appeal be supplemented and clarified pursuant to Federal Rule of Bankruptcy Procedure 8009(e) to include the materials identified in Appendix A; and

Grant such other relief as the Court deems just and proper.

Respectfully submitted,

9

/s/ Andrew William Mulkerin

Andrew William Mulkerin

Appellant, Pro Se

1740 Adeline Drive

Mechanicsburg, PA 17050

Date: January 13, 2026

10

## APPENDIX A — INDEX OF MATERIALS OMITTED FROM THE RECORD

*(Submitted pursuant to Fed. R. Bankr. P. 8009(e) solely for record completeness and procedural context. No argument intended.)*

---

### A-1. Case Identification and Record Accuracy

- Correction of operative bankruptcy case number:
  *In re Andrew William Mulkerin*, **Case No. 1:25-bk-01575-HWV**.
  Appellees' counter-designation references inconsistent or incorrect case identifiers across aggregated proceedings.

---

### A-2. Rule 2004 Discovery — Ventwell, Inc. and APX Seetech Systems, Inc.

*(Bankr. Case No. 1:25-bk-01575-HWV)*

- **Doc. 244** — Motion for Rule 2004 Examination (9/29/2025)
- **Doc. 260** — Objection by Ventwell, Inc. (10/13/2025)
- **Doc. 295** — Reply in Support (11/3/2025)
- **Doc. 391** — Reply in Further Support with Exhibits (11/28/2025)

---

### A-3. Rule 2004 Hearing — November 4, 2025

- **Doc. 308** — Proceeding Memorandum
- Certified transcript **ordered and paid**

---

### A-4. Rule 2004 Hearing — December 2, 2025

- **Doc. 399** — Proceeding Memorandum
- **Doc. 404** — Order Denying Rule 2004 Examination
- Certified transcript **ordered and paid**

1

### A-5. Oral Rulings and Incorporated Proceeding Memoranda

- **Docs. 308, 399** — Oral rulings and scope determinations incorporated into denial order

### A-6. Discovery-Management, Protective-Order, and Preservation Filings

- **Doc. 425** — Wolfe Motion for Protective Order
- **Doc. 426** — Orrstown Motion for Protective Order
- **Doc. 428** — American Express Motion for Protective Order
- **Docs. 431–434** — Orders Granting Protective Orders and Discovery Management Order

### A-7. Preservation of Records and Spoliation Notices

- **Doc. 179** (1:24-bk-00270-HWV) — Notice of Preservation of Records
- **Doc. 290** (1:25-bk-01575-HWV) — Litigation Hold Correspondence

### A-8. Efforts to Centralize Disputes in Bankruptcy

*(Bankr. Case No. 1:24-bk-00270-HWV)*

- **Doc. 290** — Motion to Amend Plan and Stay Local Court Proceedings (9/9/2024)

### A-9. Foundational Record-Building — Prior Chapter 13 Case

*(Bankr. Case No. 1:24-bk-00270-HWV)*

- **Doc. 6** — Motion for Emergency Injunctive Relief
- **Doc. 23** — Motion Requesting U.S. Trustee Inquiry

2

- **Docs. 159, 171** — Motions to Compel APX / Ventwell / Seetech
- **Doc. 249** — Follow-On Motion to Compel (8/16/2024)
- **Docs. 242, 251, 252** — Motions for Evidentiary Hearings
- **Doc. 243** — Proffer of Evidence in Support of Estate Valuation
- **Docs. 334–337** — Correspondence Proffers (Ventwell / APX Seetech / affiliates)

---

### A-10. Hearings Relevant to Ventwell / Seetech Discovery

- **June 11, 2024 Hearing** (00270) — Transcript recommended
- **September 24, 2025 Hearing** — Sean Summers Rule 2004

---

### A-11. IRS Information Referrals and Tax-Compliance Filings

- **Doc. 205** — IRS Correspondence filed June 18, 2024
- **Doc. 206** — Supplemental IRS Correspondence filed June 26, 2024
- **Doc. 323** — Notice of IRS Information Referrals (11/5/2025)

---

### A-12. In re Irene Mulkerin — Omitted Discovery and Turnover Filings

*(Bankr. Case No. 1:24-bk-03264-HWV)*

**Rule 2004 (Post-Compromise)**

- **Docs. 328, 330** — Rule 2004 Motions re Counsel
- **Docs. 644, 650** — Limited Rule 2004 re Trustee Carr / FLP
- **Docs. 662, 663** — Hearing and Order

**Turnover / Record Production**

- **Doc. 125** — Motion to Require Turnover (§ 542)
- **Doc. 213** — Supplemental Brief

3

- **Docs. 220, 222, 272, 287, 496** — Hearings and continuances

**Derivative Standing**

- **Doc. 161** — Motion for Derivative Standing

- **Doc. 422** — Supplemental Damages Statement

- **Doc. 477** — Amended Motion

---

## A-13. Franklin County Court of Common Pleas

*(Case No. 2025-3353 — Mulkerin v. Papoutsis / FLP)*

- Second Amended Verified Complaint (filed **12/12/2025**)

- Motion to Strike Fraudulent Governance Documents (filed **12/12/2025**)

- Emergency Motion for Temporary Restraining Order (filed **12/5/2025**)

- Emergency Opposition to Defendants' Motion to Quash (filed **12/5/2025**)

- Response in Opposition to Defendants' Motion for Status Conference and Motion to Vacate Stay and Reinstate Injunction Schedule (filed **10/14/2025**)

- Notice Regarding Post-Filing Sale of FLP Property (filed **11/6/2025**)

- Emergency Motion to Expand Preliminary Injunction under Pa.R.C.P. 153 (filed **11/6/2025**)

---

## A-14. Subsequent State-Law Inspection Proceeding

*(Cumberland County Court of Common Pleas, Case No. 2026-00084)*

Filed as a direct procedural consequence of bankruptcy discovery denials.

- Verified Complaint for Shareholder Inspection (15 Pa.C.S. § 1508)

- Verification

- Certificates of Service

- Emergency Petition for Temporary Restraining Order

4

- Motion to Expedite

- Praecipe for Emergency Consideration

---

## A-15. Transcript Status

- **Received:** October 21 & October 22, 2025

- **Ordered and Paid:** November 4, 2025; December 2, 2025; June 11, 2024; September 24, 2025
  (To be supplemented upon receipt)